ADAM SEAN AVRATIN

7018 BLAIR RD, BOX D·2·117

CALIPATRIA, CA. 92233

K·45520



**FILED**

AUG 1 9 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ADAM  SEAN  AVRATIN                     )
                                        )
                      PLAINTIFF,        )
                                        )
          V.                            )
                                        )
J. WOODFORD (SECRETARY OF CORR.),       )
LARRY SMALL (WARDEN, CALIPATRIA PRISON) )
S. ANDERSON (ASSOCIATE WARDEN 'D' YARD),)
A. MILLER (CAPTIAN 'D' YARD),           )
G. EDWARDS (LIEUTENANT 'A' YARD),       )
ERNESTO YERENA (VOCATIONAL INSTR),      )
TIM O'COYNE (VOCATIONAL INSTRUCTOR) DEFENDANTS. )
                                        )

'08 CV 1533 WQHAJB
CIVIL CASE NO. _____

COMPLAINT UNDER THE
CIVIL RIGHTS ACT
42 U.S.C. § 1983

### I.  JURISDICTION & VENUE

1. JURISIDICTION IS INVOKED PURSUANT TO 28 U.S.C §1331 AND 1343(a)(3)

AND 42 U.S.C. 42 U.S.C. §1983. DECLATORY RELIEF UNDER 28 U.S.C. § 2201,2202.

INJUNCTIVE RELIEF UNDER § 2283 AND 2284. THE COURT ALSO HAS SUPPLEMENTAL

JURISDICTION OVER PLAINTIFFS STATE LAW CLAIMS UNDER 28 USC § 1367.

2. THE SOUTHERN DISTRICT OF CALIFORNIA IS AN APPROPRIATE VENUE

UNDER 28 U.S.C. SECTION 1391 (b)(2) BECAUSE IT IS WHERE THE EVENTS

GIVING RISE TO THIS CLAIM OCCURRED.



## II. PLAINTIFFS

3.     PLAINTIFF, ADAM SEAN AVRATIN, IS AND WAS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF CALIFORNIA IN THE CUSTODY OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS. HE WAS CURRENTLY CONFINED IN CALIPATRIA STATE PRISON IN CALIPATRIA, CALIFORNIA. IN THE COUNTY OF IMPERIAL.

4.     PLAINTIFF HAS AN EXTENDED RELEASE DATE FROM 8.1.08 TO 8.16. 08. DUE TO THE FOLLOWING DEFENDANTS ACTIONS UNDER COLOR OF LAW.

## III. DEFENDANTS

5.     DEFENDANT, J. WOODFORD IS THE SECRETARY OF THE DEPARTMENT OF CORRECTIONS OF THE STATE OF CALIFORNIA. SHE IS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION, INCLUDING CALIPATRIA STATE PRISON, AND IS INCULPATED BY TITLE 15. § 3001. DIRECTOR'S RULES,

6.     DEFENDANT, LARRY SMALL, IS THE WARDEN OF CALIPATRIA STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION OF CALIPATRIA STATE PRISON, AND FOR THE WELFARE OF ALL THE INMATES OF THAT PRISON. AND IS INCULPATED BY TITLE 15. § 3001. DIRECTOR'S RULES.

7.     DEFENDANT, S. ANDERSON IS THE ASSOCIATE WARDEN FOR THE 'C' AND 'D' YARD AT CALIPATRIA STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION AND SUPERVISION OF STAFF, AND THE CHIEF DISCIPLINARY OFFICER ON 'D' YARD. ALSO FOR THE WELFARE OF ALL INMATES ON THAT YARD.

8.    DEFENDANT, A. MILLER, IS THE CAPTAIN OF 'D' YARD AT CALIPATRIA STATE PRISON. SHE IS LEGALLY RESPONSIBLE THE OPERATION OF 'D' YARD AND IS DIRECTLY RESPONSIBLE AS THE FIRST REVIEWING OFFICER TO INSURE PROPER PROCEEDURES ARE FOLLOWED AS WELL AS THE WELFARE OF ALL THE INMATES ON FACILITY 'D' YARD.

9.    DEFENDANT, G. EDWARDS, IS THE LIEUTENANT ON 'D' YARD AT CALIPATRIA STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE STAFF ON 'D' YARD AS WELL AS THE SENIOR HEARING OFFICER FOR RULES VIOLATIONS REPORTS ASSIGNED HIM, IN ADDITION TO THE WELFARE OF ALL INMATES UNDER HIS WATCH.

10.    DEFENDANT, JIM O'COYNE, IS THE SUPERVISOR OF 'D' YARD VOCATIONAL STAFF AT CALIPATRIA STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR ALL VOCATIONAL STAFF ON 'D' YARD. AND THE IMPLEMENTATION OF THE RULES AND DUTIES OF BOTH INMATES AND STAFF IN THE WORK CHANGE AREA OF 'D' YARD AT CALIPATRIA STATE PRISON.

11.    DEFENDANT, ERNESTO YERENA, IS THE 'D' YARD VOCATIONAL INSTRUCTOR AT CALIPATRIA STATE PRISON. HE IS LEGALLY RESPONSIBLE FOR THE PAINT CLASS, AND ALL INMATES ASSIGNED TO PAI-001, VOCATIONAL PAINT SHOP.

12.    EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW.

### III. FACTS. CLAIM I.

DUE PROCESS / LIBERTY INTREST:

13.     DEFENDANT, J. WOODFORD, SECRETARY TO THE DEPARTMENT OF CORRECTIONS. WAS AND IS RESPONSIBLE FOR ALL CALIFORNIA DEPARTMENT OF CORRECTIONS OFFICERS, AND ACTING AGENTS USE AND IMPLEMENT THE STATE OF CALIFORNIA CODE OF REGULATIONS TITLE 15. CRIME PREVENTION AND CORRECTIONS FOR ADULT INSTITUTIONS, PROGRAMS AND PAROLE. ( COMMONLY KNOWN AS TITLE 15.) TO BE SURE THAT ALL SAFEGUARDS AND PROCEDURE ARE USED SO THAT CONSTITUTIONAL RIGHTS ARE NOT VIOLATED. AS THE CLAIMS BELOW ARE SET FORTH, THE ABOVE NAMED DEFENDANT WAS RESPONSIBLE FOR EACH AND EVERY OFFICER WHO DOES NOT FOLLOW THE RULES AND REGULATIONS SET FORTH BY THE DIRECTOR / SECRETARY OF THE DEPARTMENT OF CORRECTIONS.

THE FAILURE OF ALL THE BELOW NAMED DEFENDANTS TO STRICTLY ADHERE TO THE SAFEGAURDS DESCRIBED IN TITLE 15. HAS LED TO THE PLAINTIFF'S CONSTITUTIONAL RIGHTS TO BE VIOLATED AND PROCEDURAL DUE PROCESS DENIED. DEFENDANT, J. WOODFORD IS OFFICIALLY RESPONSIBLE FOR ALL OFFICERS AND AGENTS TO ADHERE TO THE BILL OF RIGHTS AND, GIVE RESPECT TO THOSE RIGHTS WHILE CONDUCTING DISCIPLINARY HEARINGS. AND TO FOLLOW THE VERY RULES IN WHICH THEY ASCRIBE TO IN THE HEARINGS WHEN THERE ARE LIBERTY INTRESTS THAT ARE IN JEOPARDY. SEE EXHIBIT "D". AND 6A-22 IN EXHIBIT "I" WHERE THE PROPER PROCEDURES THAT WERE IGNORED WERE BROUGHT BEFORE SENIOR STAFFS ATTENTION BEFORE PENDING RELEASE DATE AND WHEN THE APPROPRIATE REMEDY COULD HAVE BEEN APPLIED AND PLAINTIFFS CONSTITUTIONAL RIGHTS WOULD HAVE BEEN MAINTAINED.

14.    DEFENDANT, LARRY SMALL, AS THE WARDEN IS RESPONSIBLE FOR THE WELFARE OF ALL THE INMATES AT CALIPATRIA STATE PRISON. HE IS ALSO RESPONSIBLE AMONG OTHERS, FOR THE OBSERVANCE OF THE FEDERAL AND STATE CONSTITUTIONAL RIGHTS OF THE INMATES IN CALIPATRIA STATE PRISON. THE APPEALS PROCESS THAT ALLOWS INMATES ACCESS TO REDRESS A GOVERNMENT ACTION, IS HIS DIRECT RESPONSIBILITY. WHEN PLAINTIFF SOUGHT AN EMERGENCY APPEAL WHICH IS TO BE HEARD WITHIN FIVE DAYS WHEN A RELEASE DATE IS AFFECTED WAS NOT PROCESSED AS DESCRIBED. AND NO WRITTEN NOTIFICATION ISSUED. THE APPEAL COMMONLY KNOWN AS A '602' WAS FILED JULY 31, 2008. AS OF THE WRITING OF THIS CLAIM THERE HAS BEEN NO RESPONSE, ON AUGUST 9, 2008

15.    ON OR ABOUT AUGUST 6, 2008, THE PLAINTIFF STOPED DEFENDANT LARRY SMALL IN AN ATEMPT TO DISCUSS THE SPECIFICS OF HOW I WAS BEING DENIED PROCEDURAL DUE PROCESS. AND HIS RESPONSE WAS A SMIRK AND THE STATEMENT "I WAS SUED FIVE TIMES WHILE IN RETIREMENT IT IS NOT NEW TO ME." HIS CALOUS INDIFFERENCE TO MY PROTECTED LIBERTY INTRESTS HAVE PROLONGED MY RELEASE DATE AND PLAINTIFFS ABILITY TO RESOLVE THIS MATTER AT AN INFORMAL LEVEL. INMATES RELEASE DATE IS AUGUST 16, 2008. AND IT IS THE PLANTIFFS OPINION THAT THE STAFF HERE BELIEVE THERE IS NO ADEQUATE REMEDY THAT PLAINTIFF CAN SEEK SO THERE FORE PLAINTIFF ASK THE COURT TO GIVE THE PROPER DECLATORY AND PUNITIVE RELIEF SO THAT THE PROTECTED LIBERTY INTREST ARE SACRO SANCT. A DECLARATION IS SOUGHT AND PRAYED FOR.

16. DEFENDANT, S. ANDERSON, IS THE ASSOCIATE WARDEN OF 'C' AND 'D' YARD AT CALIPATRIA STATE PRISON. HE IS RESPONSIBLE FOR THE OFFICERS AND INMATES WELFARE ON BOTH FACILITIES. AMONG THOSE DUTIES IS TO REVIEW SERIOUS RULES VIOLATIONS REPORTS(115) AS SHOWN IN EXHIBIT "F," BOTTOM OF PAGE 1 HE SIGNED OFF THIS REPORT AS CHIEF DISCIPLINARY OFFICER. SEE EXHIBIT "A"-11 INSERT FROM TITLE 15. § 3312 et al. YOU CAN SEE THAT THE CHEIF DISCIPLINARY OFFICER HAD IGNORED KEY COMPONENTS IN HIS REVIEW AS FOLLOWS:

1. 3015(a) STATES: ...

(a) EVERY AREA OF A FACILITY WHICH IS OUT OF BOUNDS TO INMATES OR WHICH IS ONLY OUT OF BOUNDS AT SPECIFIED TIMES SHALL BE CLEARLY DESIGNATED. INMATES SHALL NOT ENTER SUCH AREAS UNLESS SPECIFICALLY AUTHORIZED TO DO SO BY STAFF.

2. 3000.5. STATES

...(c) "SHALL" IS MANDATORY. "SHOULD" IS ADVISORY. AND "MAY" IS PERMISSIVE.

...

17. THESE TWO DEFINITIONS WILL BE RELEVANT FOR THE REMAINDER OF THE DEFENDANTS AND CAN BE OBSERVED IN EXHIBIT A.(NUMBER 1). IS MARKED A-10.(NUMBER 2). IS MARKED A-6.

18. AS THE RULE IS STATED, THERE ARE NO RULES ANY WHERE ON THE PREMISSES OR IN THE JOB DESCRIPTION AND DUTY STATEMENTS TO

INDICATE THAT THE FENCED OFF AREA IS OUT OF BOUNDS. IN THE FACILITY INSIDE THE BUILDINGS, AND OUTSIDE THE BUILDINGS, THERE ARE BOUNDARIES CLEARLY MARKED IN ALL AREAS THAT THE INMATES ARE NOT AUTHORIZED TO CROSS THE PAINTED SOLID RED. OR YELLOW LINES AND ALL INMATES KNOW WHAT THESE LINES MEAN. THERE IS NOTHING IN THE SIGNED STATEMENTS OF JOB DESCRIPTION AND DUTIES WHICH ARE IN EXHIBIT B TO SAY THAT THIS PARTICULAR AREA IS OUT OF BOUNDS.

19. IN ADDITTION TO THE ABOVE, THE RULES VIOLATION REPORT ONLY ALLEGES THAT PLANTIFF APPEARED TO BE COMMING FROM AN ENCLOSED AREA BUT STATES HE HAD ONLY SEEN THE PLANTIFF ON THE TOP OF THE FENCE. WHICH IS INCONSISTENT WITH THE DUE PROCESS PROCEDURES THAT THERE BE SOME EVIDENCE NOT THAT YOU ASSUME HE WAS INSIDE A LOCKED ENCLOSURE BY THE MERE FACT PLANTIFF WAS ON THE FENCE. IF GOOD TIME IS A SANCTION "ALLEGATIONS" AND "MERE SPECULATION" DO NOT MEET THE STANDARDS OF "SOME EVIDENCE" TO SUPPORT THE DISCIPLINARY ACTION.

20. DEFENDANT, S. ANDERSON, IS AN EXPERIENCED CHIEF DISCIPLINARY OFFICER WHO KNOWS THAT THERE ARE NO ADEQUATE REMEDIES AT THE PLANTIFFS DISPOSAL BEFORE BEING RELEASED. IN EXHIBIT A-11 ARTICLE 5. INMATE DISCIPLINE § 3310(b). DEFENDANT DID NOT FULFILL THE DUTY AS CHEIF DISCIPLINARY OFFICER; NEEDS TO BE REDRESSED. THIS COURT HAS THE POWER TO SEND A CLEAR MESSAGE TO THE DEFENDANT BY AWARDING DECLATORY AND PUNITIVE RELIEF.

21. DEFENDANT, A. MILLER, IS THE CAPTAIN OF 'D' YARD AT THE CALIPATRIA STATE PRISON. SHE IS RESPONSIBLE FOR THE OFFICERS AND INMATES WELFARE ON 'D' YARD. AMONG THOSE DUTIES IT IS HER RESPONSIBILITY TO REVIEW DISCIPLINARY HEARINGS AFTER THEY HAVE BEEN ADJUDICATED BY THE SENIOR HEARING OFFICER.

22. ON JULY 28, 2008. AFTER A HEARING WITH DEFENDANT, EDWARDS, PLAINTIFF, SENT AN EMERGENCY REQUEST FOR INTERVIEW TO THE CAPTAIN OF 'D' YARD. (PLEASE SEE EXHIBIT "I") THIS REQUEST WAS TO INFORM THE REVIEWER THAT:

1. THERE IS A LIBERTY INTREST IN DISPUTE.
2. HOW THE RULES TO "OUT OF BOUNDS" WAS ERRONEOUS.
3. THE ABSENCE OF JUSTIFIABLE CAUSE OF ACTION.
4. POINT TO THE FACT THAT ALL "OUT OF BOUNDS" BE CLEARLY DESIGNATED. AS ARE ALL AREA'S IN THE FACILITY SO MARKED.

23. PLAINTIFF SUBMITS, THAT THERE WAS NO EVIDENCE THAT ANY ATTEMPT TO GAIN ACCESS TO AN UNAUTHORIZED AREA WAS IN PLAINTIFFS ACTIONS. AND ALL ATTEMPTS OF GIVING EXPLANATION AS TO WHY PLAINTIFF WAS USING THE FENCE AS A LADDER TO RETRIEVE AN ELBOW BRACE THAT WAS THE RESULT OF MISCHIEF, WAS AND IS HARSH PUNISHMENT WHEN TIME IS A SANCTION. AND NO OTHER INMATE IN THE CLASS HAS RECIEVED THIS HARSH SANCTION FOR OUT OF BOUNDS VIOLATION. IN FACT 128 CHRONO'S THE NEXT DAY WERE ISSUED TO ANOTHER INMATE IN SUCCESSION TO TOTAL 5 AND OUT OF BOUNDS WAS AMONG THEM. THIS REVIEW WAS

THEREFORE NOT MEANINGFUL IN NATURE.

24. PLAINTIFF'S DUE PROCESS WAS VIOLATED BY THIS
DEFENDANT WHEN AS HER DUTY IN REVIEWING A RULES
VIOLATION REPORT FAILED TO MEET THE REQUIREMENTS
NECESSARY WHEN A LIBERTY INTREST IS A PART OF
THE DISCIPLINARY PROCEEDINGS. THIS WAS MADE
EVIDENT BY THE FOLLOWING:

      1. LACK OF GOOD CAUSE.
      2. LACK OF MATERIAL EVIDENCE.
      3. LACK OF RELEVANT EVIDENCE.
      4. LACK OF DUE PROCESS.
      5. LACK OF MEANINGFUL REVIEW.

25. PLAINTIFF SUBMIT'S THAT DUE PROCESS CAN BE VIOLATED
IF ANY OF THE ABOVE ARE OMITTED. PLANTIFF FURTHER ALLEGES
THAT ALL THE ABOVE MENTIONED OMISSIONS LED TO THE
WANTON DISREGARD TO PLANTIFF'S PROTECTED LIBERTY
INTRESTS, BECAUSE THE ONLY REMEDY AVAILABLE TO THE
PLAINTIFF IS DECLATORY AND MONETARY DAMAGES.
THAT THIS COURT FIND THIS DEFENDANT, NOT ONLY
NEGLIGENT, BUT ALSO FIND DELIBERATE INDIFFERENCE.
AND GRANT PLAINTIFF THE APPROPRIATE RELIEF.

III. FACTS. CLAIM II.
DUE PROCESS / CRUEL AND UNUSUAL PUNISHMENT

26. DEFENDANT, C. EDWARDS, IS THE LIEUTENANT ON 'D' YARD AT CALIPATRIA STATE PRISON. HIS, AMONG OTHER DUTIES IS THE DESIGNATED SENIOR HEARING OFFICER, AND IS RESPONSIBLE FOR THE OFFICERS AND INMATES OF 'D' YARD.

27. DEFENDANT, EDWARDS, AS THE LIEUTENANT WAS ASSIGNED A RULES VIOLATION REPORT THAT HE SHOULD NOT HAVE HEARD, BECAUSE HE LT. EDWARDS HAD MADE CERTAIN STATEMENTS TO ERNESTO YERENA 'D VOCATIONAL INSTRUCTOR THAT HE SHOULD CHANGE THE WORDING OF THE 115 R.V.R. TO INCLUDE WORDING THAT WOULD ALLOW THE S H O TO PUT THE PLAINTIFF INTO ADMINISTRATIVE SEGREGATION. (PLEASE SEE EXHIBIT 'F'. ALL ABREVIATIONS ARE CONSISTENT WITH EXHIBIT 'F' AND WILL BE USED THROUGHOUT THE REST OF THIS CLAIM.) FOR THE LT. TO ASK THE REPORT WRITTER TO CHANGE HIS REPORT TO INCLUDE INFORMATION FOR A GREATER CHARGE THAN THAT IN WHICH THE VOCATIONAL INSTRUCTOR HAD WRITTEN. VIOLATED THE CONSTITUTIONAL RIGHTS TO DUE PROCESS BECAUSE OF THE FOLLOWING:

1. BOTH DUE PROCESS AND C.C.R. TITLE 15, REQUIRE IT.
2. TITLE 15. STATES A REVIEWING OFFICER IS NOT TO BE A HEARING OFFICER.
3. DUE PROCESS REQUIRES AN UNBIASED FAIR HEARING.
4. REFUSES PLANTIFF TO INTRODUCE RELEVANT EVIDENCE.
5. LACKED STANDING TO APPLY "OUT OF BOUNDS" WHICH WAS MATERIAL EVIDENCE.
6. CONTINUED AGIANST LIBERTY INTREST WITHOUT GOOD CAUSE.

7. THE FENCE IN QUESTION WAS INSIDE A BUILDING.

8. WOULDN'T HEAR PLANTIFF'S PLEA FOR LESSER VIOLATION.

9. USED PLAINTIFF'S 115 HEARING TO SEND MESSAGE TO OTHERS.

10. ALLOWS REVIEWING OFFICERS TO BELIEVE SPECULATION AN INUENDOS WHICH, DUE PROCESS CONDEMS AS A VIOLATION OF PROTECTED RIGHTS.

11. FOR A SERIOUS RULES VIOLATION TO BE CLASSIFIED SERIOUS THE REPORT WRITTER MUST DEMONSTRATE THAT THE ACTIONS ARE EITHER A MISDEMEANOR OR IS A FELONY, WHETHER THE PROSECUTION IS SOUGHT OR NOT. TITLE 15, §3315(a),(1)

12. FAILURE TO PREVAIL, HOW A BREACH OR HAZARD TO FACILITY SECURITY MET THE STANDARDS OF A SERIOUS VIOLATION.

28.   THE FIFTH AND FOURTEENTH AMENDMENTS PROHIBIT THE GOVERNMENT FROM DEPRIVING AN INMATE OF LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF LAW. SEE WOLFF V. McDONNELL, 418 U.S. 539, 558 (1974); SEE ALSO LESLIE V. DOYLE, 125 F.3d 1132, 1136 (7TH CIR. 1997); AND CHAMBERS V. COLO. DEP'T. OF CORR., 205 F.3d 1237, 1242 (10TH CIR. 2000). AND LIBERTY INTRESTS CAN BE CREATED BY THE DUE PROCESS. CLAUSE OF ITS OWN FORCE. SEE SANDIN V. CONNER, 515 US. 472, 484 (1995); MORRISSEY V. BREWER, 408 U.S. 471, 482 (1972); SEE e.g., DOMEGAN V. FAIR, 859 F.2d 1059, 1063 (1ST CIR. 1988); PIGGIE V. McBRIDE, 277 F.3d 922, 924 (7TH CIR. 2002); BARNA V. TRAVIS 239 F.3d 169, 171-72 (2d CIR. 2001)

29.   AS THESE CASES MAKE CLEAR, IS THAT WHEN CALIFORNIA DEPARTMENT OF CORRECTIONS DOES NOT FOLLOW PROCEDURES AND SAFEGUARDS IMPLEMENTED BY THESE VERY CASES, THEN DUE PROCESS IS INEVITABLY GOING TO SUFFER THE INFRINGEMENT MADE UPON THOSE SAFEGUARDS IN TITLE 15,

30.     DEFENDANT, LIEUTENANT EDWARDS, HAD REVIED AND ASKED THE REPORTING EMPLOYEE TO RE-WRITE HIS REPORT. TITLE 15. § 3313(b). STATES AS FOLLOWS:

"STAFF WHO REVIEW OR CLASSIFY A CDC FORM 115 SHALL NOT SERVE AS THE DISCIPLINARY HEARING OFFICIAL FOR THAT RULE VIOLATION.

LIEUTENANT EDWARDS CIRCUMVENTS THIS PROCEEDURE BY HAVING PUT CORRECTIONAL SEARGENT F.2. MATA AS THE REVIEWING SUPERVISOR WHICH IS NOT ALLOWED WHEN THERE ARE MORE THAN 1 OFFICER AT LIEUTENANT OR HIGHER. (PLEASE REFER TO THE DECLARATION OF INMATE,

31.     DUE PROCESS GUARANTEES A PLANTIFF THAT WHEN HIS RELEASE DATE IS AFFECTED AND CHANGES THE DURATION OF HIS SENTENCE THEN A LIBERTY INTREST IS ATTACHED, THIS ATTACHMENT AFFORDS THE PLANTIFF ALL THE PROCEEDURESS AND SAFEGAURDS OF THE DEPARTMENT OF CORRECTIONS TITLE 15. SETS OUT.

32.     DEFENDANT, EDWARDS ALSO DOES NOT ALLOW PLANTIFF TO INTRODUCE EVIDENCE THAT ALL MATERIAL CONTAINED IN THE ENCLOSED AREA IS ALSO CONTAINED ON THE FLOOR. THIS IS RELEVANT BECAUSE ITS THE DANGER OF FLAMMABLE LIQUIDS THAT TRIGERS A PHANTOM SECURITY ISSUE. YET AFTER THE CORRECTIONAL OFFICERS STRIP SEARCH PLANTIFF THERE WAS NO EVIDENCE OF ACCESS OR THEFT OF ANY OF THOSE MATERIALS. "LACK OF EVIDENCE."

33. DEFENDANT, EDWARDS, FURTHER'S HIS INTENT TO DENY PLAINTIFF THE PROPER PROCEEDURES AND SAFEGUARDS BY NOT APPLYING THE RULES AS THEY ARE WRITTEN, BUT WRITES THAT AN UNATHORIZED AREA AS DESCRIBED IN 3015(A). BUT THERE IS NO SUCH DESCRIPTION AS HE REFERS, ANYWHERE IN TILE 15. AND HE LACKS STANDING ON MATERIAL EVIDENCE AS WELL. FOR THERE IS NO SUPPORTING DOCUMENTATION THAT WAS REFERRED TO, THAT COULD BE FOUND IN ANY RULES OF THE DIRECTOR.

34. DEFENDANT, EDWARDS, PURPOSELY WITH AN INTENT TO SANCTION PLANTIFF NOT AS A DISCIPLINARY FUNCTION BUT, AS TO SEND A CLEAR MESSAGE TO OTHER BY VIOLATING PLAINTIFFS PROTECTED RIGHTS OF CRUEL AND UNUSUALL PUNISHMENT WHEN HE PUNISHES PLAINTIFF TO SCARE OTHERS.

36. THE FENCE IN QUESTION WAS LOCATED INSIDE OF A BUILDING, SO THERE IS NO QUESTION ON ESCAPE AS TO THIS ISSUE, AND NO QUESTIONS ABOUT SECURITY IN THAT RESPECT.

37. DEFENDANT, EDWARDS, REFUSED TO DROP TO ADMINISTRATIVE WHICH WAS THE APPROPRIATE DISCIPLINARY ACTION. BUT FOR LEIUTENANT EDWARDS INTENT TO MAKE AN EXAMPLE OF PLANTIFF.

38. DEFENDANT, EDWARDS, WHEN USING A RULES VIOLATION

TO SEND A MESSAGE TO OTHERS, AND KNOWINGLY HAVING THE
EFECT ON PLANTIFF'S RELEASE DATE DEMONSTRATES HIS
DELIBERATE INDIFFERENCE TO PLANTIFFS LIBERTY
INTERESTS.

39.    DEFENDANTS, ACTIONS IN THE ABOVE NUMBERED CLAIMS
30-38 AGIANST DEFENDANT, EDWARDS, ALLOWS REVIEWING
OFFICERS TO OPERATE ON INUENDOS, AND SPECULATION
TO FIND PLANTIFF CULPABLE TO SOMETHING THAT SHOULD
HAVE BEEN MINOR BECAUSE IT WAS NOT A MISDEMEANOR
OR A FELONY AND NO CREDIBLE SECURITY OF HAZARD
COULD BE IDENTIFIED, IF SO, HE WOULD HAVE BEEN
CHARGED FOR THAT OFFENSE WHICH ARE CONTAINED
WITHIN TITLE 15. RULES AND REGULATIONS. THESE
ALL VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS. (ABOVE
TITLE 15, IS 3315(a)(1) FOR REFERENCE SEE EXHIBIT 'A').

40.    DEFENDANT, JIM O'COYNE IS THE 'D' VOCATIONAL SUPERVISOR,
AND WAS APPROACHED BY PLAINTIFF ON 7/15/08 AFTER RETURNING
TO CLASS THE NEXT DAY, AND ASKED HIM IF HE WOULD REWRITE
THE RULES VIOLATION SO THAT IT WAS NOT A SERIOUS, BECAUSE
OF PENDING RELEASE DATE. AND HE SAID I DONT CARE IM RETIREING.

41.    PLAINTIFF POINTED OUT TO THE SUPERVISOR THAT HE WAS
WITHIN THE YELLOW BOUNDARY LINES AS DESCRIBED IN THE RULES.
IN THE STATEMENT OF RESPONSIBILITY OUT OF BOUNDS ARE
DEFINED A-H. UNDER 'G' DURING BREAK TIMES STAY INSIDE THE
YELLOW BOUNDRY LINES, AS NOTED ABOVE APPEAR EVERYWHERE. THAT

ARE DESIGNATED OUT OF BOUNDS INSIDE AND OUTSIDE OF BUILDINGS THROUGHOUT THE INSTITUTION GROUNDS. (SEE EXIBIT 'C' FOR THE AREA'S CLEARLY DESIGNATED "OUT OF BOUNDS" BY EITHER YELLOW OR RED BOUNDRY LINES THAT INMATES ARE NOT TO CROSS.

42.   DEFENDANT, JIM O'COYNE, BEING THE DIRECT SUPERVISOR AND THE PROPER PERSONEL FOR PLAINTIFFS INFORMAL APPEAL HAS CLEARLY SHOWN DELIBERATE INDIFFERENCE. THAT IS AND WAS HIS RESPONSIBILITY TO REMEDY. BY HIS LACK OF RESPONSIBILITY THE PLANTIFF'S RIGHTS OF FEDERAL CONSTITUTIONAL RIGHTS TO REDRESS, DUE PROCESS, AND LIBERTY WERE DENIED PLAINTIFF. APPROPRIATE RELIEF SOUGHT.

43,   DEFENDANT, ERNESTO YERENA, IS THE 'D' VOCATIONAL INSTRUCTOR OF THE 'D' VOCATION PAINT SHOP. AT CALIPATRIA STATE PRISON, ON JULY 14, 2008. THE ABOVE MENTIONED DEFENDANT, WITH A PURPOSE OTHER THAN A PENALOGICAL INTREST. HAD SET HIS MIND TO FIND A REASON TO GET PLAINTIFF WROTE PLANTIFF UP A SERIOUS 115 RULES VIOLATION REPORT. THIS ISSUEANCE WAS ERRONEOUSLY ISSUED FOR THE FOLLOWING REASONS:

1. THE INSTRUCTOR HAD A PURPOSE OTHER THAN PENOLOGICAL IN NATURE.
2. NO PROGRESIVE DISCIPLINE WAS SOUGHT.
3. NO BAD BEHAVIOR WAS NOTED SINCE BEING RECIEVED BY CDCR.
4. NO BOUNDRY LINES CLEARLY DESIGNATED AREA OUT OF BOUNDS.
5. NO MATERIAL EVIDENCE WAS PROVIDED TO SUPPORT CHARGE.
6. NO JUSTIFIABLE CAUSE OF ACTION TO SUPPORT THE CHARGE.
7. OTHERS WITH SIMILAR CIRCUMSTANCES RECEIVE LESSER CHARGE.

44.    DEFENDANT, YERENA, HAS MADE STATEMENTS TO OTHER STUDENTS THAT HE WAS OUT TO GET PLANTIFF. (SEE EXHIBIT 'L') AND HIS REASONS STEM FROM A RUMOR THAT PLAINTIFF COULD HAVE HAD SOMETHING TO DO WITH THE DISAPPEARANCE OF A CLOCK GIVEN TO HIM BY A STUDENT WHO HAS SINCE PASSED AWAY. AND THIS REASON HAD NOTHING TO DO WITH PENOLOGICAL INTRESTS.

45.    THE PLANTIFF HAS REMAINED DISCIPLINARY FREE FOR THE ENTIRE TIME SINCE HIS RECEPTION TO CDCR. AND THEREFORE NO PROGRESSIVE DISCIPLINE WAS EVER SOUGHT. (SEE EXHIBIT 'A-15 ( RULE 3315. SERIOUS RULES VIOLATION).).

46.    AS THE DIAGRAM IN EXHIBIT C DEMONSTRATES THERE WERE NO LINES OR SIGNS TO CLEARLY DESIGNATE THIS AREA OUT OF BOUNDS. AND THE SENIOR HEARING OFFICER WANTED TO USE THIS R.V.R. TO SEND A CLEAR MESSAGE TO THOSE WHO WORK BEHIND THE WALL AND SO HE ASKED DEFENDANT, YERENA, TO CHANGE HIS WRITE UP OF PLAINTIFF SO THAT HE WOULD RECIEVE A GREATER CHARGE THAN THAT ORIGINALLY WRITTEN. THIS CONVERSATION TOOK PLACE ON 7/15/08.

47.    THE REPORT WRITTER E. YERENA, HAD NOT CLEARLY DEFINED ANY ACTIONS THAT RISE TO THE THREAT OF THE SECURITY, OR HAZARD TO THE INSTITUTION. AND THEREFORE SHOULD NOT BE ALLOWED TO HAVE AN UNSUBSTANTIATED ALLEGATION SUBSTITUTE AS MATERIAL EVIDENCE. ESPECIALLY WHEN LIBERTY WHICH IS A PROTECTED RIGHT THAT MUST HAVE SOME EVIDENCE TO SUPPORT THE CLAIM.

48. DEFENDANT, YERENA, HAD NO JUSTIFIABLE CAUSE, AND STATED SO. WHEN HE SAID YOU WILL BEAT THIS, THE LACK OF JUSTIFIABLE CAUSE WAS KNOWN TO E. YERENA, BECAUSE THE AREA WAS NOT CLEARLY DESIGNATED OUT OF BOUNDS AS IS MENTIONED IN TITLE 3015(a) AND THE DEFINITION TO 'SHALL' IN THE RULES OF CONSTRUCTION. 3000.5.(C) (PLEASE SEE EXHIBIT 'A').

49. DAYS AFTER THE RVR AGAINST PLAINTIFF, DEFENDANT YERENA WROTE APROXIMATLEY 5 128's SOME FOR THE EXACT OUT OF BOUNDS CHARGES AGIANST PLAINTIFF BUT THEY ARE NOT WRITTEN UP AS A SERIOUS RULES VIOLATION BUT AS ADMINISTRATIVE. WHICH WAS THE APPROPRIATE DISCIPLINE FOR PLANTIFF.

50. AS PLAINTIFF HAS ESTABLISHED IN 43-49 THAT HIS DUE PROCESS RIGHTS WERE VIOLATED AND LED TO THE VIOLATION OF HIS CONSTITUTIONAL RIGHTS BOTH STATE AND FEDERAL WHICH AFFECTED HIS LIBERTY BY MEANS OF DELIBERATE INDIFFERENCE AND MALICE AND THE PLAINTIFF SEEKS MONETARY AND PUNITIVE DAMAGES.

51. UPON INFORMATION AND BELIEF, THE PRISON OFFICIALS KNOW THAT THE COURTS ARE GOING TO GIVE DEFERENCE TO THIER ACTIONS, WITH THE P.LRA ALSO TO ENBOLDEN THEM IN BELIEVEING THAT THEY CAN DO WHAT THEY WANT. ALSO, HAS CAUSED THE NECESSITY FOR THE PLAINTIFF TO ASK THIS COURT TO GIVE PUNITIVE DAMAGES TO SEND A CLEAR MESSAGE THAT THE CONSTITUTION IS INVIOLATE EVEN IN PRISON.

52. ADAM SEAN AVRATIN, WHO PRESENTLY RESIDES AT CALIPATRIA STATE PRISON, LOCATED AT 7018 BLAIR RD. CALIPATRIA, CALIFORNIA 92233, WHOSE RIGHTS WERE VIOLATED BY ALL OF THE ABOVE NAMED INDIVIDUALS. THEIR ACTIONS WERE DIRECTED AGAINST PLAINTIFF AT CALIPATRIA STATE PRISON ON THE FACILITIES 'D' YARD IN CALIPATRIA CALIFORNIA. THE FOLLOWING CASES ARE IN SUPPORT TO PLAINTIFFS CLAIMS THAT DEFENDANTS VIOLATED, SEE WOLFF V. McDONNELL, 418 U.S. 539, 558 (1974) THE FIFTH AND FOURTEENT AMENDMENTS PROHIBIT THE GOVERNMENT FROM DEPRIVING AN INMATE OF LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF LAW. SEE ALSO LESLIE V. DOYLE, 125 F.3d. 1132, 1136 (7TH cir. 1997); AND CHAMBERS V. COLO. DEPT. OF CORR., 205 F.3d 1237, 1242 (10TH cir. 2000.) AND LIBERTY INTRESTS CAN BE CREATED BY THE DUE PROCESS CLAUSE OF ITS OWN FORCE. SEE SANDIN V. CONNER, 515, U.S. 472, 484, (1995); MORRISSEY V. BREWER, 408 U.S. 471, 482 (1972); SEE DOMEGAN V. FAIR 859 F.2d 1059, 1063 (1ST cir. 1988); PIGGIE V. McBRIDE, 277 F.3d 922, 924 (7TH cir. 2002); BARNA V. TRAVIS 239 F.3d 169, 171-72 (2d cir. 2001.) AND EXHIBITS A-R.

## II EXHUASTION OF LEGAL REMEDIES.

53.    COPY OF APPEAL IS IN EXHIBIT "M" AND THE RULES CONCEREING THE APPEALS PROCESS AND TIME LIMITS FOR EMERGENCY APPEALS EXHIBIT "O" PLANTIFF MADE ALL REASONABLE EFFORT TO APPEAL ON AN EMERGENCY BASIS. THE APPEALS COORDINATOR KEPT THE APPEAL LONGER THAN THE 5 DAYS ALLOWED FOR AN EMERGENCY APPEAL THE APPEAL WAS SENT ON JULY 31, 2008. AND WAS NOT GIVEN BACK WITH A SCREEN OUT UNTIL AUGUST 11, 2008. ALL THE WHILE KNOWING THE INMATE IS TO BE RELEASED AUGUST 16, 2008. IT WAS RE-SUBMITTED AND WILL HAVE TO BE AMENDED IF HEARD,

8. INSTRUCTOR, YERENA, KNEW AREA WASN'T CLEARLY DESIGNATED.

9. INSTRUCTOR ONLY SAW PLANTIFF ON TOP OF FENCE AND ASSUMES HE "MAY" HAVE BEEN EXITING THE ENCLOSED AREA.

10. THERE IS NOTHING DIRECTLY ACCESSIBLE IN THE ENCLOSED AREA, BECAUSE ADDITIONAL LOCKERS CANTAIN FLAMMABLE'S.

11. THERE ARE RED BOWDRY LINES FOR SERIOUS 115'S AND YELLOW BOUNDRY LINES FOR ADMINISTRATIVE 128'S THE ARE BY THE FENCE LACK'S BOTH DESIGNATIONS.

12. THE MATERIAL IN THE ENCLOSED AREA ARE ADDITIONALLY LOCKED AND SECURED AND WOULD REQUIRE ADDITIONAL TOOLS OR KEYS TO GAIN ACCESS WHICH WHEN SEARCHED PLANTIFF DID NOT HAVE ANYTHING IN HIS POSSESION TO ACCOMPLISH WHAT IS ASSUMED IN REPORT.

13. INSTRUCTOR, YERENA, KNEW AREA WASN'T DESIGNATED OUT OF BOUNDS, AND TOLD PLANTIFF HE WOULD BEAT IT IF HE ASKED HIM THAT QUESTION AT THE 115 HEARING. AND HE POSTED A SIGN THE FOLLOWING DAY.

14. INSTRUCTOR, YERENA, MAKES REMARKS TO OTHER ASSIGNED IN THE CLASS THAT HE WAS GOING TO GET PLAINTIFF.

15. INSTRUCTOR, YERENA, HAS A HABIT OF ABUSING THE RULES VIOLATIONS REPORTS TO ACHIEVE PERSONAL DISLIKES AND PREJUDICE'S TO REMOVE STUDENTS FROM THE VOCATIONAL WORKPLACE.

16. WHEN PLAINTIFF ASKED INSTRUCTOR, YERENA, ABOUT THE R.V.R. THE DEFENDANT, YERENA, STATED IT WOULD BE CLASSIFIED AN ADMINISTRATIVE 115. BUT HIS SUPERVISOR TOLD HIM TO MAKE IT SERIOUS.

## V. LEGAL CLAIMS

54.    PLAINTIFFS REALLEGE AND INCORPORATE BY REFERENCE PARAGRAPHS 1-53.

55.    THE DUE PROCESS, CRUEL AND UNUSUAL AND DELIBERATE INDIFFERENCE VIOLATED PLAINTIFF ADAM SEAN AVRATIN'S RIGHTS AND CONSTITUTED CRUELL AND UNUSUALL PUNISHMENT, A DUE PROCESS VIOLATION WHEN MALICOUSLY TAKING LIBERTY UNDER THE FIRST, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

56.    THE PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN. PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPPABLY INJURED BY THE CONDUCT OF THE DEFFENDANTS, AND TAKING THE ADVANTAGE OF A UNIQUE SITUATION THAT BARS DEFENDANT REDRESS BY AN IMMENENT RELEASE TO NOT EXHAUST STATE REMEDIES. THIS CONDUCT FURTHER INJURED PLAINTIFF, UNLESS THIS COURT GRANTS THE DECLATORY AND INJUNCTIVE RELIEF WHICH PLAINTIFF SEEKS.

## VI. PRAYER FOR RELIEF

WHEREFORE, PLANTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTER JUDGEMENT GRANTING PLAINTIFFS:

57.   A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HERE IN VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

58.   COMPENSATORY DAMAGES IN THE AMOUNT OF $ 100.00 A DAY AGIANST EACH DEFENDANT, JOINTLY AND SEVERALLY.

59.   PUNITIVE DAMAGES IN THE AMOUNT OF $ 10,000.00 AGAINST EACH DEFENDANT

60.   A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY

61.   PLAINTIFF'S COSTS IN THIS SUIT

62.   ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER, AND EQUITABLE.

DATED: AUGUST 13, 2008.

ADAM SEAN AVRATIN
24155 W. DEL MONTE DR. #365
VALENCIA, CA. 91355

VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT
AND HEREBY VERIFY THAT MATTERS ALLEGED
THEREIN ARE TRUE, EXCEPT AS TO MATTERS
ALLEGED ON INFORMATION AND BELIEF, AND,
AS TO THOSE, I BELIEVE THEM TO BE TRUE.
I CERTIFY UNDER PENALTY OF PERJURY THAT
THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT IMPERIAL COUNTY,
CALIFORNIA ON AUGUST 13, 2008.

SIGNED: _____

ADAM SEAN AURATIN

# ORIGINAL

## EXHIBITS

A. TITLE 15, INSERTS OF RULES 3000.5 AND 3015(a).

B. STATEMENT OF RESPONSIBILITY/INMATE JOB AND DUTY STATEMENT.

C. DIAGRAM OF PAINT SHOP/ OUT OF BOUNDS MARKINGS.

D. NOTICE OF RELEASE DATE AND RESIDENCE PLAN.

E. APPLICATION FOR RESTORATION OF CREDITS.

F. C.D.C. 115 RULES VIOLATION REPORT(BY G.EDWARDS).

G. C.D.C. 115 INFORMATIVE CHRONO REPORT (BY ERNESTO YERENA).

H. GA 22 REQUEST FOR INTERVIEW(K.RUSH CCI.)

I. GA 22 EMERGENCY REQUEST FOR INTERVIEW(TO CAPTAIN MILLER.)

J. GA 22 REQUEST FOR INTERVIEW (ERNESTO YERENA)

K. POTENTIAL WITNESS LIST

L. SUPPORTING DECLARATIONS

M. INMATE APPEAL (602)

N. ORIGINAL RUR (REVIEWING OFFICERS SIGNATURE.)

O. TITLE 15, RULES TO APPEAL PROCESS

P.

Q.

R.

# EXHIBIT A

DIVISION 3. ADULT INSTITUTIONS,
PROGRAMS AND PAROLE

CHAPTER 1. RULES AND
REGULATIONS OF ADULT
OPERATIONS AND PROGRAMS

HISTORY:
1. Change without regulatory effect repealing preface filed 10-29-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).

Article 1.    Behavior

**3000. Definitions.**
The following are definitions of terms as used in these regulations:

Adverse Witness means a person who has given or will give information against a prisoner or parolee.

Appeal means a formal request for, or the act of requesting, an official change of a decision, action, or policy.

Appeal Form means Inmate/Parolee Appeal Form, CDC Form 602 (Rev. 12/87).

Architectural and Engineering Services means those services procured outside of the State's Civil Service procedures and which are rendered by an architect or engineer, but may include ancillary services logically or justifiably performed in connection therewith.

Asylum State means the state other than California in which a parolee-at-large is in custody.

Attempted Escape means an unsuccessful effort to breach a secured perimeter or the use of force against a person to attempt access into an unauthorized area. Some progress toward implementing an escape must be made to implement a plan. This includes, but is not limited to the following overt acts: acquiring unauthorized clothing or identification, preparing a hiding place in an unauthorized area, lying in wait for a potential hostage, attempting access to a perimeter that was unsupervised, unlawfully obtaining tools to aid in an escape, manufacturing a likeness of a person in order to substitute for the inmate's presence, or receiving assistance from other conspirators who acted upon an escape plan, e.g. a plan to escape uncovered from verbal, telephone or mail communication.

Board of Prison Terms (Board) means the state agency which is responsible for the administration of parole for those persons committed to the department under Penal Code section 1168 and those committed under Penal Code section 1170 who also meet the criteria found in Penal Code section 2962.

California Agency Parolee means a person released from department facility to parole supervision in a California community who subsequently is within the custody of any California agency, or subdivision thereof, except the department.

California Agency Prisoner means a prisoner who has been transferred from the custody of the department to the custody of any other California agency or subdivision thereof.

California Concurrent Parolee means a person on parole for a California sentence and a sentence of another jurisdiction who is being supervised in a California community pursuant to the Uniform Act for Out-of-State Parole Supervision (Penal Code sections 11175–11179).

Case Conference means a documented conference between a parole agent and his/her supervisor to discuss a parolee's behavior.

Case records file means the file which contains the information concerning an inmate which is compiled by the department pursuant to Penal Code Section 2081.5 and includes such components as the central file, education file, visiting file and parole field file.

Central File (C-File) means a master file maintained by the department containing records regarding each person committed to its jurisdiction.

Central Office Calendar means the calendar which is composed of administrative hearing officers as designated by the deputy director, parole hearings division. They are authorized to make decisions regarding matters reported to the parole hearings division, including the decision to order a hearing scheduled.

Central Office Hearing Coordinator means the parole hearings division employee at headquarters who is responsible for hearing schedules, attorney appointments, and other hearing-related services.

Certification means that a business concern has obtained verification that it meets the definition of disabled veteran business enterprise pursuant to Military and Veterans Code section 999(g) from an agency that has been authorized by law to issue such certification.

Chaplain means an individual duly designated by a religious denomination to discharge specified religious duties, including a native American Indian spiritual leader.

Chronological History means a CDC Form 112 (Rev. 9/83), Chronological History, prepared for each inmate, upon which significant dates and commitment information affecting the inmate are logged.

Classification and Parole Representative (C&PR) means the department employee designated at each institution to be that institution's liaison with releasing boards and parole staff.

Concurrent Parolee means a person on parole for a California sentence and a sentence of another jurisdiction who is being supervised in a state other than California pursuant to the Uniform Act for Out-of-State Parole Supervision (Penal Code sections 11175–11179).

Conditions of Parole mean the specific conditions under which a prisoner is released to parole supervision.

Confinement to Quarters (CTQ) means an authorized disciplinary hearing action whereby an inmate is restricted to their assigned quarters for a period not to exceed five days for administrative rule violations and ten days for serious rule violations.

Contraband means anything which is not permitted, in excess of the maximum quantity permitted, or received or obtained from an unauthorized source.

Controlled Medication means any drug which is prescribed by a physician and is given to an inmate in controlled dosages.

Controlled Substance means any substance, drug, narcotic, opiate, hallucinogen, depressant, or stimulant as defined by California Health and Safety Code section 11007.

Cooperative Parolee means a person on parole for a California sentence who is under parole supervision in a state other than California pursuant to the Uniform Act for Out-of-State Parole Supervision (Penal Code sections 11175–11179).

Course of conduct means two or more acts over a period of time, however short, evidencing a continuity of purpose.

Criminal Identification and Investigation (CI&I) Report means the report defined by Penal Code section 11105, commonly referred to as "Rap Sheet".

Cumulative Case Summary means the cumulative summary of specific portions of the record maintained by the department regarding each prisoner from reception to discharge.

Department means the department of corrections.

Designated Level II Housing means a housing facility encompassed by a facility security perimeter and constructed to provide celled housing for inmates with Level II classification scores.

Detainer means a written document received from an official representing a district attorney office, court, or correctional or law enforcement agent which indicates that an inmate is wanted by that office and the basis for the detainer.

§ 3000                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

Determinate Sentencing Law (DSL) Prisoner means a person sentenced to prison under Penal Code section 1170 for a crime committed on or after July 1, 1977.

Direct and Constant Supervision means an inmate shall be monitored and observed by CDC staff, either custody staff or work supervisor as indicated in these regulations, sufficiently to account for the specific whereabouts of the inmate at all times.

Director means the director of the department of corrections.

Disabled Veteran Business Enterprise means a business concern as defined in Military and Veterans Code section 999(g).

Disabled Veteran Business Enterprise focus paper means a publication that meets all of the following criteria: (1) has an orientation relating to the disabled veteran business enterprise; (2) is known and utilized by members of the disabled veteran business enterprise community; (3) primarily offers articles, editorials (if any), and advertisements of business opportunities aimed at disabled veteran business enterprises; and (4) is readily available within the geographical area for which the advertisement is placed and for which the services are to be performed.

Disabled Veteran Business Enterprise focus paper and trade paper means a publication that meets all of the criteria of a disabled veteran business enterprise focus paper and all of the criteria of a trade paper.

Disciplinary Detention means a temporary housing status which confines inmates so assigned to designated rooms or cells for prescribed periods of time as punishment for serious rule violations.

Disciplinary Free means without any finding of guilt of a disciplinary infraction filed on a CDC Form 115, Rule Violation Report, classified as either administrative or serious.

Disruptive Group—means any gang, other than a prison gang.

Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, the introduction of controlled substances into, any institution, camp, contract health facility, or community correctional facility for the purpose of sales or distribution.

Drugs means substances intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease, and as defined in Health and Safety Code section 11014. In may also include drug paraphernalia, as defined in Health and Safety Code section 11014.5.

Escape History refers to any reliable information or inmate self-admission in the central file to an escape, attempted escape, walkaway, or plan to escape. The available information describing the circumstances of the escape or attempted escape shall be evaluated in determining the level of risk to correctional safety and security posed by the inmate.

Examinee means a person who voluntarily takes a polygraph examination.

Ex-Offender means a person previously convicted of a felony in California or any other state, or convicted of an offense in another state which would have been a felony if committed in California.

Execution Type Murder describes the circumstances or manner of a fatal offense in which the victim is bound, cuffed, gagged, blindfolded, or forced to assume a position from which the victim is unable to resist or flee; the victim is shot at close range; or the manner of death demonstrates that the victim had no opportunity to defend himself or herself nor to flee.

Facility Security Perimeter is any combination of living unit, work area and recreation area perimeters that is set aside to routinely restrict inmate movement based on custody level. This perimeter will contract and expand depending upon the weather, lighting conditions and hours of operation.

Federal Consecutive Prisoner means a California prisoner who is also under sentence of the United States and is confined in a federal correctional facility, and whose California term shall commence upon completion of the United States' sentence.

Field File means a working file maintained by a parole unit office containing information about a parolee and his/her current parole.

Firm means any individual, firm, partnership, corporation, association, joint venture or other legal entity permitted by law to practice the professions of architecture, landscape architecture, engineering, environmental services, land surveying or construction project management.

Force, as applied to escape or Attempted Escape, refers to physical contact or threat of physical harm against a person to enable or attempt the escape.

Frequent and Direct Supervision means that staff supervision of an inmate shall be sufficient to ensure that the inmate is present within the area permitted.

Friendly Witness means any witness who is not an adverse witness.

Gang means any ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association or group, in two or more acts which include, planning, organizing threatening, financing, soliciting, or committing unlawful acts or acts of misconduct classified as serious pursuant to section 3315.

General Chrono means a CDC Form 128-B (Rev. 4–74) which is used to document information about inmates and inmate behavior. Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters.

Goal means a numerically expressed disabled veteran business enterprise objective as set out in Public Contract Code section 10115(c), that awarding departments and contractors are required to make efforts to achieve.

Good Cause means a finding based upon a preponderance of the evidence that there is a factual basis and good reason for the decision made.

Good Faith Effort means a concerted effort on the part of a potential contractor to seek out and consider disabled veteran-owned and operated business enterprises as potential contractors, and/or subcontractors in order to meet the program participation goals.

Grievance means a complaint about a decision, action, or policy which an inmate, parolee or staff wish to have changed.

Harassment means a willful course of conduct directed at a specific person, group, or entity which seriously alarms, annoys, or terrorizes that person, group, or entity and which serves no legitimate purpose.

Hearing Agent means the parole and community services division employee responsible for application of specific procedures pertaining to the parole revocation hearing process; the primary liaison between the parole and community services division and the releasing authorities in matters and procedures pertaining to the parole revocation hearing process.

Hearing Coordinator means an employee assigned to coordinate the revocation process within an institution or a parole and community services division region.

High Notoriety describes an inmate who must be treated as a significant escape risk due to the unusual level of public panic that his or her escape would likely cause. The risk of public panic is based upon the nature or circumstance of the inmate's crime, the inmate's criminal history, the inmate's behavior in custody, and extensive or prolonged media coverage of the crime beyond the closest large city and its surrounding communities. A High

10  *EXHIBIT A-2*

**TITLE 15**  DEPARTMENT OF CORRECTIONS AND REHABILITATION  **§ 3000**

Notoriety inmate is one who is perceived by the public to have criminal influence or access to significant amounts of money or drugs or power that may enable the inmate to escape, trigger a public disturbance, or victimize any person or a witness to their conviction offense. Bases for the High Notoriety designation include, but are not limited to, Execution Type Murder, Multiple Murders, mutilation of victims, an original sentence of Death, a sentence of Life Without the Possibility of Parole, a total term of 100 years or more.

Hold means to retain an inmate or parolee, who is under the director's jurisdiction, in custody at an institution or a local detention facility in response to the legal request of a law enforcement or correctional agency representative.

Immediate Family Members means legal spouse; natural parents; adoptive parents, if the adoption occurred and a family relationship existed prior to the inmate's incarceration; stepparents or foster parents; grandparents; natural, step, or foster brothers or sisters; the inmate's natural and adoptive children; grandchildren; and legal stepchildren of the inmate. Aunts, uncles, and cousins are not immediate family members unless a verified foster relationship exists.

Incarcerating Jurisdiction means the jurisdiction where an Interstate or Western Interstate Corrections Compact, federal contract, federal concurrent, or concurrent prisoner is incarcerated.

Indeterminate Sentence Law (ISL) means a person sentenced to prison for a crime committed on or before June 30, 1977, who would have been sentenced under Penal Code section 1170 if he/she had committed the crime on or after July 1, 1977.

Indigent Inmate means an inmate who is wholly without funds at the time they were eligible for withdrawal of funds for canteen purchases.

Inmate means a person under the jurisdiction of the director and not paroled. Inmate and prisoner are synonymous terms.

Inmate Match means a one-on-one match of a citizen volunteer and an inmate who receives few or no visits to establish a relationship which encourages positive inmate behavior and programming.

Institution Head means a warden, regional parole administrator, or designated manager of a facility housing inmates.

Interstate Unit means the office of the parole and community services division which coordinates the supervision of California cooperative parolee and the return of parolees-at-large from asylum states. The unit is responsible for Interstate and Western Interstate Corrections Compacts, federal contrast, federal concurrent, and consecutive prisoners and multijurisdiction parolees incarcerated in the prison of another jurisdiction.

Joint Venture Employer (JVE) means any public entity, nonprofit or for profit entity, organization, or business which contracts with the director for the purpose of employing inmate labor.

Joint Venture Program (JVP) means a contract entered into between the director and any public entity, nonprofit or for profit entity, organization, or business for the purpose of employing inmate labor.

Laboratory means any toxicological or criminalistic laboratory which has been recognized by the state, other certifying agency, or which is accepted by any local, county, or state prosecuting authority to provide evidence as to the presence of controlled substances in human body fluids or confirm that a substance is or contains any controlled substance.

Legal Status Sheet (LSS) means a CDC Form 188; Legal Status Summary, containing the commitment and release status of an inmate.

Life Prisoner means a prisoner serving a sentence of 15- or 25-years-to-life.

Lockdown means that a portion of the facility is affected by suspension of required programs or services, and inmates are not released except as determined by the facility administration on an

individuals, case-by-case basis. As determined by the facility administration, under such circumstances only, critical inmate workers in the affected housing units/sub-facilities will be permitted to attend to work assignments under escort; and all but essential functions are suspended in those affected housing units or sub-facilities, e.g., yard, canteen draws, religious services, and visiting.

Lockout means any refusal by an employer to permit any group of five or more employees to work as a result of a dispute with such employees affecting wages, hours or other terms or conditions of employment of such employees.

Management Concern means a behavior observed or documented in the inmate's criminal history that demonstrates to a classification committee that the inmate has a propensity towards violence against self or others; has a history of inciting or pressuring others toward criminal behavior; preys on more vulnerable members of society; or portrays a level of criminal sophistication and/or access to large amounts of drugs, money, or power. This may include disruptive groups and prison gang members or affiliates.

Manuscript means any written, typed or printed articles of fiction and nonfiction; poems; essays; gags; plays; skits; paintings; sketches; drawings; or musical compositions created by an inmate.

Material Evidence means evidence which has a substantial bearing on matters in dispute and legitimate and effective influence on the decision of a case.

Media representative means a print, wire service or broadcast reporter and their technical crew. A free-lance writer with assignment verification in the form of a letter from the represented outlet is also a media representative.

Minimum Eligible Parole Date (MEPD) means the earliest date on which an Indeterminate Sentence Law or life prisoner may legally be released on parole.

Multijurisdiction Parolee means any concurrent, California concurrent, California agency, or cooperative parolee.

Multijurisdiction Prisoner means any federal contract, federal concurrent, federal consecutive, concurrent, consecutive, California agency, Interstate or Western Interstate Corrections Compact prisoner.

Multiple Murders means the inmate killed or was involved in killing more than one victim during the commission of the crime for which the inmate is currently serving a Life term. This does not necessarily include an inmate who has killed more than one person during his or her criminal career.

Out-to-Court means an inmate is temporarily removed from a facility to be brought before a court to be tried for an offense; to be examined by a grand jury or magistrate, or for any other court proceedings.

Parole Agent means an employee and his/her supervisors in the department who are assigned to supervise those persons released from incarceration to the supervision of the parole and community services division.

Parole Hearings Division means the division of the department which is responsible for the department's administration of paroles for those persons committed to the department under Penal Code section 1170, except those who also meet the criteria of Penal Code section 2962.

Parole Violation means conduct by a parolee which violates the conditions of parole or otherwise provides good cause for the modification or revocation of parole.

Parole Violation Extension means an extension of return-to-custody time for a parolee in revoked status.

Parole Violator means a parolee who is found to have violated parole and who may be returned to custody pursuant to Penal Code section 3057.

Parolee means a felon or civil addict commitment released from confinement in state prison to supervision in the community.

11  EXHIBIT A-3

§ 3000 DEPARTMENT OF CORRECTIONS AND REHABILITATION **TITLE 15**

Parolee-at-Large means an absconder from parole supervision, who is declared a fugitive by releasing authority action suspending parole.

Polygraph Examination means the procedure by which a polygraph examiner renders an opinion as to the veracity of statements made by an examinee.

Polygraph Examiner means a person who purports to be able to determine the truthfulness of statements through the use of a polygraph instrument.

Preprison Credit means credit for time in custody as certified by the court and provided for in Penal Code section 2900.5.

Prison Gang—means any gang which originated and has its roots within the department or any other prison system.

Prisoner means a person in custody of the director and not paroled. Prisoner and inmate are synonymous terms.

Probation Officer's Report means a CDC Form 174 (Rev. 3/87), Probation Officer's Report, prepared by the probation officer in the county where the offense was committed.

Program Failure means any inmate who generates a significant disciplinary history within the last 180 days from the current date. A guilty finding for two serious Rules Violation Reports or one serious and two administrative Rules Violation Reports within that 180 day time period is reasonable evidence of a significant disciplinary history and may be considered a program failure.

Project, as used in sections 3475 through 3478, means a proposal of something to be done for which a contract has not yet been awarded.

Public Interest Case is a case identified by a Classification Staff Representative as involving a High Notoriety inmate who requires exceptional placement.

Received Date means the date an inmate is initially received into a facility of the department.

Receiving State means the state which supervises a cooperative parolee or a concurrent parolee.

Regional Parole Administrator means the department's administrator of a parole and community services division geographical region.

Relevant Evidence means evidence which tends to prove or disprove an issue or fact in dispute.

Religious Artifact means any bag, cross, medallion, totem, bible, pipe, or other item in which the possessor places religious or spiritual significance.

Religious Review Committee (RRC) means a committee formed and maintained at each institution that reviews and reaches a decision regarding requests for reasonable accommodation and/or access to religious services.

Responsible Bidder means, in addition to other State contracting requirements, a bidder who has either met the disabled veteran business enterprise goal or who has demonstrated that a good faith effort was made to meet the goal.

Restricted or controlled inmate movement means that the affected inmates are not permitted normal release schedules and that all or specified movement may require a greater degree of supervision than normal. Such restriction may include, but is not limited to controlled feeding, a section at a time, rather than the entire unit or sub-facility being released. Such restrictions do not constitute a State of Emergency as determined in Section 3383.

Review means formal investigation into facts related to appeal allegations, and documentation of the findings and the decision to grant or deny the appeal.

Room and Board means all that the department provides for the inmate's care, housing and retention.

Screening means evaluation by staff to ascertain that specified requirements or criteria are met.

Secure Perimeter means the largest Security Perimeter that physically retains inmates in custody on facility property.

Security Perimeter means any unbroken physical barrier or combination of physical barriers that restricts inmate movement to a contained area without being processed through a door, gate, or sallyport.

Serious injury means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring suturing; and disfigurement.

Significant work related disciplinary history means a guilty finding for two work-related serious rule violation reports or one serious and two administrative work-related rule violation reports within the last 180 days from the date of the current work-related disciplinary offense.

Small Business Firm means a business in which the principal office is located in California and the officers of such business are domiciled in California which is independently owned and operated and which is not dominant in its field of operation. The maximum dollar volume that a small business may generate shall vary from industry to industry to the extent necessary to reflect differing characteristics of such industries.

Special Assignment means a departmentally-approved special program, temporary or short-term assignment for departmental convenience, or medical or psychiatric treatment category with exceptional credit-earning provisions.

Street gang refers to a gang as defined herein except that it is not a prison gang.

Strike means any concerted act of more than 50 percent of the bargaining unit employees in a lawful refusal of such employees under applicable state or federal law to perform work or services for an employer, other than work stoppages based on conflicting union jurisdictions or work stoppages unauthorized by the proper union governing body.

Subcontractor means any person or entity that enters into a subcontract with a prime contractor for work, materials, supplies and/or labor.

Sweat Lodge means a native American Indian ceremonial hut.

Terminal illness means an incurable disease process with progression unresponsive to medical intervention where a medical doctor estimates that death will occur within a six-month period.

Time Computation means the department's uniform method for calculating an inmate's term and minimum and maximum release dates as governed by law.

Time Served means that time an inmate is imprisoned with the department between their received date and a given date.

Trade Paper means a publication that meets all of the following criteria: (1) has a business orientation relating to the trade or industry for which the advertisement is being placed; (2) is known and utilized by members of that trade or industry; (3) primarily offers articles, editorials (if any), and advertisements of business opportunities aimed at that trade or industry; and (4) is readily available within the geographical area for which the advertisement is placed and for which the services are to be performed.

Unit Supervisor means a supervisor of case-carrying parole agents in the parole and community services division.

Unusual Violence describes the circumstances of an offense wherein the inmate acted to torture the victim over a period of time or intentionally made the victim endure great pain and suffering. A single act of stabbing, shooting, or beating of a victim does not necessarily qualify.

Vexatious Litigant means a person who does any of the following: (1) in the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (a) finally determined adversely to the person or; (b) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing; (2) after a litigation has been finally,

*EXHIBIT A-4*

**TITLE 15**  DEPARTMENT OF CORRECTIONS AND REHABILITATION  **§ 3000**

determined against the person, repeatedly relitigates or attempts to relitigate in propria persona either; (a) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or; (b) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined; (3) in any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay; (4) has previously been declared to be a vexatious litigant by any state or federal court of record in any actions or proceeding based upon the same or substantially similar facts, transaction, or occurrence. Pursuant toIn re Bittaker,Writs of Habeas Corpus are not included under vexatious litigation.

Work Change Area means a portal controlled by staff and/or locking gates that is used to control access and includes the area where staff search inmates prior to permitting inmates in or out of adjacent areas such as Prison Industry Authority yards.

Worktime Credit means credit towards a prisoner's sentence for satisfactory performance in work, training or education programs.

NOTE: Authority cited: Sections 2717.3, 5058 and 5058.3, Penal Code; Section 10115.3(b), Public Contract Code; and Sections 4525(a), 4526 and 14837, Government Code. Reference: Sections 186.22, 243, 530, 532, 646.9, 653m, 832.5, 1389, 2080, 2081.5, 2600, 2601, 2700, 2717.1, 2717.6, 2932.5, 4570, 5009, 5054, 5068, and 7000 et seq., Penal Code; Sections 1132.4 and 1132.8, Labor Code; Sections 10106, 10108, 10108.5, 10115, 10115.1, 10115.2, 10115.3 and 10127, Public Contract Code; and Section 999, Military and Veterans Code; Section 391, Code of Civil Procedure; In re Bittaker, 55 Cal.App. 4th 1004, 64 Cal. Rptr. 2d 679; and Section 11007, Health and Safety Code.

HISTORY:
1. Amendment of subsection (a)(19) filed 12-1-78 as an emergency; designated effective 1-1-79 (Register 78, No. 48). For prior history, see Register 77, No. 40.
2. Certificate of Compliance filed 2-22-79 (Register 79, No. 8).
3. Amendment filed 11-20-79 as an emergency; designated effective 1-1-80 (Register 79, No. 47). A Certificate of Compliance must be filed within 120 days or emergency language will be repealed on 3-20-80.
4. Certificate of Compliance filed 2-15-80 (Register 80, No. 7).
5. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
6. Change without regulatory effect repealing and adopting new section filed 10-29-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).
7. Amendment filed 11-28-90 as an emergency; operative 11-28-90 (Register 91, No. 6). A Certificate of Compliance must be transmitted to OAL by 3-28-91 or emergency language will be repealed by operation of law on the following day.
8. Amendment adding definitions of "disruptive group," "gang," and "prison gang" filed 5-20-91; operative 6-19-91 (Register 91, No. 26).
9. Amendment adding definition for "Media representative" filed 12-19-91 as an emergency; operative 12-19-91 (Register 92, No. 4).
10. Amendment adding definitions for "Disciplinary Free," "Inmate Match," and "Special Assignment" and amending Note filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.
11. Amendment adding definition for "Case records file" and amendment of Note filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.

12. Amendment adding definition for "Detainer" and amendment of Note filed 12-19-91 as an emergency; operative 12-19-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-17-92 or emergency language will be repealed by operation of law on the following day.
13. Amendment adding definitions for "Received Date," "Time Computation," and "Time Served" filed 12-20-91 as an emergency; operative 12-20-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-20-92 or emergency language will be repealed by operation of law on the following day.
14. Editorial correction of "Firm" and "Grievance" filed 12-20-91; operative 12-20-91 (Register 92, No. 4).
15. Amendment adding definition for "Terminal illness" filed 5-20-92; operative 5-20-92 (Register 92, No. 21). A Certificate of Compliance must be transmitted to OAL 9-17-92 or emergency language will be repealed by operation of law on the following day.
16. Editorial correction of printing error restoring inadvertently deleted definitions originally filed 12-20-91 (Register 92, No. 24).
17. Certificate of Compliance as to 12-20-91 order adding definition for "case records file" transmitted to OAL 4-15-92 and filed 5-27-92 (Register 92, No. 24).
18. Certificate of Compliance as to 12-29-91 order adding definitions for "Disciplinary Free," "Inmate Match," and "Special Assignment" transmitted to OAL 4-20-92 and filed 5-28-92 (Register 92, No. 24).
19. Certificate of Compliance as to 12-19-91 order adding definition of "Detainer" transmitted to OAL 4-20-92 and filed 5-28-92 (Register 92, No. 24).
20. Certificate of Compliance as to 12-19-91 order transmitted to OAL 4-17-92 and filed 6-1-92 (Register 92, No. 24).
21. Certificate of Compliance as to 12-20-91 order transmitted to OAL 4-20-92 and filed 6-2-92 (Register 92, No. 24).
22. Certificate of Compliance as to 5-20-92 order transmitted to OAL 9-9-92; disapproved by OAL and order of repeal of 5-20-92 order filed on 10-22-92 (Register 92, No. 43).
23. Amendment adding definition for "Terminal illness" refiled 10-23-92 as an emergency; operative 10-22-92 pursuant to Government Code section 11346.1(h) (Register 92, No. 43). A Certificate of Compliance must be transmitted to OAL 2-23-93 or emergency language will be repealed by operation of law on the following day.
24. Amendment adding "Cumulative case summary," "Chronological history," "Legal status sheet," "Probation officer's report" and "Criminal identification and investigation report" and amendment of Note filed 11-5-92; operative 12-7-92 (Register 92, No. 45).
25. Change without regulatory effect amending "Immediate Family Members" filed 1-26-93 pursuant to section 100, title 1, California Code of Regulations (Register 93, No. 5).
26. Certificate of Compliance as to 10-23-92 order transmitted to OAL 12-18-92 and filed 2-3-93 (Register 93, No. 6).
27. Amendment adding "Harassment" and amendment of Note filed 7-29-93 as an emergency; operative 7-29-93 (Register 93, No. 31). A Certificate of Compliance must be transmitted to OAL 11-26-93 or emergency language will be repealed by operation of law on the following day.
28. Amendment filed 9-3-93; operative 9-3-93 pursuant to Government Code section 11346.2(d) (Register 93, No. 36).
29. Amendment of "Good Faith Effort," "Minority Business Enterprise," "Responsible Bidder" and "Women Business Enterprise" and Note and new definitions "Disabled Veteran Business Enterprise," "Goal," "Minority and/or Women and/or Disabled Veteran Business Enterprise focus paper," "Minority and/or Women and/or Disabled Veteran Business Enterprise focus paper and trade paper," "Project," "Subcontractor," and "Trade Paper" filed 10-18-93 as an emergency; operative 10-18-93 (Register 93, No. 43). A Certificate of Compliance must be transmitted to OAL by 2-15-94 or emergency language will be repealed by operation of law on the following day.

13  EXHIBIT A-5

§ 3000.5                 DEPARTMENT OF CORRECTIONS AND REHABILITATION                **TITLE 15**

30. Definitions added for "Chaplain," "Religious Artifact," and "Sweat Lodge" and amendment of Note filed 11-1-93; operative 12-13-93 (Register 93, No. 45).

31. Amendment adding "Ex-Offender" filed 11-30-93; operative 12-30-93 (Register 93, No. 49).

32. Certificate of Compliance as to 7-29-93 order transmitted to OAL 11-18-93 and filed 12-31-93 (Register 94, No. 1).

33. Certificate of Compliance as to 10-18-93 order transmitted to OAL 2-15-94 and filed 3-16-94 (Register 94, No. 11).

34. Amendment of "Inmate," new definition "Serious injury," and amendment of Note filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

35. Amendment of "Institution Head" filed 9-13-96 as an emergency; operative 9-13-96. A Certificate of Compliance must be transmitted to OAL by 2-24-97 or emergency language will be repealed by operation of law on the following day.

36. Amendment adding definition of "Certification" filed 11-22-96 as an emergency; operative 11-22-96 (Register 96, No. 47). A Certificate of Compliance must be transmitted to OAL by 5-1-97 pursuant to Penal Code section 5058(e) or emergency language will be repealed by operation of law on the following day.

37. Certificate of Compliance as to 9-13-96 order transmitted to OAL 11-22-96 and filed 1-6-97 (Register 97, No. 2).

38. Certificate of Compliance as to 11-22-96 order, including amendment of definition of "Certification," transmitted to OAL 3-20-97 and filed 5-1-97 (Register 97, No. 18).

39. Amendment adding definitions of "Lockdown" and "Restricted or controlled inmate movement" filed 10-16-97; operative 11-15-97 (Register 97, No. 42).

40. Amendment adding definition of "Program failure" filed 10-16-97 as an emergency; operative 10-16-97 (Register 97, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-25-98 or emergency language will be repealed by operation of law on the following day.

41. Amendment adding definition of "Vexatious Litigant" and amending Note filed 11-12-97 as an emergency; operative 11-12-97 (Register 97, No. 46). A Certificate of Compliance must be transmitted to OAL by 3-13-98 or emergency language will be repealed by operation of law on the following day.

42. Editorial correction of definition of "Vexatious Litigant" and Histories 40 and 41 (Register 98, No. 18).

43. Amendment adding definition of "Vexatious Litigant" and amending Note refiled 4-29-98 as an emergency; operative 4-29-98 (Register 98, No. 18). A Certificate of Compliance must be transmitted to OAL by 10-6-98 or emergency language will be repealed by operation of law on the following day.

44. Certificate of Compliance as to 10-16-97 order, including removal of definition of "Program failure" to section 3062(n), transmitted to OAL 3-23-98 and filed 5-4-98 (Register 98, No. 19).

45. Certificate of Compliance as to 4-29-98 order, including further amendment of definition of "Vexatious Litigant" and Note, transmitted to OAL 6-12-98 and filed 7-21-98 (Register 98, No. 30).

46. Amendment adding new definitions of "Controlled Medication," "Controlled Substance," "Distribution" and "Laboratory" and amendment of Note filed 8-27-98 as an emergency; operative 8-27-98 (Register 98, No. 35). A Certificate of Compliance must be transmitted to OAL by 2-3-99 or emergency language will be repealed by operation of law on the following day.

47. Amendment filed 11-13-98 as an emergency; operative 11-13-98 (Register 98, No. 46). A Certificate of Compliance must be transmitted to OAL by 3-15-99 or emergency language will be repealed by operation of law on the following day.

48. Amendment adding new definitions of "Controlled Medication," "Controlled Substance," "Distribution" and "Laboratory" and amendment of Note refiled 2-3-99 as an emergency; operative 2-3-99 (Register 99, No. 6). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 7-13-99 or emergency language will be repealed by operation of law on the following day.

49. Certificate of Compliance as to 11-13-98 order transmitted to OAL 2-10-99 and filed 3-8-99 (Register 99, No. 11).

50. Certificate of Compliance as to 2-3-99 order transmitted to OAL 5-12-99 and filed 6-24-99 (Register 99, No. 26).

51. Amendment filed 3-27-2000 as an emergency; operative 3-27-2000 (Register 2000, No. 13). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 9-5-2000 or emergency language will be repealed by operation of law on the following day.

52. Amendment of definition of "Chronological History" filed 8-28-2000; operative 9-27-2000 (Register 2000, No. 35).

53. Certificate of Compliance as to 3-27-2000 order transmitted to OAL 9-5-2000; disapproval and order of repeal and deletion reinstating section as it existed prior to emergency amendment by operation of Government Code 11346.1(f) filed 10-18-2000 (Register 2000, No. 42).

54. Amendment filed 10-19-2000 deemed an emergency pursuant to Penal Code section 5058(e); operative 10-19-2000 (Register 2000, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-27-2001 or emergency language will be repealed by operation of law on the following day.

55. Amendment adding definition of "General Chrono" filed 11-16-2000; operative 12-16-2000 (Register 2000, No. 46).

56. Certificate of Compliance as to 10-19-2000 order, including further amendment of definitions of "Execution Type," "Murder," "High Notoriety" and "Public Interest Case," transmitted to OAL 3-27-2001 and filed 5-3-2001 (Register 2001, No. 18).

57. Amendment of definitions of "Firm" and "Small Business Firm" and amendment of Note filed 7-12-2002; operative 8-11-2002 (Register 2002, No. 28).

58. Amendment adding definition of "Street gang" and amendment of Note filed 8-27-2002 as an emergency; operative 8-27-2002 (Register 2002, No. 35). Pursuant to Penal Code section 5058.3 a Certificate of Compliance must be transmitted to OAL by 2-4-2003 or emergency language will be repealed by operation of law on the following day.

59. Certificate of Compliance as to 8-27-2002 order transmitted to OAL 1-21-2003 and filed 3-6-2003 (Register 2003, No. 10).

60. Amendment adding definitions of "Program failure" and "Significant work related disciplinary history" filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.

61. Amendment adding definitions of "Program failure" and "Significant work related disciplinary history" refiled 6-17-2004 as an emergency; operative 6-17-2004 (Register 2004, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2004 or emergency language will be repealed by operation of law on the following day.

62. Certificate of Compliance as to 6-17-2004 order transmitted to OAL 11-16-2004 and filed 12-29-2004 (Register 2004, No. 53).

63. New definition of "Religious Review Committee (RRC)" filed 1-17-2006 as an emergency; operative 1-17-2006 (Register 2006, No. 3). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-26-2006 or emergency language will be repealed by operation of law on the following day.

64. Amendment of definition of "Program failure" filed 6-9-2006; operative 7-9-2006 (Register 2006, No. 23).

65. Certificate of Compliance as to 1-17-2006 order transmitted to OAL 6-22-2006 and filed 7-27-2006 (Register 2006, No. 30).

**3000.5. Rules of Construction.**

The following rules of construction apply to these regulations, except where otherwise noted:

(a) The enumeration of some criteria for the making of discretionary decisions does not prohibit the application of other criteria reasonably related to the decision being made.

14  EXHIBIT A-6

TITLE 15       DEPARTMENT OF CORRECTIONS AND REHABILITATION       § 3003

(b) The order in which criteria are listed does not indicate their relative weight or importance.

(c) "Shall" is mandatory, "should" is advisory, and "may" is permissive.

(d) The past, present, or future tense includes the others.

(e) The masculine gender includes the feminine gender; the singular includes the plural.

(f) The time limits specified in these regulations do not create a right to have the specified action taken within the time limits. The time limits are directory, and the failure to meet them does not preclude taking the specified action beyond the time limits.

NOTE: Authority cited: section 5058 and Stats. 1992, ch. 695, sec. 45. Reference: Sections 3000 and 5054, Penal Code.

HISTORY:

1. New section filed 9-3-93; operative 9-3-93 pursuant to Government Code section 11346.2(d) (Register 93, No. 36).

## 3001. Subject to Regulations.

Regardless of commitment circumstances, every person committed or residing in facilities of the department is subject to the rules and regulations of the director, and to the procedures established by the warden, superintendent, or parole region administrator responsible for the operation of that facility. Persons on parole or civil addict outpatient status are subject to such director's rules, regulations and parole region procedures as may be applicable to such persons.

## 3001.5. Assignment to Caseworker.

Upon reception at a facility, each inmate shall be assigned a caseworker.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 5054 and 5068, Penal Code.

HISTORY:

1. New section filed 10-15-92; operative 11-16-92. (Register 92, No. 42).

## 3002. Notice of Program, Behavioral, and Participation Expectations.

(a) Within 14 days of reception by the Department of Corrections or upon return to confinement in a departmental institution or facility, every inmate or parolee shall be issued a copy of the Rules and Regulations of the Director of Corrections and copies of all rule changes that have occurred since the last complete reprinting and reissue of the rules and regulations. Each inmate and parolee shall sign a receipt for the rules. The receipt shall be filed as a permanent record in the inmate's central file. In addition:

(1) Spanish language copies of the rules and regulations of the director shall be maintained at each reception center, institution and facility where inmates are confined. Notice shall be given in Spanish that a Spanish version of the rules is available for inspection. These rules shall be made available for review by Spanish speaking inmates who cannot read English.

(2) Within 14 days of transfer to another departmental institution or facility, the new arrival shall be given a written summary of local procedures governing the conduct and activities of inmates confined at that location and a summary of the range of work and training programs offered by and available at that institution or facility. The summary or summaries shall also include: procedures governing mail and visiting, the inmate's right to appeal and appeal procedures, the facility's basic daily schedule, and where and how additional procedural information of interest may be obtained. New arrivals shall also be given verbal staff instructions regarding the procedures.

Staff instructions shall also be given to newly received inmates regarding the possibility of receiving a one-third reduction of their sentence or minimum eligible parole date for refraining from acts or activities of misbehavior and by participating in assigned work and program activities.

(b) During regularly scheduled institution and reception center inmate orientation sessions each inmate or parolee shall be advised of the following:

(1) The ability to earn credits by participating in assigned work and program activities; and,

(2) The availability of work and program activities; and,

(3) The possible loss of credits resulting from acts or activities of misbehavior; and,

(4) The availability of and procedures for access to health care including daily sick call procedures.

(5) Reception centers shall incorporate the inmate's acknowledgement of the receipt of the summary of reception center work and program activities in the same form used as a receipt for issue of the rules and regulations to the inmate.

(6) When inmates are placed in specialized housing with specialized or limited program options and opportunities to participate, the initial classification committee shall explain the options and opportunities available to the inmate within that specialized unit. A copy of the committee's chrono reflecting the discussion shall be given to the inmate and a copy placed in the inmate's central file.

(7) The facility location where Board of Prison Terms' Rules may be reviewed by the inmate.

(8) Available institution social services.

(c) The issuance of rules and regulations and the inmate's receipt for same is required in order to comply with Sections 2080 and 2930 of the Penal Code. An inmate's refusal to sign a receipt for the issue of rules and regulations, work and program summaries, or work and program agreements or understandings, shall be noted by staff, and the receipt shall be filed in the inmate's central file. Refusal or failure to acknowledge the receipt of information shall not relieve the inmate from any responsibility to behave and participate as expected nor from the consequence for misbehavior or refusal or failure to participate.

(d) Each institution and reception center shall provide a means of advising inmates who cannot read English of the expectations contained in this section. The provisions shall include communication of the expectations to those inmates who also have impaired hearing.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2080, 2930, 2931 and 5054, Penal Code.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).

2. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).

3. Amendment filed 5-4-83; designated effective 6-1-83 pursuant to Government Code section 11346.2(d). (Register 83, No. 19).

4. Amendment of subsections (a), (b) and new subsection (d) filed 2-8-88; operative 3-9-88 (Register 88, No. 7).

5. Editorial correction of printing errors in subsections (a)(1) and (b)(3) (Register 92, No. 5).

6. New subsections (b)(7)–(8) filed 10-15-92; operative 11-16-92 (Register 92, No. 42).

## 3003. Threats Against Public Officials.

Any inmate away from a secure perimeter facility or parolee who makes a written or verbal threat against the life of any official specified in Penal Code section 76 with the intent and apparent ability to carry out the threat shall immediately be placed in custody at a jail or secure perimeter facility pending disposition of the charges.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 76, 3056, 5054, and 6253, Penal Code.

HISTORY:

1. New section filed 10-18-93; operative 11-17-93 (Register 93, No. 43). For prior history, see Register 89, No. 41.

EXHIBIT A-7

§ 3004                     DEPARTMENT OF CORRECTIONS AND REHABILITATION                     TITLE 15

**3004.  Rights and Respect of Others.**

(a) Inmates and parolees have the right to be treated respectfully, impartially, and fairly by all employees. Inmates and parolees have the responsibility to treat others in the same manner. Employees and inmates may use first names in conversation with each other when it is mutually acceptable to both parties.

(b) Inmates, parolees and employees will not openly display disrespect or contempt for others in any manner intended to or reasonably likely to disrupt orderly operations within the institutions or to incite or provoke violence.

(c) Inmates, parolees and employees will not subject other persons to any form of discrimination because of race, religion, nationality, sex, political belief, age, or physical or mental handicap.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).

2. Amendment of subsection (a) filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40).

3. New subsection (c) filed 4-18-80; effective thirtieth day thereafter (Register 80, No. 16).

**3005.  Conduct.**

(a) Inmates and parolees shall obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder, or otherwise endangers facility, outside community or another person.

(b) Obeying Orders. Inmates and parolees must promptly and courteously obey written and verbal orders and instructions from department staff, and from employees of other agencies with authorized responsibility for the custody and supervision of inmates and parolees.

(c) Force or Violence. Inmates shall not willfully commit or assist another person in the commission of a violent injury to any person or persons, including self mutilation or attempted suicide, nor attempt or threaten the use of force or violence upon another person. Inmates shall not willfully attempt to incite others, either verbally or in writing, or by other deliberate action, to use force or violence upon another person.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 242, 295–300.3, 2931 and 5054, Penal Code.

HISTORY:

1. Repealer and new section (b) filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).

2. New subsection (c) filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).

3. Amendment of subsection (c) filed 6-30-77 as an emergency; effective upon filing (Register 77, No. 27).

4. Amendment of subsection (c) filed 9-29-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 40).

5. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

6. Change without regulatory effect amending subsection (a) filed 6-5-91 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 31).

7. Amendment of subsection (c) filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

8. Amendment of Note filed 9-20-99 as an emergency; operative 9-20-99 (Register 99, No. 39). Pursuant to Penal Code section 5058(e) a Certificate of Compliance must be transmitted to OAL by 2-28-2000 or emergency language will be repealed by operation of law on the following day.

9. Certificate of Compliance as to 9-20-99 order transmitted to OAL 1-14-2000 and filed 2-22-2000 (Register 2000, No. 8).

10. Amendment of subsection (c) and amendment of Note filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of

Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.

11. Amendment of subsection (c) and amendment of Note refiled 6-17-2004 as an emergency; operative 6-17-2004 (Register 2004, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2004 or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 6-17-2004 order transmitted to OAL 11-16-2004 and filed 12-29-2004 (Register 2004, No. 53).

**3006.  Contraband.**

Inmates may possess only the personal property, materials, supplies, items, commodities and substances, up to the maximum amount, received or obtained from authorized sources, as permitted in these regulations. Possession of contraband as defined in section 3000 may result in disciplinary action and confiscation of the contraband.

(a) Dangerous Property. Inmates may not possess or have under their control any weapons, explosives, explosive making material, poisons or any distructive devices, nor shall they possess or assist in circulating any writing or voice recording which describes the making of any weapons, explosives, poisons, or destructive devices.

(b) Money. Inmates may not possess money. If an inmate finds money and voluntarily surrenders it, and the rightful owner does not claim it within 30 days, it will be credited to the inmate's trust account.

(c) Except as authorized by the institution head, inmates shall not possess or have under their control any matter which contains or concerns any of the following:

(1) Any matter of a character tending to incite murder, arson, riot, or any form of violence or physical harm to any person, or any ethnic, gender, racial, religious, or other group.

(2) Blackmail or extortion.

(3) Contraband, or sending or receiving contraband.

(4) Plans to escape or assist in an escape.

(5) Plans to disrupt the order, or breach the security, of any facility.

(6) Plans for activities which violate the law, these regulations, or local procedures.

(7) Coded messages.

(8) A description of the making of any weapon, explosive, poison or destructive device.

(9) Illustrations, explanations, and/or descriptions of how to sabotage or disrupt computers, communications, or electronics.

(10) Diskettes.

(11) Catalogs, advertisements, brochures, and material whose primary purpose is to sell a product(s) or service(s) and when taken as a whole, lacks serious literary, artistic, political, educational, or scientific value.

(12) Maps depicting any area within a ten mile radius of a facility.

(13) Gambling or a lottery.

(14) Markings on the envelope which are obscene in nature as described in subsection (15) below.

(15) Obscene material and mail containing information concerning where, how, or from whom obscene material may be obtained.

(A) Obscene material means material taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest; and is material which taken as a whole, depicts or describes sexual conduct; and which, taken as a whole, lacks serious literary, artistic, political, or scientific value.

(B) When it appears from the nature of the matter or the circumstances of its dissemination, distribution, or exhibition that it appeals to deviant sexual groups.

*EXHIBIT A-8*

**TITLE 15**   DEPARTMENT OF CORRECTIONS AND REHABILITATION   **§ 3009**

(C) Material subject to the tests in paragraphs (A) or (B) includes, but is not limited to material that:

(1) Depicts, displays, or describes penetration of the vagina or anus, or contact between the mouth and the genitals.

(2) Depicts, displays, or describes bestiality, sadomasochism, or an excretory function including urination, defecation, or semen.

(3) Portrays the nudity of a minor, or person who appears to be under 18 years old.

(4) Portrays conduct which appears to be non-consensual behavior.

(5) Portrays conduct which is or appears to be forceful, threatening, or violent.

(6) Portrays conduct where one of the participants is a minor, or appears to be under 18 years old.

(16) Material that is reasonably deemed to be a threat to legitimate penalogical interests.

(17) Sexually explicit images that depict frontal nudity in the form of personal photographs, drawings, magazines, or other pictorial format.

(A) Sexually explicit material shall be defined as material that shows the frontal nudity of either gender, including the exposed female breast(s) and/or the genitalia of either gender.

(B) The following sexually explicit material shall be allowed:

1. Departmentally purchased or acquired educational, medical/scientific, or artistic materials, such as books or guides purchased by the department for inclusion in institution libraries and/or educational areas; or

2. Educational, medical/scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern, and/or post modern era art, purchased or possessed by inmates and approved by the institution head or their designee on a case-by-case basis.

(18) Any tobacco product, or tobacco cessation product, that contains nicotine.

(d) Anything in the possession of an inmate which is not contraband but will, if retained in possession of the inmate, present a serious threat to facility security or the safety of inmates and staff, shall be controlled by staff, to the degree necessary to eliminate the threat.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2600, 2601, 2772, 2790, 4574, 5030.1, 5054 and 5057, Penal Code.

HISTORY:

1. Amendment of subsection (a) filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

2. Change without regulatory effect amending section filed 10-29-90, pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).

3. Editorial correction of printing error in subsection (a) (Register 92, No. 5).

4. New subsection (c) and subsection relettering, renumbering and amendment of former subsections 3136 (a)–(h) to subsections 3006(c)(1)–(8), new subsections 3006(c)(9)–(15), and amendment of newly designated subsection (d) and Note filed 1-3-95 as an emergency; operative 1-3-95 (Register 95, No. 1). A Certificate of Compliance must be transmitted to OAL 6-12-95 or emergency language will be repealed by operation of law on the following day.

5. New subsection (c) and subsection relettering, renumbering and amendment of former subsections 3136(a)–(h) to subsections 3006(c)(1)–(8), new subsections 3006(c)(9)–(15), and amendment of newly designated subsection (d) and Note refiled 6-13-95 as an emergency; operative 6-13-95 (Register 95, No. 24). A Certificate of Compliance must be transmitted to OAL by 11-20-95 or emergency language will be repealed by operation of law on the following day.

6. Reinstatement of section as it existed prior to emergency amendment filed 12-27-95 by operation of Government Code section 11346.1(f). Certificate of Compliance as to 6-13-95 order transmitted to OAL 11-9-95; disapproved by OAL and order of repeal as to 6-13-95 order filed on 12-27-95 (Register 95, No. 52).

7. Amendment of section and Note filed 12-27-95 as an emergency pursuant to Government Code section 11346.1; operative 12-27-95 (Register 95, No. 52). A Certificate of Compliance must be transmitted to OAL by 4-25-96 or emergency language will be repealed by operation of law on the following day.

8. Certificate of Compliance as to 12-27-95 order including amendment of subsections (c), (c)(3), and (c)(9), new subsection (c)(10) and subsection renumbering, amendment of newly designated subsections (c)(11), (c)(14) and (c)(15), new subsections (c)(15)(A)–(c)(15)(C), amendment of newly designated subsections (c)(15)(C)(1) and subsection renumbering, amendment of subsection (d) and Note transmitted to OAL 4-25-96 and filed 6-6-96 (Register 96, No. 23).

9. New subsections (c)(17)–(c)(17)(B)2. filed 9-30-2002 as an emergency pursuant to Penal Code section 5058.3; operative 9-30-2002 (Register 2002, No. 40). A Certificate of Compliance must be transmitted to OAL by 3-10-2003 pursuant to Penal Code section 5058.3 or emergency language will be repealed by operation of law on the following day.

10. Certificate of Compliance as to 9-30-2002 order transmitted to OAL 2-3-2003 and filed 3-18-2003 (Register 2003, No. 12).

11. Amendment of first paragraph filed 5-27-2004 as an emergency; operative 5-27-2004 (Register 2004, No. 22). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-3-2004 or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 5-27-2004 order transmitted to OAL 10-28-2004 and filed 12-14-2004 (Register 2004, No. 51).

13. New subsection (c)(18) and amendment of Note filed 7-7-2005 as an emergency; operative 7-7-2005 (Register 2005, No. 27). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 12-14-2005 or emergency language will be repealed by operation of law on the following day.

14. Certificate of Compliance as to 7-7-2005 order transmitted to OAL 12-13-2005 and filed 1-26-2005 (Register 2006, No. 4).

**3007. Sexual Behavior.**

Inmates may not participate in illegal sexual acts. Inmates are specifically excluded in laws, which remove legal restraints from acts between consenting adults. Inmates must avoid deliberately placing themselves in situations and behaving in a manner which is designed to encourage illegal sexual acts.

Comment: Former DR-1105, sexual behavior.

**3008. Obscenity.**

Inmates may not openly or publicly display photographs, pictures, drawings, or other pictorial representations of persons engaged in sexual acts, actual or simulated, masturbation, excretory functions or lewd exhibitions of the genitals which are obscene as defined in Section 311 of the Penal Code.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:

1. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

2. Certificate of Compliance as to 12-27-95 order including amendment of section and Note transmitted to OAL 4-25-96 and filed 6-6-96 (Register 96, No. 23).

**3009. Gambling.**

Inmates may not participate in any form of gambling or bookmaking.

Comment: Former DR-1107, gambling and bookmaking.

§ 3010                DEPARTMENT OF CORRECTIONS AND REHABILITATION                **TITLE 15**

**3010.  Gifts and Gratuities.**

Inmates may not ask for or accept any gift of money, property, material or substance from institution visitors, employees or other persons, and may not give any person a gift or promise of one, except as provided for by law, approved institution procedures, or as specifically authorized by the warden or superintendent. Institution procedures established under this section should be directed toward control of property, safety of persons and institution security.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).

**3011.  State Property.**

Inmates shall not intentionally destroy, damage, deface, alter or misuse state property. To do so shall be cause for disciplinary action and the inmate may be charged for the cost of repair or replacement, including materials and labor. Intentional destruction of state property may result in a credit loss as specified in section 3323(c)(4), 3323(d)(5), or 3323(g)(1) of these regulations. Intentional damage to state property in excess of four hundred dollars may result in criminal prosecution and an additional term of imprisonment in addition to any credit loss resulting from the disciplinary action. Intentional damage to state property valued at four hundred dollars or less may result in a misdemeanor conviction in addition to any credit loss resulting from the disciplinary action.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2932, 4600 and 5054, Penal Code.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Amendment filed 12-1-78 as an emergency; designated effective 1-1-79 (Register 78, No. 48).
3. Certificate of Compliance filed 2-22-79 (Register 79, No. 8).
4. Order of Repeal filed 6-3-85 by OAL pursuant to Government Code section 11349.7; effective thirtieth day thereafter (Register 85, No. 26).
5. OAL Notice of Erroneous Filing filed 7-29-85; purported Order of Repeal of section 3011(a) filed in error on 6-3-85 is null and void and text of subsection (a) as filed with Secretary of State on 12-1-78 remains in effect uninterrupted (Register 85, No. 31).
6. Amendment filed 12-16-88; operative 1-15-89 (Register 88, No. 53).
7. Change without regulatory effect amending section filed 11-19-97 pursuant to section 100, title 1, California Code of Regulations. (Register 97, No. 47).
8. Amendment of section and Note filed 9-25-2000; operative 10-25-2000 (Register 2000, No. 39).

**3012.  Theft.**

Inmates may not obtain anything by theft, fraud or dishonesty.

Comment: Former DR-1110, stealing and dealing.

**3013.  Unlawful Influence.**

Inmates may not attempt to gain special consideration or favor from other inmates, employees, institution visitors or any other person by the use of bribery, threat or other unlawful means.

Comment: Former DR-1111; improper influence.

**3014.  Calls and Passes.**

Inmates must respond promptly to notices given in writing, announced over the public address system, or by any other authorized means.

Comment: Former DR-1113, answering calls and passes.

HISTORY:

1. Repealer of section 3014 and renumbering of section 3015 to section 3014 filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40). For former section 3014, see Register 77, No. 9.

**3015.  Unauthorized Areas and Facility Boundaries.**

(a) Every area of a facility which is out of bounds to inmates or which is only out of bounds at specified times shall be clearly designated. Inmates shall not enter such areas unless specifically authorized to do so by staff.

(b) Inmates assigned to a work detail or project off their facility's property shall not go beyond the geographical limits established by their staff escort.

(c) Except as provided in sections 3080 through 3083, Title 15, California Code of Regulations, inmates shall not travel past the boundaries of a facility unless escorted by authorized staff. Inmates shall not be escorted from a facility except in an emergency or when authorized for the purpose of a work or project assignment, transfer to another facility, or temporary community leave or removal.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Renumbering of section 3016 to section 3015 filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40).
2. Amendment of section heading and newly designated subsection (a), new subsection (b), renumbering and amendment of former section 3444 to new subsection (c), and new Note filed 10-27-93; operative 11-26-93 (Register 93, No. 44).

**3016.  Controlled Substances, Drug Paraphernalia, and Distribution.**

(a) Inmates may not inhale, ingest, inject, or otherwise introduce into their body; possess, manufacture, or have under their control any controlled substance, controlled medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff.

(b) Inmates may not possess, exchange, manufacture, or have under their control any paraphernalia as defined by Health and Safety Code section 11014.5, or device related to the use, injection, or manufacture of any controlled substance or controlled medication, except as specifically authorized by the institution's/facility's health care staff.

(c) Inmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication.

(d) Inmates may not possess controlled medication in quantities exceeding the dosage specifically authorized by the institution's/facility's health care staff, nor may an inmate possess controlled medication prescribed to another inmate.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2931, 4573, 4573.6 and 5054, Penal Code; and Sections 11014.5, 11350–11383, Health and Safety Code.

HISTORY:

1. Renumbering of section 3017 to section 3016 filed 9-30-77; effective thirtieth day thereafter (Register 77, No. 40).
2. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).
3. Amendment filed 2-17-95 as an emergency; operative 3-1-95 (Register 95, No. 9). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 8-8-95 or emergency language will be repealed by operation of law on the following day.
4. Amendment refiled 8-7-95 as an emergency; operative 8-7-95 (Register 95, No. 32). This regulatory action was deemed an emergency pursuant to section 5058(e) of the Penal Code and remains in effect for 160 days. A Certificate of Compliance must be transmitted to OAL by 1-16-96 or emergency language will be repealed by operation of law on the following day.
5. Reinstatement of section as it existed prior to emergency amendment filed 2-17-95 by operation of Government Code section 11346.1(f) (Register 96, No. 8).
6. Amendment filed 2-21-96 as an emergency; operative 2-21-96 (Register 96, No. 8). A Certificate of Compliance must be trans-

18  *EXHIBIT A-10*

**3304. Hostages.**

Employees must not permit inmates or others to use hostages to escape from custody or otherwise interfere with orderly institutional operations. Hostages will not be recognized for bargaining purposes. All inmates, visitors and staff will be informed of this regulation.

Comment: Former DP-4405, hostages.

## Article 5. Inmate Discipline

**3310. Definitions.**

The following terms are defined for the purposes of this article:

(a) Camp means the type of subfacility of an institution which is normally located in a rural area and which has no secure (fenced or walled) perimeter. Camp inmates are generally assigned to conservation and/or road details.

(b) Community-access facility means a facility located in the community, administered by the Parole and Community Services Division, where inmates have access to the community for work or training and which has no secure (fenced or walled) perimeter.

(c) Community correctional facility means a facility located in the community, administered by the Parole and Community Services Division, where inmates do not have unsupervised access to the community and which has a secure (fenced) perimeter.

(d) Experienced means a permanent employee at the designated level, certified by the chief disciplinary officer or designee as competent to serve as a senior hearing officer or hearing officer, as specified. Requirements for certification shall include in-service or on-the-job training in disciplinary procedures and observation of five serious/administrative disciplinary hearings. A probationary, limited term, or training and development employee at the designated staff level may be certified as experienced. Acting staff whose permanent position is at a level lower than that required shall not be assigned senior hearing officer/hearing officer responsibility.

(e) Facility means any institution, community-access facility or community correctional facility, or any camp or other subfacility of an institution under the jurisdiction of the department.

(f) Institution means a large facility or complex of subfacilities with a secure (fenced or walled) perimeter headed by a warden.

NOTE: Authority cited: Sections 5058 Penal Code. Reference: Sections 5054, 6252, and 6260 Penal Code.

HISTORY:

1. Amendment of article 5 heading, repealer and new section filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

**3311. Reporting Rule Violations.**

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Amendment filed 2-15-80; effective thirtieth day thereafter (Register 80, No. 7).

2. Repealer filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

**3312. Disciplinary Methods.**

(a) Inmate misconduct shall be handled by:

(1) Verbal Counseling. Staff may respond to minor misconduct by verbal counseling. When verbal counseling achieves corrective action, a written report of the misconduct or counseling is unnecessary.

(2) Custodial Counseling Chrono. When similar minor misconduct recurs after verbal counseling or if documentation of minor misconduct is needed, a description of the misconduct and counseling provided shall be documented on a CDC Form 128-A, Custodial Counseling Chrono. A copy of the completed form shall be provided to the inmate and the original placed in the inmate's central file. Disposition of any contraband involved shall be documented in the CDC Form 128-A.

(3) Rules Violation Report. When misconduct is believed to be a violation of law or is not minor in nature, it shall be reported on a CDC Form 115 (Rev. 7/88), Rules Violation Report.

(A) Unless an inmate charged with serious misconduct requires temporary administrative segregation pursuant to section 3335(b) pending adjudication of the disciplinary charges, the inmate may be retained in regularly assigned housing, work, and program assignments.

(B) If the inmate is placed in segregated housing pending the disciplinary proceedings, the official making the housing decision shall ensure compliance with the provisions of article 7 of this subchapter.

(b) Chief Disciplinary Officer Review of Disciplinary Actions. All disciplinary methods and actions shall be reviewed by the chief disciplinary officer, who shall be the institution head or a designee not below the level of correctional administrator or parole administrator I.

(1) The chief disciplinary officer shall affirm, reverse or modify the disciplinary action and/or credit forfeiture. The chief disciplinary officer may order a different action, order a different method of discipline, dismiss a charge, order a rehearing of the charge, or combine any of these actions.

(2) Except upon discovery of information or evidence not available or reasonably discoverable at the time of a disciplinary action, an order for a different method of discipline or for rehearing of the charges shall not result in a greater penalty or more severe action than that originally taken.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2932 and 5054, Penal Code.

HISTORY:

1. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).

2. Amendment of subsection (c) filed 2-15-80; effective thirtieth day thereafter (Register 80, No. 7).

3. Repealer of subsections (c) and (d) and new subsections (c), (d), (e), and (f) filed 4-18-80; effective thirtieth day thereafter (Register 80, No. 16).

4. Amendment of subsection (d) filed 5-4-83; designated effective 6-1-83 pursuant to Government Code section 11346.2(d) (Register 83, No. 19).

5. Amendment of subsection (b) filed 2-8-88; operative 3-9-88 (Register 88, No. 7).

6. Editorial correction of printing errors in CDC Forms 115 and 115-A and descriptive text (Register 92, No. 5).

7. Amendment including relocation of former subsections 3317(a)–(b)(2) to subsections 3312(a)(3)(A)–(B) filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

§ 3312                          DEPARTMENT OF CORRECTIONS AND REHABILITATION                          **TITLE 15**

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT**

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| VIOLATED RULE NO(S) | | SPECIFIC ACTS | | LOCATION | DATE | TIME |

CIRCUMSTANCES

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ | | | | |

| REVIEWING SUPERVISOR'S SIGNATURE | | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|---|
| ▶ | | | DATE | LOC |

| CLASSIFIED | OFFENSE DIVISION | DATE | CLASSIFIED BY (Typed Name and Signature) | | HEARING REFERRED TO |
|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE | | | ▶ | | ☐ HO  ☐ SHO  ☐ SC  ☐ FC |
| ☐ SERIOUS | | | | | |

**COPIES GIVEN INMATE BEFORE HEARING**

| ☐ CDC 115 | BY (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| ▶ | | | | |

| ☐ INCIDENT REPORT LOG NUMBER | BY (STAFF'S SIGNATURE) | DATE | TIME | BY (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| ▶ | | | | ▶ | | |

HEARING

| REFERRED TO  ☐ CLASSIFICATION  ☐ BPT/NAEA | | | | | | |
|---|---|---|---|---|---|---|
| ACTION BY (TYPED NAME) | | | SIGNATURE | | DATE | TIME |

| REVIEWED BY (SIGNATURE) | | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | | DATE |
|---|---|---|---|---|---|
| ▶ | | | ▶ | | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | | BY (STAFF'S SIGNATURE) | | DATE | TIME |
|---|---|---|---|---|---|
| | | ▶ | | | |

CDC 115 (7/88)

EXHIBIT A-12

**TITLE 15**              DEPARTMENT OF CORRECTIONS AND REHABILITATION                  **§ 3312**

## SUMMARY OF DISCIPLINARY PROCEDURES AND INMATE RIGHTS
(See Title 15, California Code of Regulations for details)

**A    HEARING** — A serious rule violation may result in the loss of credits. A hearing will normally be held within thirty (30) days but not less than 24 hours, from the date you receive a copy of the Rules Violation Report. An exception is provided in the California Code of Regulations when a case has been referred for possible prosecution and you have requested in writing, and been granted, a postponement pending the outcome of such referral. Failure of staff to meet time constraints will usually act as a bar against denial or forfeiture of time credits, but will not bar against other authorized disciplinary actions. *(CCR 3320)*

**B    INVESTIGATIVE EMPLOYEE/STAFF ASSISTANCE** —

1  *General Information* — You may request to have an investigative employee and/or a staff assistant assigned to assist you in the investigation, preparation, or presentation of your defense at the disciplinary hearing if it is determined by staff that (1) you are illiterate, or (2) the complexity of the issues, or (3) your confinement status makes it unlikely that you will be able to collect and present the evidence necessary for an adequate comprehension of your case. *(CCR 3315, 3318)*

2  *Staff Assistant* — A staff member will be assigned to assist you in the disciplinary process if you are deemed to be incapable of representing yourself. The assigned staff will assist you in preparing for the hearing and assist you at the hearing. The staff assistant will maintain any confidence you request about your past conduct. *(CCR 3318)*

3  *Investigative Employee* — An investigative employee, if assigned, will gather information, question staff and inmates, screen witnesses, and complete and submit a written, non-confidential report to the disciplinary hearing officer. You have the right to receive a copy of the investigative employee's report 24 hours before a hearing is held. *(CCR 3318)*

4  *Witnesses* — You may request the presence of witnesses at the hearing who can present facts related to the charges against you. You may also request the presence of the reporting employee and the investigative employee. You may, under the direction of the hearing officer, question any witness present at the hearing. The hearing officer may deny the presence of witnesses when specific reasons exist. *(CCR 3315)*

5  *Personal Appearance* — A hearing of the charges will not normally be held without your presence, unless you refuse to attend. *(CCR 3320)*

**C    REFERRAL FOR PROSECUTION** — Referrals for prosecution will not delay a disciplinary hearing unless you submit a request in writing for postponement of the hearing pending the outcome of such referral. You may revoke this request in writing at any time prior to the filing of accusatory pleadings by the prosecuting authority. A disciplinary hearing will be held within 30 days of staff receiving your written revocation of your request to postpone the hearing or within 30 days of receiving a response from the prosecuting authority. *(CCR 3316, 3320)*

You have the right to remain silent at a disciplinary hearing and no inference of guilt or innocence will be drawn from your silence. Any statements you do make may be used against you in criminal proceedings.

**D    DISPOSITION** — At the end of the hearing, you will be advised of the findings and disposition of the charge. Within five working days, following review of the CDC 115 and CDC 115-A by the Chief Disciplinary Officer, you will be given a copy of the completed rule violation report, which will contain a statement of the findings and disposition and the evidence relied upon to support the conclusions reached. *(CCR 3320)*

**E    APPEAL** — If you are dissatisfied with the process, findings or disposition, you may submit an inmate appeal, form CDC 602, within fifteen days following receipt of the finalized copy of the CDC 115/CDC 115-A. When filing your appeal, be sure to attach a copy of the finalized CDC 115/CDC 115-A, if applicable, and any other pertinent documentation. *(CCR 3003)*

**F    ABBREVIATIONS** — HO Hearing Officer, SC-Sub Committee, FC-Full Committee, SHO-Senior Hearing Officer, BPT-Board of Prison Terms.

CDC 115 A (12/85)

111  *EXHIBIT A-13*

§ 3313                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    **TITLE 15**

**3313.  Classification of Rules Violation Report and Notice of Pending Charges.**

(a) Each CDC Form 115 shall be classified by designated staff not below the level required to conduct serious disciplinary hearings. Exception: In facilities with only one individual at the rank of correctional lieutenant or higher, an experienced correctional sergeant may classify rule violations.

Reports shall be classified as administrative or serious pursuant to sections 3314 and 3315.

(b) Staff who review or classify a CDC Form 115 shall not serve as the disciplinary hearing official for that rule violation.

(c) The classification of a CDC Form 115 may be changed as follows:

(1) Before the disciplinary hearing, the official who initially classified a CDC Form 115 or staff at a higher level may change the classification of the CDC Form 115.

(2) During the disciplinary hearing, the official conducting the hearing may change a serious classification to administrative as a finding of the hearing.

(3) Before or after the disciplinary hearing, the chief disciplinary officer may change a serious classification to administrative.

(4) After the disciplinary hearing, an administrative classification shall not be changed to serious unless the chief disciplinary officer or director orders a rehearing of the charges as a serious rule violation.

(A) When a rehearing is ordered by the chief disciplinary officer or director, the inmate shall be provided all rights and procedural safeguards of a serious rule violation hearing.

(B) An order for a rehearing shall be in writing and shall include the reasons for the order. A copy of the order shall be provided to the inmate.

(5) If the CDC Form 115 is reclassified from administrative to serious, the inmate shall receive written notice and shall be subject to the provisions of Section 3315 of these regulations.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 2079, 2932 and 5054, Penal Code; *In re Hamilton* (1991) 230 Cal.App.3d 1592, 281 Cal. Rptr. 900.

HISTORY:

1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).
3. Repealer and new section filed 4-18-80; effective thirtieth day thereafter (Register 80, No. 16).
4. Amendment of subsection (c) filed 5-4-83; designated effective 6-1-83 pursuant to Government Code Section 11346.2(d) (Register 83, No. 19).
5. Amendment of section heading, section and Note filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
6. Change without regulatory effect amending Note filed 11-10-97 pursuant to section 100, title 1, California Code of Regulations (Register 97, No. 46).
7. Editorial correction establishing correct hierarchy for subsection designators (Register 2000, No. 23).
8. Amendment of subsection (b) filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.
9. Amendment of subsection (b) refiled 6-17-2004 as an emergency; operative 6-17-2004 (Register 2004, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2004 or emergency language will be repealed by operation of law on the following day.
10. Certificate of Compliance as to 6-17-2004 order transmitted to OAL 11-16-2004 and filed 12-29-2004 (Register 2004, No. 53).

**3314.  Administrative Rule Violations.**

(a) Inmate misconduct reported on a CDC Form 115 shall be classified administrative if:

(1) The misconduct does not constitute a misdemeanor offense, except as provided in (3) below.

(2) It does not involve any of the following circumstances:

(A) The use or threat of force or violence against another person.

(B) A breach of or hazard to facility security.

(C) A serious disruption of facility operations.

(D) The introduction or possession of controlled substances or dangerous contraband.

(E) Any felony offense.

(3) Administrative rule violations include but are not limited to:

(A) Theft, destruction, misuse, alteration, damage, or unauthorized acquisition or exchange of personal or state property valued at $50 or less.

(B) Possession of property, materials, items, or substances in excess of authorized limits, or possession of contraband other than controlled substances or dangerous contraband.

(C) Misuse of food.

(D) Out-of-bounds presenting no threat to facility security.

(E) Misuse of telephone privileges presenting no threat to facility security.

(F) Mail or visiting violations presenting no threat to facility security.

(G) Failure to meet work or program expectations within the inmate's abilities.

(H) Late for or absent without authorization from a work or program assignment.

(I) Use of vulgar or obscene language.

(J) Failure to follow an itinerary when on temporary community leave from a community-access facility.

(K) Under the influence (use) of alcoholic beverages, drugs, or intoxicants in a community-access facility.

(L) Failure to comply with departmental grooming standards.

(b) Administrative rule violations shall be heard by a disciplinary hearing official not below the level of a correctional lieutenant, or an experienced correctional counselor I, parole agent I or correctional sergeant.

(c) The inmate does not have the right to call witnesses or to have an investigative employee assigned.

(d) If deemed necessary by the hearing official, the hearing shall be suspended and the inmate shall be provided staff assistance pursuant to section 3318(b).

(e) The hearing official may find the inmate guilty and order one or more of the following dispositions:

(1) Counseling, with or without a reprimand.

(2) Suspension of privileges specified by the hearing official for no more than a 30-day period starting the date the rule violation report was adjudicated.

(3) Placement into privilege group B or C for no more than a 30-day period starting the date the rule violation report was adjudicated.

(4) Confinement to quarters pursuant to section 3333 for one or more weekends and/or holidays, not to exceed ten days and not to be imposed with subsection (6) of suspended confinement.

(5) Assignment to no more than 40 hours of extra duty.

(6) Confinement to quarters for a period not to exceed five consecutive days. Inmates serving confinement to quarters shall be released to attend work and program assignments.

(7) Placement of a restriction or hold on the inmate's trust account for rule violations involving state or personal property as described in section 3190 when the inmate refuses to pay for the repair or replacement of such property or canteen.

EXHIBIT A-14

TITLE 15                          DEPARTMENT OF CORRECTIONS AND REHABILITATION                          § 3315

(8) Suspension of all or part of any disposition for up to 90 days based on the inmate's acceptance of and compliance with conditions specified for suspension of the disposition.

(9) Imposition of all or part of an existing suspended disposition when the current rule violation is also a violation of conditions imposed at the time of the suspension.

(f) The hearing official may find the inmate guilty of the charge but, in the interest of justice or because of extenuating circumstances, dismiss the formal rule violation charge and report the misconduct as a custodial counseling on a CDC Form 128-A pursuant to section 3312. In such cases the CDC Form 115 shall be processed pursuant to section 3326.

(g) The hearing official may find the inmate not guilty and dismiss the charges.

(h) The hearing official may designate the rule violation serious if it is determined in the fact-finding phase of an administrative violation hearing that the misconduct is a serious rule violation. The disciplinary hearing official shall terminate the hearing and issue a serious CDC Form 115 to the inmate.

(i) Classification Committee Review. When the hearing official determines that an inmate is a program failure, as defined in section 3000, the hearing official shall refer the administrative disciplinary action for possible review by a classification committee to affirm or modify the inmates program, work/privilege group, or housing assignment.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

HISTORY:
1. Amendment filed 2-24-77; effective thirtieth day thereafter (Register 77, No. 9).
2. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).
3. Amendment of subsection (d)(2), filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).
4. Amendment of subsections (a) and (d)(5) filed 5-4-83; designated effective 6-1-83 pursuant to Government Code Section 11346.2(d) (Register 83, No. 19).
5. Amendment filed 5-5-95; operative 6-5-95 (Register 95, No. 18).
6. New subsection (a)(3)(L) filed 10-16-97 as an emergency; operative 10-16-97 (Register 97, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-25-97 or emergency language will be repealed by operation of law on the following day.
7. Certificate of Compliance as to 10-16-97 order transmitted to OAL 3-23-98 and filed 5-4-98 (Register 98, No. 19).
8. Amendment filed 1-9-2004 as an emergency; operative 1-9-2004 (Register 2004, No. 2). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 6-17-2004 or emergency language will be repealed by operation of law on the following day.
9. Amendment of section, including futher amendment of subsection (e)(4), refiled 6-17-2004 as an emergency; operative 6-17-2004 (Register 2004, No. 25). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 11-24-2004 or emergency language will be repealed by operation of law on the following day.
10. Certificate of Compliance as to 6-17-2004 order transmitted to OAL 11-16-2004 and filed 12-29-2004 (Register 2004, No. 53).

**3315.  Serious Rule Violations.**

(a) Inmate misconduct reported on a CDC Form 115 shall be classified serious if:

(1) It is an offense punishable as a misdemeanor not specified as administrative in section 3314(a)(3) or is a felony, whether or not prosecution is undertaken.

(2) It involves any one or more of the following circumstances:
(A) Use of force or violence against another person.
(B) A breach of or hazard to facility security.
(C) A serious disruption of facility operations.

(D) The introduction or possession of controlled substances or dangerous contraband.

(E) An attempt or threat to commit any act listed in (A) through (D), coupled with a present ability to carry out the threat or attempt if not prevented from doing so.

(3) Serious rule violations include but are not limited to:
(A) Misconduct reportable to the inmate's releasing authority.
(B) Theft, destruction, misuse, alteration, damage, unauthorized acquisition or exchange of personal or state property amounting to more than $50.
(C) Hideout, preparation to escape, or possession of escape paraphernalia.
(D) Tattooing or possession of tattoo paraphernalia.
(E) Manufacture of alcohol or possession of any controlled substance, unauthorized drug, intoxicant, or illegal substance.
(F) Being under the influence (use) of alcoholic beverages, controlled substances, unauthorized drugs or intoxicants in an institution, community correctional facility, or camp.
(G) Possession of five dollars or more without authorization.
(H) Acts of disobedience or disrespect which by reason of intensity or context create a potential for violence or mass disruptive conduct.
(I) Willfully inciting others to commit an act of force or violence.
(J) Refusal to perform work or participate in a program as ordered or assigned.
(K) Recurring failure to meet work or program expectations within the inmate's abilities when lesser disciplinary methods failed to correct the misconduct.
(L) Participation in a strike or work stoppage.
(M) A repeated pattern of administrative rule violations for the same offense.
(N) Mail or visiting violations presenting a threat as described in (2) above.
(O) Harassment of another person, group, or entity either directly or indirectly through the use of the mail or other means.
(P) Throwing any liquid or solid substance on a nonprisoner.
(Q) Unauthorized possession of departmental records or documents which could affect any inmate's release status.
(R) Refusal to submit to a test for controlled substances.
(S) Refusal to provide blood specimens, a saliva sample, and palm and thumb print impressions pursuant to Penal Code, Part 1, Title 9, Chapter 6, Articles 1 through 7 (sections 295 et seq.), after receiving written notification that such specimens and samples must be provided.
(T) Participation in gambling.
(U) Late return or failure to return from a temporary community release or leave.
(V) Unauthorized possession of materials or substances which have been diverted or altered from the original manufactured state or purpose with the potential to be made into a weapon; explosive or explosive-making materials; poison; caustic substance; any destructive device.
(W) Self mutilation or attempted suicide for the purpose of manipulation.
(X) Involvement in a conspiracy or attempt to do any of the above.

(b) In addition to the disciplinary hearing, the inmate may be subject to segregation from the general population pursuant to sections 3312 and 3335; and referral for prosecution when the misconduct is a criminal offense.

(c) Hearing. Serious rule violations shall be heard at the senior hearing officer or higher level. A senior hearing officer shall not be below the level of a facility captain, correctional captain, correctional counselor III, parole agent III, or an experienced correctional lieutenant, correctional counselor II, or parole agent II.

EXHIBIT A-15

§ 3315                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    TITLE 15

(d) An inmate shall be assigned an employee to assist in the investigation of matters pertaining to a disciplinary action when the chief disciplinary officer or designee determines the necessity based on the following criteria.

(1) Investigative Employee.

(A) An investigative employee, as described in section 3318(a), shall be assigned, within one working day after the serious rule violation charges have been submitted for processing when the chief disciplinary officer or designee determines that:

1. The complexity of the issues require further investigation.

2. The housing status makes it unlikely the charged inmate can collect and present the evidence necessary for an adequate presentation of a defense.

3. A determination has been made that additional information is necessary for a fair hearing even if the inmate has waived the assignment.

(B) Staff who witnessed or who will serve as a hearing official for a rule violation shall not serve as the investigative employee for that violation.

(C) The inmate may not select the investigative employee, but may object to the one assigned. In which case, a second investigative employee shall be assigned to complete the investigation. The inmate's objection must be expressed prior to the beginning of the investigation.

(D) Assignment of an investigative employee shall not preclude the assignment of a staff assistant.

(2) Staff Assistant.

(A) The inmate shall be assigned a staff assistant, as described in section 3318(b), to assist in the investigation, preparation, and presentation of a defense at the disciplinary hearing if the chief disciplinary officer or designee determines:

1. The inmate is illiterate or non-English speaking.

2. The complexity of the issues are such that assistance is necessary so the inmate comprehends the nature of the charges or the disciplinary process.

3. The nature of the inmate's need for assistance requires a confidential relationship as described in subsection 3318(b)(2)(A).

(B) An inmate may refuse to accept the first staff assistant at the time of assignment or at any time during the disciplinary process.

(C) If the inmate refuses the staff assistant at the time of initial assignment, a second staff assistant shall be assigned.

(D) If the inmate refuses to accept the second staff assistant or withdraws acceptance of an assigned staff assistant, the assignment of another staff assistant shall not be required unless the chief disciplinary officer, or designee, determines that a fair hearing cannot be held without staff assistance.

(E) Assignment of a staff assistant shall not preclude assignment of an investigative employee.

(e) Witnesses. An inmate may request that friendly and adverse witnesses attend the hearing.

(1) Requested witnesses shall be called unless the official conducting the hearing denies the request for one of the following reasons:

(A) The appearance would endanger the witness.

(B) The official determines that the witness has no relevant or additional information.

(C) The witness is unavailable.

(2) If an inmate's request for a witness is denied, the reasons shall be documented on the CDC Form 115.

(3) Whether or not the inmate requests a witness, witnesses may be called if the official conducting the hearing determines the witnesses may have information necessary to the finding of fact.

(4) The reporting employee shall attend the disciplinary hearing if requested by the inmate.

(5) Under the direction of the official conducting the disciplinary hearing, the inmate has the right to ask questions of all witnesses called.

(6) Nothing in this section shall preclude making a witness available by telephone for a disciplinary hearing.

(f) Disposition. Upon completion of the fact-finding portion of the disciplinary hearing, the inmate may be found:

(1) Not guilty and the charges dismissed.

(2) Guilty of an administrative rather than a serious rule violation. In such case, the CDC Form 115 shall be reclassified as administrative and the inmate may be assessed only a disposition authorized in section 3314.

(3) Guilty as charged or guilty of an included serious rule violation and assessed a credit forfeiture pursuant to section 3323.

(4) If the violation included an act related to the use, possession, or distribution of controlled substances, controlled medication, drugs or drug paraphernalia; or if the inmate refused to submit to a test for controlled substances or drugs, the disposition shall include an order for the inmate to submit to mandatory random drug testing for one year from the date of the order.

(A) For the first offense, the inmate must provide a minimum of one random drug test per month for one year.

(B) For the second offense, the inmate must provide a minimum of two random drug tests per month for one year.

(C) For the third offense, the inmate must provide a minimum of four random drug tests per month for one year.

(D) The inmate shall be informed that refusal to submit to a random test or any positive test result during the mandatory random drug testing period shall result in the issuance of a CDC Form 115 and a new mandatory drug testing order.

(5) The disposition may or when mandated shall include assessment of one or more of the following:

(A) Any combination of penalties authorized for administrative rule violations in section 3314(e).

(B) Suspension of privileges specified by the hearing official for no more than a 90-day period starting the date the rule violation report was adjudicated. The suspension of privileges for violations of subsections 3323(c)(7) and 3323(d)(6) shall be assessed as follows:

1. Thirty days for the first offense.

2. Sixty days for the second offense.

3. Ninety days for the third offense.

(C) Placement into privilege group B or C for no more than a 90-day period starting from the date the rule violation report was adjudicated.

(D) Disciplinary detention or confinement to quarters as provided in sections 3330 and 3333 for not more than a ten-day period. If facility security will not be jeopardized, the inmate shall be released to attend work and program assignments.

1. Second offense violations of subsections 3323(c)(7) and 3323(d)(6) shall result in confinement to quarters for five days.

2. Third offense violations of subsections 3323(c)(7) and 3323(d)(6) shall result in confinement to quarters for 10 days.

(E) Referral to a classification committee for consideration of placement in Work Group C.

(F) Parole violators returned-to-custody who violate subsections 3323(c)(7) and 3323(d)(6) shall be referred to the Board of Prison Terms for consideration of extension of revocation time.

(G) Suspension of all or part of dispositions other than credit forfeitures, ordered random drug testing and classification committee referrals, for up to six months based on the inmate's compliance with the conditions specified for suspension.

(H) Imposition of all or part of an existing suspended disposition when the current rule violation is a violation of conditions specified in a suspended disposition. Imposition of a suspended disposition shall not include confinement to quarters or disciplinary detention for a period exceeding ten days except as provided in section 3322.

114    EXHIBIT A-16

**TITLE 15**   DEPARTMENT OF CORRECTIONS AND REHABILITATION   **§ 3268**

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Amendment of section filed 12-19-91 as an emergency; operative 12-19-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-17-92 or emergency language will be repealed by operation of law on the following day.

2. Certificate of Compliance as to 12-19-91 order transmitted to OAL 4-17-92 and filed 6-1-92 (Register 92, No. 24).

**3265. Arts and Crafts Exhibits.**

(a) The public may be permitted to attend displays of inmate-made articles provided:

(1) Facility security shall not be jeopardized.

(2) Adequate facilities and staff are available to control against unauthorized visiting and introduction of contraband.

(3) The activity does not interfere with the normal facility operation.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. Order of Repeal of subsection (b) filed 6-3-85 by OAL pursuant to Government Code section 11349.7; effective thirtieth day thereafter (Register 85, No. 26).

2. Amendment of section filed 12-19-91 as an emergency; operative 12-19-91 (Register 92, No. 4). A Certificate of Compliance must be transmitted to OAL 4-17-92 or emergency language will be repealed by operation of law on the following day.

3. Certificate of Compliance as to 12-19-91 order transmitted to OAL 4-17-92 and filed 6-1-92 (Register 92, No. 24).

**3266. Inmate Contacts with the Public.**

Inmates shall not initiate any personal contact with the public except as specifically authorized. This does not preclude an inmate's courteous and appropriate response when contact is initiated by a member of the public.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 4570 and 5054, Penal Code.

HISTORY:

1. Renumbering of former section 3072 to new section 3266, including amendment of section heading and text, and new Note filed 10-27-93; operative 11-26-93 (Register 93, No. 44).

**3267. Access of Public Officials to Facilities.**

(a) A public official, except as provided in (b) below, of another governmental department or agency who needs to interview staff or inmates or to conduct an inspection shall request permission of the institution head at least 24 hours before the date and time of their desired arrival, stating the purpose of the proposed visit. Upon their arrival, the official's access shall be subject to the following requirements:

(1) The official shall be required to produce their picture identification and consent to a search.

(2) The official shall be escorted by staff at all times within the facility's security area.

(3) Any equipment required by the official shall be searched and under the control of staff while it is within the facility's security area.

(b) An elected state official's access may be denied only during an emergency with the director's approval. Access by the guests or staff of such officials may be denied when they have not been previously approved by the institution head.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. New section filed 11-5-92; operative 12-7-92 (Register 92, No. 45).

Article 1.5.   Use of Force and Restraining Devices

**3268. Use of Force.**

The purpose of this section is to set forth Department of Corrections policy governing the use of force. The policy has its foundation in California Penal Code statutes and relevant case decisions.

(a) Definitions.

(1) Reasonable Force:

The force that an objective, trained and competent correctional employee, faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order.

(2) Unnecessary Force:

The use of force when none is required or appropriate.

(3) Excessive Force:

The use of more force than is objectively reasonable to accomplish a lawful purpose.

(4) Non-Deadly Force:

Any use of force that is not likely to result in death.

(5) Deadly Force:

Any use of force that is likely to result in death.

(6) Use of Force Options:

(A) The choices available to an employee when selecting a reasonable force option.

(B) The choices include, but are not necessarily limited to: verbal persuasion or orders; physical strength and holds; chemical agents and/or other immobilization devices; handheld batons; less-lethal weapons or firearms.

(1.) For the purposes of this section, a "less-lethal weapon" includes the 37 mm launcher and any other weapon when used to fire less-lethal projectiles.

(2.) For the purposes of this section, a "firearm" is a weapon used to fire lethal projectiles.

(b) It is the policy of the Department of Corrections to accomplish the custodial and correctional functions with minimal reliance on the use of force. Employees may use reasonable force as required in the performance of their duties, but unnecessary or excessive force shall not be used.

(c) The Department of Corrections recognizes the sanctity of human life. Therefore, deadly force will only be used when it is the reasonable force, as defined in section 3268(a)(1), and is needed to:

(1) Defend the employee or other persons from an immediate threat of death or great bodily injury.

(A) For the purposes of this section, "great bodily injury" means an injury that creates a substantial risk of death.

(2) Prevent an escape from custody.

(3) Stop acts such as riots or arson that constitute an immediate jeopardy to institutional security and, because of their magnitude, are likely to result in escapes or the death of other persons.

(4) Dispose of seriously injured or dangerous animals when no other disposition is practical.

(d) A firearm shall not be discharged if there is reason to believe that persons other than the intended target will be injured.

(e) Firearms may be discharged as a warning only in an institutional/facility setting and only when deadly force is permitted under section 3268(c).

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652, and 5054 Penal Code; and section 50 Civil Code; Whitley v. Albers (1985) 475 U.S. 312, 106 S.Ct. 1078.

HISTORY:

1. New article 1.5 (sections 3268–3268.2) and section filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

95

*Exhibit A-17*

§ 3268.1    DEPARTMENT OF CORRECTIONS AND REHABILITATION    TITLE 15

3. Certificate of Compliance as to 4-1-99 order, including amendment of first paragraph, transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

**3268.1.    Reporting and Investigating the Use of Force.**

(a) Reporting Non-Deadly Force.

(1) An employee who uses or observes non-deadly force greater than verbal persuasion to overcome resistance or gain compliance with an order shall document that fact. The document shall identify any witnesses to the incident and describe the circumstances giving rise to the use of force, and the nature and extent of the force used. The employee shall provide the document to his or her immediate supervisor.

(2) The employee's immediate supervisor shall review the document to ensure that it is adequately prepared and to reach a judgment concerning the appropriateness of the force used. The supervisor shall document his or her conclusions and forward them with the employee's document through the designated chain of command, to the institution head for approval or follow-up action.

(b) Reporting Deadly Force.

(1) An employee who uses deadly force, whether on or off duty, shall ensure that a supervisory employee is notified of the incident without delay.

(2) The supervisor shall ensure that the chain of command is notified and all necessary health and safety, medical and security measures are initiated. If the incident is in an institution/facility, the supervisor shall go to the location and ensure that the scene is protected.

(3) The Assistant Director, Office of Internal Affairs, or designee shall designate an employee to be in charge of the investigation. The employee shall go to and take charge of the scene. The employee shall assemble the appropriate investigative staff and ensure that all necessary investigative procedures and coordination with affected law enforcement entities are accomplished. The product of the investigation will be a report to the Director with conclusions concerning the extent to which the use of force did or did not comply with the law. However, when the deadly force is used in the community, local law enforcement shall take charge of the scene.

(4) A Deadly Force Review Board (DFRB) shall be convened as soon as possible after the investigation is completed.

(A). The Director or designee shall designate the members of the DFRB.

(B) The DFRB shall be composed of at least four members. Three shall be non-departmental law enforcement professionals. One shall be either a Regional Administrator or a Regional Parole Administrator outside the region or jurisdiction where the deadly force was used. Additional members may be designated by the Director or designee.

(C). The DFRB shall examine all aspects of the incident to determine the extent to which the use of force complied with departmental policies and procedures, and to determine the need for policy, training and/or equipment modifications. The DFRB shall report its findings, in writing, to the Director for approval or follow-up action.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 196, 835a, 2651, 2652, and 5054 Penal Code; and section 50 Civil Code.

HISTORY:

1. Renumbering of former section 3280 to new section 3268.2, including amendment of section heading, section and Note, filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

3. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

**3268.2.    Use of Restraints.**

(a) Mechanical means of physical restraint may be used only under the following circumstances:

(1) When transporting a person between locations.

(2) When a person's history, present behavior, apparent emotional state, or other conditions present a reasonable likelihood that he or she may become violent or attempt to escape.

(3) When directed by medical staff, to prevent a person from attempting suicide or inflicting injury to himself or herself.

(b) Mechanical restraints shall not be:

(1) Used as punishment.

(2) Placed around a person's neck.

(3) Applied in a way likely to cause undue physical discomfort or restrict blood flow or breathing, e.g., hog-tying.

(4) Used to secure a person to a fixed object, except as a temporary emergency measure. However, a person who is being transported shall not be locked in any manner to any part of the transporting vehicle.

(c) When mechanical restraint is required, handcuffs, alone or attached to a waist chain, will be the means of restraint normally used. However, additional mechanical restraint, including leg irons, additional chains, straight jackets, leather cuffs, or other specialized restraint equipment may be used when the circumstances indicate the need for the level of control that such devices will provide.

(d) Use of restraint equipment by direction of medical staff shall be fully documented in the institution medical file of the restrained inmate.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 196, 835a, 2650, 2651, 2652, 2652.5 and 5054 Penal Code.

HISTORY:

1. Renumbering of former section 3280 to new section 3268.2, including amendment of section heading, section and Note, filed 3-12-99 as an emergency; operative 4-1-99 (Register 99, No. 11). A Certificate of Compliance must be transmitted to OAL by 9-8-99 or emergency language will be repealed by operation of law on the following day pursuant to Penal Code section 5058(e)(1).

2. Editorial correction of History 1 (Register 99, No. 24).

3. Certificate of Compliance as to 4-1-99 order transmitted to OAL 9-8-99 and filed 10-20-99 (Register 99, No. 43).

Article 2.    Security

**3270.    General Policy.**

The primary objectives of the correctional institutions are to protect the public by safely keeping persons committed to the custody of the Director of Corrections, and to afford such persons with every reasonable opportunity and encouragement to participate in rehabilitative activities. Consistent effort will be made to insure the security of the institution and the effectiveness of the treatment programs within the framework of security and safety. Each employee must be trained to understand how physical facilities, degree of custody classification, personnel, and operative procedures affect the maintenance of inmate custody and security. The requirement of custodial security and of staff, inmate, and public safety must take precedence over all other considerations in the operation of all the programs and activities of the institutions of the department.

Comment: Former DP-4201, policy, general.

**3270.1.    Lethal Electrified Fences.**

(a) For the purposes of this section, a lethal electrified fence is a high voltage fence installed for the lethal infliction of injury to escaping inmates.

(b) Safety precautions shall be instituted to prevent accidental electrocution. These precautions shall include, but are not limited to, the following:

EXHIBIT A - 18

**TITLE 15** — DEPARTMENT OF CORRECTIONS AND REHABILITATION — § 3289

(3) An inmate's presence is not required during routine inspections of living quarters and property when the inmate is not or would not otherwise be present. During special inspections or searches initiated because the inmate is suspected of having a specific item or items of contraband in his or her quarters or property, the inmate should be permitted to observe the search when it is reasonably possible and safe to do so.

(4) The inmate will be given a written notice for any item(s) of personal and authorized state-issued property removed from his or her quarters during an inspection and the disposition made of such property. The notice will also list any contraband picked up or any breach of security noted during the inspection, and the follow-up action intended by the inspecting officer.

(b) An inmate is subject to an inspection of his or her person, either clothed or unclothed, when there is a substantial reason to believe the inmate may have unauthorized or dangerous items concealed on his or her person, or that he or she may have been involved in an altercation of any kind. Such inspections may also be a routine requirement for inmate movement into or out of high security risk areas. Random or spot-check inspections of inmates may also be authorized by the institution head to prevent possession and movement of unauthorized or dangerous items and substances into, out of, or within the institution. Visual daily inspections of inmates shall be made to ensure compliance with departmental grooming standards. All such inspections shall be conducted in a professional manner which avoids embarrassment or indignity to the inmate. Whenever possible, unclothed body inspections of inmates shall be conducted outside the view of others.

(1) Correctional employees, other than qualified medical staff, shall not conduct unclothed body inspections of inmates of the opposite sex except under emergency conditions with life or death consequences.

(2) Routine inspections of clothed male inmates may be performed by employees of either sex.

(3) Body inspection of clothed female inmates shall be conducted by female correctional employees only, except in emergency situations requiring the immediate search of inmates to avoid the threat of death, escape, or great bodily injury. In such emergency situations, male correctional employees may conduct clothed body inspections only until sufficient numbers of female correctional employees are available to assume critical body search duties.

(4) Male correctional employees shall not, under any circumstances, perform non-emergency body searches of female inmates.

(5) Any inspection of body cavities, other than visual or metal detector inspections, will be conducted in a medical setting under the direct supervision of a physician. Any physical intrusion into body cavities must be performed by a physician, and then only after all less obtrusive methods have failed to bring the inspection to a conclusion.

(c) Inspections of inmate cell or living areas, property, work areas, and body shall be conducted on an unannounced, random basis as directed by the institution head. Such inspections shall be conducted no more frequently than necessary to control contraband, recover missing or stolen property, or maintain proper security of the institution.

(d) A written record shall be maintained of the disposition of contraband and stolen or missing property confiscated as the result of cell, property, or body inspections.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code; and *Jordan v. Gardner*, 986 F.2d 1521.

HISTORY:
1. Amendment filed 5-13-77; effective thirtieth day thereafter (Register 77, No. 20).
2. Amendment of subsection (a)(3) filed 2-22-79; effective thirtieth day thereafter (Register 79, No. 8).

3. Amendment of subsection (b)(1) filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).
4. Amendment of subsection (b) and new subsections (c) and (d) filed 2-8-88; operative 3-9-88 (Register 88, No. 7).
5. Editorial correction of printing error in subsection (b) (Register 92, No. 5).
6. Amendment of subsections (b) and (c) filed 10-16-97 as an emergency; operative 10-16-97 (Register 97, No. 42). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 3-25-97 or emergency language will be repealed by operation of law on the following day.
7. Certificate of Compliance as to 10-16-97 order transmitted to OAL 3-23-98 and filed 5-4-98 (Register 98, No. 19).
8. Amendment of subsection (b)(1), new subsections (b)(2)-(4), subsection renumbering and amendment of Note filed 5-26-2005 as an emergency; operative 5-26-2005 (Register 2005, No. 21). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 11-2-2005 or emergency language will be repealed by operation of law on the following day.
9. Certificate of Compliance as to 5-26-2005 order transmitted to OAL 9-28-2005 and filed 11-1-2005 (Register 2005, No. 44).

### 3288. Notice to Public.

(a) Warning signs will be posted at the entrance to all public and business roadways onto the grounds of institutions, camps and other department facilities where inmates or parolees are housed, and at all sally ports and pedestrian entrances into such facilities. The signs will be in both English and Spanish and will, at a minimum, display the following information:

(1) The name of the institution, camp or facility, and the fact that it is a facility of the California Department of Corrections.

(2) The items that cannot be brought onto institution grounds. Model language: It is unlawful to bring alcohol, drugs, weapons, explosives, tear gas or tear gas weapons onto prison property.

(3) A warning that entrance on the property constitutes consent to be searched. Model language: By entering these grounds you consent to the search of your person, property and vehicle.

(b) Entrance roadway signs and the lettering will be of sufficient size to attract attention and be easily read by passing motorists. Smaller but conspicuous signs will be posted at sally ports and pedestrian entrances.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:
1. New section filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).
2. Amendment of subsection (a)(2) filed 4-18-80; effective thirtieth day thereafter (Register 80, No. 16).

### 3289. Trespass.

(a) All areas of institutions including buildings and grounds are closed to the general public, including employees of the department during their off-duty hours, at all times except for the purpose of conducting lawful business and engaging in activities authorized in advance by the warden, superintendent or official in charge. Entry on institution property for unauthorized purposes will be considered trespass as provided in section 602(j) of the Penal Code.

(b) Without regard for the reasons an individual or group may have entered institution property, refusal or failure to leave the property when requested to do so by the warden, superintendent, official in charge or an official authorized to act for the warden, superintendent or official in charge, will be considered trespass as provided in section 602(p) of the Penal Code.

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:
1. New section filed 8-1-78 as an emergency; effective upon filing (Register 78, No. 31).

*EXHIBIT A 19*

§ 3290      DEPARTMENT OF CORRECTIONS AND REHABILITATION      **TITLE 15**

2. Certificate of Compliance filed 11-21-78 (Register 78, No. 47).

**3290. Testing of Controlled Substances.**

(a) The department shall prescribe the products, equipment, and methods for testing suspected controlled substances. "Field" or on-site testing shall be conducted only by trained and certified personnel.

(b) Field tests may be performed on any suspected substance found on institution property or in the possession or under the control of any inmate, or in the possession or under the control of persons other than inmates who come on institution property.

(c) The securing of a urine sample from an inmate, for the purpose of testing for the presence of controlled substances shall be done for the following reasons:

(1) When there is reasonable cause to believe the inmate has possessed, distributed, used, or is under the influence of a controlled substance.

(2) When mandatory random testing is known to the inmate to be a condition for the inmate's participation in a specific program, assignment, or activity.

(3) As part of an authorized disposition of a disciplinary hearing.

(4) The inmate is selected by the institution's/facility's random drug testing selection process.

(d) Inmates must provide a urine sample when ordered to do so pursuant to these regulations, for the purpose of testing for the presence of controlled substances.

(e) Field testing shall be conducted for "screening" purposes only. Disciplinary action for possession of a controlled substance shall not include the loss of work/behavior credits unless a laboratory has confirmed that the suspected substance is in fact a controlled substance, or the inmate has admitted to possessing the controlled substance, accepts the results of a field test, and waives the requirement of testing by a laboratory, and has signed a document to that effect.

(f) The test results from a urine sample submitted for testing for the presence of an unauthorized controlled substance that has been confirmed as positive by a laboratory may be considered as sufficient evidence to charge the user with having had possession of the controlled substance.

(g) When evidence remaining after a field test or resulting from a field test is not suitable or sufficient for submission to a laboratory for confirmation of the field test, the field test results may be considered in a disciplinary hearing for possession of a controlled substance. Under such circumstances, a finding of guilty shall be based upon the preponderance of all evidence presented at the disciplinary hearing. Although no credit loss action may be taken, other authorized disciplinary actions may be taken, including the assessment of the mandatory one-year drug-testing period.

(h) "Field" or "laboratory" testing for sobriety or the use of alcoholic beverages, a controlled substance, unauthorized drug, or intoxicant is not required if other evidence corroborates use. Credit loss and other authorized disciplinary actions may be taken based on a preponderance of evidence and testimony.

(i) The identification of unauthorized controlled medication may be confirmed by a licensed pharmacist and that confirmation may be used as evidence in a disciplinary hearing. There shall be no requirement for laboratory testing of intact controlled medications when identification of the controlled medication has been confirmed by a pharmacist.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 2932, 4573.6 and 5054, Penal Code.

HISTORY:

1. Renumbering of former section 3290 to section 3295 and new section 3290 filed 8-18-78; effective thirtieth day thereafter (Register 78, No. 33).

2. Amendment of subsections (a) and (e) and new subsection (h) filed 8-7-87 as an emergency; operative 8-7-87 (Register 87, No. 34). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 12-7-87.

3. Certificate of Compliance as to 8-7-87 order transmitted to OAL 12-4-87; disapproved by OAL (Register 88, No. 16).

4. Amendment of subsections (a) and (e) and new subsection (h) filed 1-4-88 as an emergency; operative 1-4-88 (Register 88, No. 16). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 5-3-88.

5. Certificate of Compliance as to 1-4-88 order transmitted to OAL 5-3-88; disapproved by OAL (Register 88, No. 24).

6. Amendment of subsections (a) and (e) and new subsection (h) filed 6-2-88 as an emergency; operative 6-2-88 (Register 88, No. 24). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-30-88.

7. Certificate of Compliance transmitted to OAL 9-26-88 and filed 10-26-88 (Register 88, No. 50).

8. Amendment of subsections (c), (g), and (h) filed 6-2-95 as an emergency; operative 6-5-95 (Register 95, No. 22). A Certificate of Compliance must be transmitted to OAL by 11-12-95 pursuant to Penal Code section 5058(e)(1) or emergency language will be repealed by operation of law on the following day.

9. Certificate of Compliance as to 6-2-95 order transmitted to OAL 10-2-95 and filed 10-17-95 (Register 95, No. 42).

10. Amendment filed 8-27-98 as an emergency; operative 8-27-98 (Register 98, No. 35). A Certificate of Compliance must be transmitted to OAL by 2-3-99 or emergency language will be repealed by operation of law on the following day.

11. Amendment refiled 2-3-99 as an emergency, including further amendment of subsection (g); operative 2-3-99 (Register 99, No. 6). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 7-13-99 or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 2-3-99 order transmitted to OAL 5-12-99 and filed 6-24-99 (Register 99, No. 26).

**3291. Employee Law Enforcement and Peace Officer Personnel.**

(a) Law Enforcement Responsibility. All employees of the department shall be responsible to enforce laws, regulations and procedures, which govern the actions and activities of inmates, parolees and of persons who come into contact with inmates and parolees. Employees who are not designated as peace officers, whose normal assigned job duties do not require custody and supervision of inmates or parolees, or in situations where it would be inappropriate or unsafe to intervene in unauthorized actions or activities, shall notify or seek the assistance of other employees, including peace officer employees. In an emergency, all employees shall respond as directed by proper authority.

(b) Peace Officer Personnel. Peace officers are departmental employees holding peace officer positions as defined by law or as designated by the director of corrections. Non-peace-officer employees temporarily assigned to perform only the administrative duties of positions held by peace officers shall not be designated as peace officers.

(c) The peace officer authority of employees in (b) extends only to the authority necessary to perform the duties assigned to them, and as specifically authorized by the director in state emergency and mutual aid agreements. Employees designated in subsection 3291(b) are peace officers when performing the duties of their employment within this state, and retain that status outside this state when they are transporting prisoners or apprehending prisoners who have escaped.

(d) In addition to being designated peace officers as described in subsections 3291(b) and (c), parole agents' peace officer authority extends to the enforcement of conditions of parole

EXHIBIT A 20

# EXHIBIT  B

STUDEN. S NAME: Avratin, A.

POSITION #   PAI-D.001

## STATEMENT OF RESPONSIBILITY

1. You will maintain a respectful student/instructor relationship

2. You must participate in all lectures and classs assignments.

3. When given an order, you will respond in a respectful manner.

4. When working on a vehicle, students will follow the instructor's instructions ONLY and, once a student completes any stage of an assignment, he MUST obtain the instructor's approval before moving to the next phase of the project or before starting a new project.

5. Working in Vocational Auto Paint is a priviledge that you must maintain. Students that do not want to perform will be unassigned. No excuse will be accepted unless you can provide documentation explaining why you are, or were, not able to work. If this is the case, a CDC-128-B will be submitted to unassign you.

6. If you miss any day of work, you will receive an "A" day for that day. It is your responsability to bring proper documentation to be able to get credit for that day.

7. STEALING WILL NOT BE TOLERATED!

8. Any property not given to you by the state may be considered contraband.

9. You must be present in the shop for all counts during the day.

10. The instructor is in charge of dealing with your concerns regarding education. Please refrain from asking for help to correct personal problems, i.e. cell moves, family visits, packages, canteen, trust account information, etc. All of these should be taken care of on your OFF DUTY time.

11. This is an Auto PAINT shop, you will not attempt to repair mechanical problems in vehicles.

12. DO NOT disassemble any parts of any vehicle unless authorized to do so.

## OUT OF BOUNDS AREAS

A) Stay inside the shop at all times excluding breaks.

B) The roll-up doors will remain open most of the time.

C) Under NO circumstances will anybody be allowed inside the tool room, hot room or behind the spray booth unless authorized by the instructor.

D) ALL other shops, including Auto Body are out of bounds.

E) Inside vehicles

F) Instructor's office

G) During break times stay inside the yellow boundry lines.

H) If you are caught behind the spray booth area, you may be documented for theft of explosive materials or weapon stock.

"B"-1      4.14.8

CALIFORNIA DEPARTMENT OF CORRECTIONS
INMATE JOB DESCRIPTION

LOCATION CODE: DVAP    JOB TITLE: VOCATION AUTO PAINT STUDENT    POSITION #:

HOURS W/MEAL BREAK: 0745-1145  1215-1445    PAY GRADE: N/A

WIP CODE: V    MAXIMUM CUSTODY: CLOSE-B    SKILL LEVEL: STUDENT

DOT #: 845-381-034
       845-381-014    REQUIREMENTS/RESTRICTIONS: N/A

**SPECIFIC DUTIES:** Your responsibilities are listed below, but are not limited to those duties only. You will be expected to perform any additional duties requested ordered by your supervisor and staff. When you have completed your duties for the day, report to your supervisor. If you are doing duties that are not on this list, please let your supervisor know so that they can be added to the list if needed. If you have any questions regarding your job duties or expectations, you should ask your supervisor for clarification. (THE INSTITUTION STAFF SHOULD ADD THE NECESSARY INFORMATION REGARDING THE SPECIFIC DUTIES IN THE HOURLY FORMAT).

Inmate participation in all aspects of the Vocational Auto-Paint program is reqired of all persons assigned. This will involve the following areas: 1)Education- Reading and completion of assigned chapters of the textbook and workbook as well as attending all lectures, safety meetings, and completion of additional assignments given by the instructor. 2) Practical shopwork involving preparation and refinishing of class projects, i.e. hoods, gas tanks, fenders, doors, etc.. 3) Special work assignments such as painting of vehicles at the discretion of the instructor. 4) All students are responsible for ongoing shop clean-up, and maintenance of work spaces.

Inmates will be graded academically on a standard A to F scale. Inmates will also recieve a grading of their skill levels in specific areas of training. This will be on a scale of 1 to 3, with 1 being "Fully qualified/skilled", 2 being an intermediate level, and 3 being " Unskilled".

Failure to progress in this program and meet minimum standards will be cause for disciplinary action and possible removal from the program.

ANY OTHER DUTIES AS REQUIRED.

**ACCEPTABLE STANDARDS:** You are expected to perform your assigned work duties and responsibilities to the BEST of your ability at all times. You must maintain a good working relationship with staff and peers. You are expected to report to work on time and may not leave work without permission from the work supervisor. You are expected to maintain and display an acceptable attitude and demeanor at all times. Personal appearance and hygiene are to be neat and clean. You must be dressed in state issued clothing and wear all applicable safety items. You must perform assigned tasks diligently and conscientiously and must not pretend illness or otherwise evade attendance in your assigned work and program activities. The expected amount of work hours is to be kept as near to eight hours per day as the institutional procedure and security needs will allow. You may be required to work more than eight hours when institutional need occurs. Performance will be evaluated continually and a written report (CDC 101) will be submitted quarterly.

**FAILURE OR REFUSAL TO MEET EXPECTED STANDARDS:** If you fail to comply with the requirements of this job and/or the California Code of Regulations, Title 15, progressive discipline will be adhered to. Any "A" time, regardless of duration will preclude the earning of work time credit for the day (California Code of Regulation, Title 15, Section 3043.4).

I have read and received a copy of this signed job description and fully understand my duties and responsibilities.

X _____    _____
Inmate's Signature                Date

_____    _____
Inmate's Printed Name            CDC Number
                                 APR 1 4 2008
X _____    _____
Work/Training Supervisor's Signature and Title    Date

Original - Supervisor        Copy- Inmate

B-3

D-VOCATIONAL AUTOMOTIVE REFINISHING PROGRAM

DUTY STATEMENT

Ernesto Yerena, Instructor

**Attendance:** You are expected to be at work on time. If you are not at your scheduled work assignment within 5 minutes after work call, you will be marked absent or tardy accordingly. Unexcused tardies and absences will result in an "A" day and a CDC 123A or CDC 115. When you have a medical lay-in slip, you are to report to the work change officer with your signed lay-in slip at the beginning of the work shift. Telephone calls and appointments are to be made during non-working hours. Excused time off must be approved by your work supervisor prior to the absence.

**Removal from Job Assignment:** You may be removed from this assignment for any of the following reasons:
    I   Disciplinary:  a. Refusal to work.
                     b. Disruptive behavior.
                     c. Failure to report to work

    II  Program Completion

    III  Voluntary Removal: As per the Administrative Manual, Article 2, section 7717, "Trial Enrollment Period for Vocational Students", every student is on probationary status for a 180 hour period. You may not request a job change until you have successfully completed probation.

    IV  Institutional Convenience: This could be for one of several reasons; Segregation, shop closure, etc.

**Ducats and Passes:** You will normally not be ducated during your working hours. The only exceptions would be an appointment which could not be met during your off duty hours. Examples are: Outside Reps., outside medical consultants, Board of Prison Terms and GED testing. You will be issued a Priority Ducat which must be signed by the one who ducated you including the date and the time that you left the appointment. You must then report immediately to your work supervisor, giving him the signed ducat/pass. Failure to do so may result in work credit loss for the appointment and disciplinary action.

**Movement to other shops:** You are to remain inside the shop to which you are assigned at all times. Loitering outside the shop or visiting other shops is not allowed. If you are given permission to pass to another shop, you are to report immediately to the instructor of the shop you are visiting. There will be two (2) scheduled break periods: one ten (10) minute break at 0930 hours and a thirty (30) minute lunch break at 1130 or 1200 hours. There will be absolutely no smoking in the building at any time. You must utilize the break periods outside of the shop for smoking.

**Vehicles:** At no time will an inmate drive a vehicle in the Vocational area without permission. Extreme care will be exercised and the 15MPH speed limit observed. No passengers are allowed in the vehicle during the test drive. You may not at any time make any kind of contact with a vehicle unless you are assigned by the instructor to work on that vehicle. You may observe the work being performed, but do not lean against, sit on or in, or assist with the work unless you are an official part of the work team.

**Attendance:** You will work Monday through Friday. You must work a minimum of 6.5 hours a day to receive work credit for that day. Work call is at approximately 0645 hours. You must report to the work change area within 5 minutes of your release from the dining room.

**Shop Cleanliness:** All inmates will assist in keeping the shop clean. You are directly responsible for keeping your immediate work area clean. The appearance of a workshop reflects the quality of the work performed there. You are expected to perform any task assigned by your instructor in maintaining the cleanliness and good appearance of the shop, equipment and the areas in front and back of the shop.

**Tools:** The tool policy shall be strictly adhered to. You are responsible for your tools. Any tool lost while checked out to you will result in a lost tool report and a CDC 115. Tools must be returned clean or they will not be accepted by the tool room attendant.

**Reading Assignments:** Only approved reading assignments will be allowed in the class. All inmates will participate in the one (1) hour per day Literacy Reading Period. If you already have a documented 9.0 or higher reading level, you may read shop and tech manuals or continue to work in your text and work books. Should you fail to meet this obligation, it will be grounds for dismissal from your job assignment.

**Student Dress and Appearance:** All inmates in the Vocational Area must be clean and neat in appearance. You must be fully clothed at all times. That is, You must be wearing the state issued blues at all times while in the Vocational Area. For safety reasons, all students must wear unmodified state issued leather shoes.

**Shop Coats:** No inmate at any time will be permitted to wear an Instructor's shop coat. To wear an Instructor's shop coat will result in a CDC 155.

**Security Fences:** Do not approach the fences surrounding the Vocational Area for any reason at any time. Never throw anything in the direction of the fences.

**Contraband:** The following items are not allowed into the Vocational Area and will be treated as contraband: unauthorized reading material, hobby-craft, tape players, radios, playing cards, or any item that is brought into the Vocational Area without the instructor's permission.

# EXHIBIT C





# EXHIBIT D

STATE OF CALIFORNIA                                                           DEPARTMENT OF CORRECTIONS

**NOTICE OF RELEASE DATE AND RESIDENCE PLAN - FROM INSTITUTION TO PAROLE UNIT**

CDC 1121 (1/89)

**TO PAROLE UNIT:**

San Fernando Valley #3
8100 Balboa Place
Van Nuys, CA 91406-1125

**PHONE:** 818-442-0400
    Fax: 818-901-5000

**FROM RELEASING INSTITUTION:**

CALIPATRIA STATE PRISON
PO BOX 5001
CALIPATRIA, CA 92233-5001

PHONE: 760-348-7000 ext 5147
                        CASE RECORDS

**ATTENTION**
**PAROLE AGENT:**  A.O.D.

| SUBJECT | |
|---|---|
| NAME AVRATIN, Adam Sean | CDC NUMBER K45520 |

Please note the above named  ☒ inmate  ☐ parole violator has:

1) **A RELEASE DATE** of

2) **A RELEASE DATE CHANGE** from 8/01/2008 to 8/16/2008

| RESIDENCE PLANS |
|---|

| REPORTING INSTRUCTIONS |
|---|

Unless our parole desk is/has been notified otherwise, the inmate/parolee
will be instructed to report the first working day after release/re-release
and will be released with full funds.

DISTRIBUTION:    ORIGINAL TO PAROLE UNIT
                 COPY TO CENTRAL FILE
                 COPY TO INMATE/PAROLE VIOLATOR

7/31/08

DATE CHANGE DUE TO 30 DAYS LOSS OF CREDIT.

# EXHIBIT E

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
## APPLICATION FOR RESTORATION OF CREDITS

*Credits that have been forfeited due to disciplinary offenses occurring on or after January 1, 1983 shall be considered for restoration in accordance with Director's Rules (DR 3327). Submit this application to your counselor.*

I, __A. Austin__ , __K45520__ , hereby make
　　　 INMATE NAME　　　　　　　　　　　　　　　　　　　　 NUMBER

formal application for restoration of credits lost due to a finding of guilt on CDC-115,
dated _7/14/08_ Log Number ...__07-08-2023__......

　　　 Offense Division:  A-1  A-2  B  C  D  E (F) *(circle one)*
　　　 Number of days credit that were forfeited: .........__30__.........
　　　 I have remained disciplinary free for .........__06__.........days.

　　　　　　 INMATE SIGNATURE　　　　　　　　　　　 __K45520__　 __J-2-117__
　　　　　　　　　　　　　　　　　　　　　　　　　　 NUMBER　　 HOUSING UNIT

Application submitted to Counselor on: ...__7/31/08__...
　　　　　　　　　　　　　　　　　　　　　　 DATE

PLEASE LOOK INTO AS SOON AS POSSIBLE. EPRD of 8/1/08 ...

---

## COUNSELOR VERIFICATION: This inmate . . .

　　　 1. Meets all the criteria for credit restoration ................................................. ☐
　　 *2. Does not meet all the criteria for credit restoration ................................ ☒
　　　 *(Give brief explanation)*

> Request denied, per Title 15
> Section 3328 (a)(c)(1). Inmate
> must remain disciplinary free for
> a minimum of one month and
> Section 3327 (c)(3)

*If No. 2 is checked, inmate will not be scheduled for hearing, *return form to inmate.*

　　　　　　　　　　　　　　　　　　　　　　　　　　　 __7/31/08__
　　 RE-ENTRY SPECIALIST/COUNSELOR'S SIGNATURE　　 DATE

*Classification Committee CDC 128 G shall state number of days restored with copy to inmate.*

CDC 958  (REV. 5/87)

# EXHIBIT F

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT

804 TO RECORDS; 07/14/08

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| K-45520 | AVRATIN | | *EPRD* 8-01-2008 | CSP-CAL | D2-117L | 07-08-D023 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR § 3015(a) | OUT OF BOUNDS | Facility D | 07/14/08 | 1159 Hours |

CIRCUMSTANCES   On Monday, July 14, 2008, at approximately 1159 hours, while performing my duties as "D" Vocational Instructor, I observed Inmate AVRATIN, K-45520 (D2-117) assigned to PAI-001, standing on top of a fenced enclosed secured locked area that contains flammable liquids. This area is located inside the "D" Vocational Auto Paint Shop; specifically between two (2) spray booths, he seemed to be exiting this area. I immediately contacted work-change. Officer J. Toquato and J. Lopez escorted AVRATIN back to his cell. On 04/14/08 AVRATIN read and signed a job description and duty statement acknowledging his rights and responsibilities as an Auto paint Student. AVRATIN's conduct is inconsistent with the rules and guidelines established by the inmate workers training incentive program. AVRATIN will receive "A time" for this date.

Inmate AVRATIN is aware of this report.
Inmate AVRATIN is not a participant in the Mental Health Services Delivery System (MHSDS).

*VOCATIONAL INSTRUCTOR - GG.*

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ E. YERENA, Correctional Officer | | 7/18/08 | VOC. INST. | S/S |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|
| ▶ F.Z. MATA, Program Sergeant | 7-22-08 | N/A | LOC. | N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | F '0-30' | 7/23-08 | ▶ M. WHITMAN, CCII M. WHITMAN, CCII | ☐ HO ☒ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☒ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | |
|---|---|---|---|---|---|---|
| | ▶ R. PARTIDA | 7-24-08 | 0800 | N/A | | |

| ☐ INCIDENT REPORT LOG NUMBER: | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| N/A | ▶ N/A | | | ▶ N/A | | |

HEARING


(HEARING BEGAN ON RULES VIOLATIO REPORT PART-C)


REFERRED TO ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| G. EDWARDS, LIEUTENANT | ▶ G. Edwards | 7/25/08 | 2000 Hours |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ A. MILLER, FACILITY CAPTAIN | 7/30/08 | ▶ S. ANDERSEN, ASSOCIATE WARDEN | 7/30/08 |

| ☒ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ R. Partida | 7-30-08 | 1520 |

CDC 115 (7/88)

RULES VIOLATION REPORT - PART C                                                                    PAGE      OF

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-45520 | AVRATIN | 07-08-D023 | CSP-CAL | 07/25/08 |

| SUPPLEMENTAL | CONTINUATION OF: | 115 CIRCUMSTANCES | X | HEARING | IE REPORT | OTHER |
|---|---|---|---|---|---|---|

On Friday, July 25, 2008 at approximately 1410 hours, Inmate AVRATIN, K-45520, appeared before me in regards to this Rule Violation Report (RVR), charging him with violation of the California Code of Regulations (CCR), Title 15, Section CCR #3015(a), for the specific act of "OUT OF BOUNDS," a Division "F" offense. I introduced myself as the Senior Hearing Official (SHO) for this disciplinary hearing and explained the hearing rules and procedures to Inmate AVRATIN. Inmate AVRATIN stated that he was in good health, and acknowledged the receipt of all reports and/or pertinent documents more than twenty-four (24) hours in advance of the hearing required by CCR, § 3320(c)(2), and stated he was ready to proceed with the hearing. All time constraints and Due Process requirements have been met. Inmate AVRATIN understands the disciplinary process and the specific charge, and he is not a participant in the Mental Health Services Delivery System (MHSDS) and he is not a participant in the Disability Placement Program (DPP).

**SHO NOTES:** SHO recognized the wrong title attached to the report writer and Inmate AVRATIN acknowledged that he knew the report writer as an Vocational Instructor.

**EFFECTIVE COMMUNICATION:** SHO established effective communication with Inmate AVRATIN. When Inmate AVRATIN successfully read the CDC-115 aloud and explained the circumstances in his own words. Inmate AVRATIN stated he understood the report and the charges, and that he had no questions regarding the CDC-115.

**STAFF ASSISTANT:** In accordance with (CCR), Section 3315(d)(2), a Staff Assistant was not assigned.

**INVESTIGATIVE EMPLOYEE** In accordance with CCR, Section 3315(d)(1). An Investigative Employee was not assigned.

**INMATE'S PLEA:** The charges were read to Inmate AVRATIN and he pled NOT GUILTY.

**INMATE'S STATEMENT:** Inmate AVRATIN stated: "I know I should not have climbed on the fence. But I wasn't coming from the locked area. I had only climbed the fence to retrieve my leg brace that was caught on the light on the top of the paint booth. I had been goofing around with some guys, one of whom tossed my knee brace up to the light. I wasn't trying to steal anything from the paint booths. I was just trying to retrieve my knee brace."

**WITNESSES:** Inmate AVRATIN chose to have witnesses at the time of the hearing, he requested Report Writer E. Yerena as a witness, who was granted by the SHO, and was present on the telephone at the time of the hearing. The following questions were asked by Inmate AVRATIN under the direction of the SHO

Q1) "Was there any sign that the area was Out of Bounds?
A1) "No Sir."
Q2) "Was there an Out of bounds sign posted between the spray booths the very next day after this reported occurrence?
A2) "Yes."
Q3) "Did you see me in the enclosed area or outside the enclosed area?
A3) "No, he was actually on top of the fence –neither inside or outside –but on top of the fence."

(CONTINUED ON RULES VIOLATION REPORT PART-C)

| G. EDWARDS, Correctional Lieutenant | SIGNATURE OF WRITER G. Edwin | DATE 7/25/08 |
|---|---|---|
| X COPY OF CDC 115 GIVEN TO INMATE | GIVEN BY: (Staff's Signature) R. Ouster | DATE SIGNED 7-30-08 | TIME 15-20 |

CDC 115-C / REVISED (6/96)

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| K-45520 | AVRATIN | 07-08-D023 | CSP-CAL | 07/25/08 |

| | SUPPLEMENTAL | | CONTINUATION OF: | | 115 CIRCUMSTANCES | X | HEARING | | IE REPORT | | OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|

(Q4) "Are there any flammable Liquids on the outside of the enclosed area that we have access to at all times?"

(A4) "SHO rejected the question. The question concerns matters outside the enclosed area that is not relevant information."

In addition to answering the questions, Reporting Employee E. Yerena made the following statement, "When I saw him on the fence, the fence gate was closed and locked."

**FINDINGS:** Inmate AVRATINL was found GUILTY of violating CCR Section 3015(a) for the Specific Act of: "OUT OF BOUNDS", " a Division "F" offense. This finding was based upon the preponderance of the evidence submitted at the hearing, which is considered valid and substantiates the charge. This evidence includes:

1.   The Reporting Employee's written report, which states in part:

- "*On Monday, July 14, 2008, at approximately 1410 hours while performing my duties as "D" Vocational instructor, I observed inmate AVRATIN, K-45520 (D2-117L) assigned to PAI-001, standing on top of a fenced enclosed secured area that contains flammable liquids.*"
- "*...This area is located inside the "D" Vocational auto paint Shop; specifically between two (2) spray booths.*"
- "*...He seemed to be exiting the area.*"
- "*...On 04/14/08 AVRATIN read and signed a job description and duty statement acknowledging his rights and responsibilities as an Auto paint student. AVRATIN's conduct is inconsistent with the rules and guidelines established by the inmate workers incentive program.  AVRATIN will receive ""A" time" for this date.*"

2. The inmates  admission of guilt when he stated: "*I know I should not have climbed on the fence.*"

3. Testimony provided by the Report Writer E. Yerena at the time of the hearing when he stated; "*...When I saw him on the fence the fence gate was closed and locked.*"

**SHO NOTES:** The fenced enclosure was clearly designated as an Out-of-Bounds area by fact that the fence gate was locked and secured. This met criteria for an unauthorized area pursuant with CCR, Title 15. Section 3015(a)

**DISPOSITION:** Inmate AVRATIN was assessed:

Thirty (30) Days Forfeiture of Credits consistent with a Division "F" Offense.

Thirty (30) Days Loss Of Phone, starting on 07/25/08 and ending 08/24/08.

Four (04) Days Loss Of Yard, starting on 07/25/08, and ending on 07/29/08.

Inmate AVRATIN was counseled and reprimanded regarding this offense "OUT OF BOUNDS" and was advised of his future behavioral expectations.

| | SIGNATURE OF WRITER | DATE |
|---|---|---|
| G. EDWARDS, Correctional Lieutenant | G. Edwa | 7/25-08 |
| X COPY OF CDC 115 GIVEN TO INMATE | GIVEN BY: (Staff's Signature) _a. Preteter_  DATE SIGNED 7-30-08 | TIME 1520 |

CDC 115-C / REVISED (6/96)

RULES VIOLATION REPORT - PART C

PAGE        OF

| CDC NUMBER | INMATE'S NAME | | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|---|
| K-45520 | AVRATIN | | 07-08-D023 | CSP-CAL | 07/25/08 |

| SUPPLEMENTAL | CONTINUATION OF: | 115 CIRCUMSTANCES | X | HEARING | IE REPORT | OTHER |
|---|---|---|---|---|---|---|

Inmate AVRATIN was advised of his right to appeal the findings and/or disposition of the hearing, pursuant to CCR 3084.1, and also advised that he would receive a complete copy upon final audit by the Chief Disciplinary Official.  The review and signature of the Chief Disciplinary Official affirms, reverses, or modifies this disciplinary action and/or credit forfeiture and constitutes the First Level of review for appeal purposes.

**End Of Hearing**

| | SIGNATURE OF WRITER | | DATE |
|---|---|---|---|
| G. EDWARDS, Correctional Lieutenant | G. Edwards | | 7/25/08 |
| X COPY OF CDC 115 GIVEN TO INMATE | GIVEN BY: (Staff's Signature) R. Pacheco | DATE SIGNED 9-30-08 | TIME 1520 |

CDC 115-C / REVISED (6/96)

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-45520 | AVRATIN | CCR§ 3015(a) | 07/14/08 | CSP-CAL | 07-08-D023 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | | | |
|---|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ *N/A* | | DATE |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | INMATE'S SIGNATURE ▶ *N/A* | | DATE |
| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION | *N/A* | |
| ☐ **I REVOKE** my request for postponement. | INMATE'S SIGNATURE ▶ *N/A* | | DATE |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED ☒ WAIVED BY INMATE | ▶ *(signature)* | 7/25/08 |
| ☐ ASSIGNED DATE | NAME OF STAFF | |
| ☒ NOT ASSIGNED REASON | INMATE AVRATIN DOES NOT MEET CRITERIA PURSUANT WITH CCR, TITLE 15, SECTION 3315(d)(2) | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED ☒ WAIVED BY INMATE | ▶ *(signature)* | 7/25/08 |
| ☐ ASSIGNED DATE | NAME OF STAFF | |
| ☒ NOT ASSIGNED REASON | INMATE AVRATIN DOES NOT MEET CRITERIA PURSUANT WITH CCR, TITLE 15, SECTION 3315(d)(1) | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☒ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER X *(mark)* ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| Ym McFee, #D94367, 2-204 | ☒ | ☒ | | ☐ | ☐ |
| Ym Garcia, T93271, 1-230U | ☒ | ☒ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

WHILE PRESENT AT MY HEARING ON FRIDAY — JULY 25, 2008, I CALLED THE PRESENCE OF THE REPORTING EMPLOYEE BUT DO NOT REQUEST ANYMORE WITNESSES.

*(signature)*

AVRATIN K-45520        7/25/08
                       DATE

| ☑ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) R. PARTIDA ▶ *R. Partida* | TIME 0800 | DATE 7-24-08 |
|---|---|---|---|

| INVESTIGATOR'S SIGNATURE ▶ | DATE |
|---|---|

CDC 115-A (7/88)        *— If additional space is required use supplemental pages —*

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128B (8-87)

NAME and NUMBER:  **AVRATIN**          **K-45520**          **D2-117L**          **CSP-CAL**

On Friday, July 25, 2008, at approximately 1410 hours, Inmate AVRATIN, K-45520, D2-117L, appeared before this Senior Hearing Official (SHO) for adjudication of CDC-115 Log # 07-08-D023, for violation of CCR Title 15, Section 3015(a) for the specific act of: "OUT OF BOUNDS." Inmate AVRATIN was found guilty of the charge and assessed:

Thirty (30) Days Loss Of Phone, starting on 07/25/08 and ending 08/24/08.

Four (04) Days Loss Of Yard, starting on 07/25/08, and ending on 07/29/08.


Inmate AVRATIN is aware of this report.

**Original:**  C-File
     **cc:**  Senior Hearing Official
          CC II
          Inmate

G. EDWARDS, LIEUTENANT
FACILITY "D" THIRD WATCH


**DATE:  07/25/08**          **(LOSS OF PRIVILEGES)**          **INFORMATIVE CHRONO**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128B (8-87)

NAME and NUMBER:    **AVRATIN**        **K-45520**              **D2-117L**        **CSP-CAL**

On Friday, July 25, 2008, at approximately 1410 hours, Inmate AVRATIN, K-45520 D2-117L, appeared before this Senior Hearing Official (SHO) for adjudication of CDC-115 Log # 07-08-D023 for violation of CCR Title 15, Section 3015(a) for the specific act of: "OUT OF BOUNDS." As part of the disposition, Inmate AVRATIN is referred to U.C.C. for a Program Review.

Inmate AVRATIN is aware of this report.

**Original:**    C-File
**cc:**          Senior Hearing Official
                 CC II
                 Inmate

G. EDWARDS, LIEUTENANT
FACILITY "D" THIRD WATCH

**DATE:    07/25/08**              **(REFER TO U.C.C.)**              **INFORMATIVE CHRONO**

# EXHIBIT G

**CALIPATRIA STATE PRISON**
**Calipatria, CA. 92233**

# M U L T I - P U R P O S E   W O R K S H E E T
## C O R R E C T I O N A L   E M P L O Y E E S

This Form is to be utilized when generating (**CDC-115s**), CDC-128-A's, B's, B-1's, and all supplemental reports. Check the appropriate category below, fill in the form, and submit to your respective supervisor for review and signature.

| | |
|---|---|
| **[ X ] CDC-115 LOG NO.** | **INMATE'S NAME:**  Avratin, A. S. |
| [ X ] CDC-115 COUNSELING CHRONO | **INMATE'S NO.    :    K45520** |
| [  ] CDC-128-B INFORMATIVE CHRONO | **HOUSING        :    D2/117L** |
| [  ] CDC-128-B-A CLASSIFICATION CHRONO | **ETHNICITY     :  (W)  B  M   O   AMI** |
| (Circle) | |
| [  ] SUPPLEMENTAL REPORT TO CDC-115 | **WATCH              :    ___1st   _X_2nd   ___3rd** |
| [  ] SUPPLEMENTAL REPORT TO INCIDENT IR NO._____ | |

**THE ABOVE-NAMED INMATE IS BEING CHARGED WITH VIOLATING CALIFORNIA CODE OF REGULATIONS, TITLE 15., SECTION NUMBER (S)** 3015 (a) **SPECIFIC ACT (S):** Jumping a fence out of an enclosed area.

On **Monday July 14, 2007.** At approximately **11:59 hrs**, while performing my duties as D-Vocational Auto Paint Instructor I observed Inmate **Avratin, K45520,** (Housed in **D2-117L** assigned to position **PAI-001),** Standing on top of a fenced, he seemed to be exiting an enclosed area that contains flammable liquids. This area is located in D-Vocational Auto Paint Shop; specifically between two spray booths. s I immediately contacted workchange and Officers J. Torquato and J. Lopez escorted **Avratin** back to his cell. On **4/14/08** **Avratin** read and signed a Job Description and Duty Statement acknowledging his rights and responsibilities as an Auto Paint student. I/M **Avratin's** conduct is inconsistent with the rules and guidelines established by the inmate workers training incentive program. I/M **Avratin** will receive "A time" for this date. I/M **Avratin** is aware of this report.

(Please Print Legibly)

_____Ernesto Yerena_____        _____
REPORTING EMPLOYEE (Print Initial/Name)        Reviewing Supervisor's Signature

_____    Voc. Auto Paint Instructor    2nd        Sun, Sat, Holidays
BADGE NUMBER         POSITION              WATCH              RDO'S

# EXHIBIT  H

STATE OF CALIFORNIA
GA-22 (9/92)

## INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE 7/28/08 | TO Avratin | FROM (LAST NAME) K M Rush | CDC NUMBER K45520 |

| HOUSING D2 | BED NUMBER 117 | WORK ASSIGNMENT | JOB NUMBER FROM        TO |

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)

ASSIGNMENT HOURS FROM        TO

### Clearly state your reason for requesting this interview.

You will be called in for interview in the near future if the matter cannot be handled by correspondence.

Your case has been referred to the Captain & D. Jimenez + your Parole off. & Records. I have no further answers for you now.

INTERVIEWED BY                                                  DATE

DISPOSITION

We should have more answers by Wednesday, I will not see you until then

---

STATE OF CALIFORNIA
GA-22 (9/92)

## INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO Avratin | FROM (LAST NAME) Rush | CDC NUMBER K45520 |

| HOUSING D2 | BED NUMBER 117 | WORK ASSIGNMENT | JOB NUMBER FROM        TO |

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)

ASSIGNMENT HOURS FROM        TO

### Clearly state your reason for requesting this interview.

You will be called in for interview in the near future if the matter cannot be handled by correspondence.

INTERVIEWED BY K M Rush, CG                                    DATE

DISPOSITION

Your Release date is 8/16/08.

# EXHIBIT  I

✳ EMERGENCY RESPONSE REQUESTED ✳
- DUE TO RELEASE DATE BEING AFFECTED -

STATE OF CALIFORNIA
GA-22 (9/92)

## INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO | FROM (LAST NAME) | CDC NUMBER |
|---|---|---|---|
| 7-28 | CAPTAIN MILLER | ~~AVRATIN~~ AVRATIN | K 45520 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER |
|---|---|---|---|
| D.2 | 117 | N/A | FROM — TO — |

OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.)   N/A

ASSIGNMENT HOURS   FROM — TO —

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

THE RVR LOG # 07-08-D023 HAS BEEN PLACED IN YOUR BOX FOR REVIEW, I AM ASKING
IF YOU COULD PLEASE REVIEW THIS FOR THE FOLLOWING REASONS: PENDING RELEASE DATE
OF 8/01/08; THAT "OUT OF BOUNDS" WHICH IS IN 3015 (a) STATES SHALL BE CLEARLY DESIGNATED;
THE INSTRUCTOR E. YERENA. WAS ASKED WAS THIS AREA CLEARLY DESIGNATED AND HIS RESPONSE
WAS "NO SIR": I OFFERED TO TAKE A ADMINISTRATIVE BECAUSE I DID DISRUPT CLASS; TITLE 15
SECTION 3000.5 STATES SHALL = MANDATORY, SO THAT TO EVEN BE "OUT OF BOUNDS" IT NEEDED TO BE
CLEARLY DESIGNATED WHICH "IS MANDATORY" IN ORDER TO ACTUALLY BE "OUT OF BOUNDS."

Do NOT write below this line, if more space is required, write on back.

| INTERVIEWED BY  A Miller, Cpt | DATE 7/29/08 |
|---|---|

DISPOSITION

I have reviewed the RVR and believe this disposition
is appropriate. It is absolutely understood that
fences are in place to prevent unauthorized access to
areas that are out of bounds - Therefore - If you are →

found climbing on a fence, then you are
out of bounds. A Miller Cpt

✳ EMERGENCY RESPONSE REQUESTED ✳

# EXHIBIT J

*EMERGENCY RESPONSE REQUESTED* *

STATE OF CALIFORNIA
GA-22 (9/92)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE 8/3/8 | TO *Auto Point Instr.* ERNESTO YERAS | FROM (LAST NAME) *Austin A.* | CDC NUMBER K165520 |

| HOUSING D.2.14 | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER FROM — TO — |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | | ASSIGNMENT HOURS FROM — TO — |

### Clearly state your reason for requesting this interview.
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

HEY ERNIE.. DIDNT C/W TELL ME BEFORE I WENT ON "S" TIME 7/18/08
THAT LT EDWARDS REVIEWED THE RVR "OUT OF BOUNDS" CASE # 07-09-JB3
AND THAT HE REQUESTED THAT C/W RE-WRITE THE REPORT TO INCLUDE INFORMATION
THAT WOULD ALLOW THE RVR TO BE HEARD ON A GREATER CHARGE THAN THAT
THAT C/W HAD WRITTEN, AND THAT HE BELIEVED THAT I SHOULD BE PLACED IN
ASU... TO WHICH C/W REFUSED TO COMPLY ???

INTERVIEWED BY | DATE

DISPOSITION

All the facts are clearly stated on the body of the
115. The disposition of the 115 is up to the hearing
Lieutenant.

# EXHIBIT K

**D-Voc. Auto Paint**
Ernesto Yerena
Daily attendance log

Date:_____ Time class came in:_____ Time class went out:_____ X _____

R. 8/1/08

| # | Inmate name | CDC# | Ass. Date | Eth | H.U. | Time In | Signature | Duc out | Duc ret | Time out |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | Maclean, B | V83025 | 8/1/08 | W | D5/214L | * | | | | |
| 02 | Fanning, P | T66798 | 7/15/08 | B | D4/146U | | | | | |
| 03 | Barrios, M | T-74207 | 1/08/08 | M | D3/208U | | | | | |
| 04 | Cameron, R | F-53016 | 3/19/08 | B | D2/115U | | | | | |
| 05 | Carlin, J | J-18386 | 3/19/08 | M | D3/202L | | | | | |
| 06 | Garcia, S | T-93271 | 1/08/08 | M | D1/230U | | | | | |
| 07 | Molina, R | V40750 | 7/08/08 | M | D2/106U | | | | | |
| 08 | Lopez, F | V15551 | 7/8/08 | M | D2/133U | | | | | |
| 09 | Oldenburg, J | K-25410 | 1/08/08 | M | D1/230U | | | | | |
| 10 | Hamilton, J | H26340 | 5/8/08 | W | D2/238U | | | | | |
| 11 | Solis, O | T54267 | 7/8/08 | M | D5/237L | | | | | |
| 12 | Contreras, P | H-9859 | 1/08/08 | M | D1/224L | | | | | |
| 13 | Davis, D | P01614 | 7/17/08 | A | D4/139L | | | | | |
| 14 | Hickey, J | E53215 | 8/1/08 | W | D2/213U | * | | | | |
| 15 | Villalobos, J | H-22668 | 1/08/08 | M | D1/138U | | | | | |
| 16 | Marquez, | F-81582 | 7/08/08 | M | D5/111U | | | | | |
| 17 | Garcia, A | P-60010 | 5/8/08 | M | D2/120L | | | | | |
| 18 | McFee, S | D94367 | 4/8/08 | A | D2/204U | | | | | |
| 19 | Nunez, D | 304/7/ | 8/1/08 | H | D5/114L | * | | | | |
| 20 | Camacho, A | J83380 | 7/8/08 | M | D3/221L | | | | | |
| 21 | Lujan, J | D68151 | 4/8/08 | M | D3/243U | | | | | |
| 22 | Gercis, M | H44772 | 7/15/08 | M | D5/110U | | | | | |
| 23 | Samaniego, A | V79800 | 8/1/08 | M | D3/144L | * | | | | |
| 24 | Williams, G | C68955 | 2/8/08 | B | D1/130U | | | | | |
| 25 | Morales, R | F42719 | 8/1/08 | M | D5/250L | * | | | | |
| 26 | Delatizar, | V55145 | 8/1/08 | M | | | | | | |
| 27 | Hale, K | J78846 | 12/12/07 | W | D3/117L | | | | | |
| Tea. | Scott, G | C84849 | 7/17/08 | W | D4/202U | | | | | |

Ducats and early releases

| # | Inmate name | Type of duc. | Time | Person requesting I/M | Ext. # | Comments |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

**D-Voc. Auto Paint**
Ernesto Yerena
Daily attendance log

Date:_____ Time class came in:_____ Time class went out:_____ X_____

R. 7/21/08

| # | Inmate name | CDC# | Ass. Date | Eth | H.U. | Time In | Signature | Duc out | Duc ret | Time out |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | | | | | | | | | | |
| 02 | Fanning, P | T66798 | 7/15/08 | B | D4/146U | | | | | |
| 03 | Barrios, M | T-74207 | 1/08/08 | M | D3/208U | | | | | |
| 04 | Cameron, R | F-55916 | 3/19/08 | B | D2/115U | | | | | |
| 05 | Carlin, J | J-18386 | 3/19/08 | W | D3/202L | | | | | |
| 06 | Garcia, S | J93271 | 1/08/08 | M | D1/230U | | | | | |
| 07 | Molina, R | V40750 | 7/08/08 | M | D2/106U | | | | | |
| 08 | Lopez, F | V13551 | 7/8/08 | M | D2/133L | | | | | |
| 09 | Oldenburg, J | K-25410 | 1/08/08 | M | D1/230U | | | | | |
| 10 | Hamilton | H26340 | 5/8/08 | W | D2/238U | | | | | |
| 11 | Solis, O | T54267 | 7/8/08 | M | D5/237L | | | | | |
| 12 | Contreras, P | H19853 | 1/08/08 | M | D1/224L | | | | | |
| 13 | Davis, D | P01614 | 7/17/08 | A | D4/139L | | | | | |
| 14 | | | | | | | | | | |
| 15 | Villalobos, J | H-22668 | 1/08/08 | M | D1/138U | | | | | |
| 16 | Marquez, J | F-81382 | 1/08/08 | M | D5/ | | | | | |
| 17 | Garcia, A | P-60010 | 5/8/08 | M | D2/120L | | | | | |
| 18 | McFee, S | D94367 | 4/8/08 | A | D2/204U | | | | | |
| 19 | Chau, E | J83262 | 4/8/08 | O | D1/139L | | | | | |
| 20 | Camacho, A | T83380 | 7/8/08 | M | D3/221L | | | | | |
| 21 | Lujan, J | D68151 | 4/8/08 | M | D3/243U | | | | | |
| 22 | Gerois, M | H44772 | 7/15/08 | W | D5/110L | | | | | |
| 23 | | | | | | | | | | |
| 24 | Williams, G | G68955 | 4/8/08 | B | D1/130U | | | | | |
| 25 | | | | | | | | | | |
| 26 | | | | | | | | | | |
| 27 | Hale, K | J78846 | 12/12/07 | W | D3/117L | | | | | |
| Tea | Scott, G | G84849 | 7/17/08 | W | D4/202U | | | | | |

## Ducats and early releases

| # | Inmate name | Type of duc. | Time | Person requesting I/M | Ext. # | Comments |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT.

---

ADAM SEAN AURATIN ,

                   PLAINTIFF,

       V.

J. WOODFORD (SECRETARY OF CORR.),

LARRY SMALL ( WARDEN) ,

S. ANDERSON (ASSOC. WARDEN),

A. MILLER (CAPTAIN 'D' YARD),

G. EDWARDS (LIEUTENANT) ,

JIM O'COYNE (SUPRV. INSTRUCTOR),

ERNESTO YERENA (INSTRUCTOR), DEFENDANTS,

CIVIL ACTION

NUMBER: _____

DECLARATION

ADAM SEAN AURATIN

---

ADAM SEAN AURATIN HEREBY DECLARES:

THAT ON 7·8·08 ERNESTO YERENA ACCUSED ME OF DEST-
ROYING THE CLASS CLOCK. THAT HAD SENTIMENTAL VALUE.
SHORTLY AFTER NUMEROUS CLASSMATES TELL ME TO BE
CAREFUL THAT ERNIE IS OUT TO GET ME .....

ON 7·14·08 I WAS HORSING AROUND WITH INMATE S. MCFEE
WHOM TOSSED MY ELBOW BRACE IN THE AIR AND ENDED UP
ON TOP OF THE SPRAY BOOTH. USING THE FENCE AS A LADDER
AS WELL AS THE SIDE OF THE SPRAY BOOTH. I CLIMBED
UP AND RETRIEVED MY PROPERTY. WHILE CLIMBING DOWN.
MR. YERENA SAW ME AND STATED " I GOT YOU NOW. YOUR
OUT OF HERE". MR. YERENA RETURNED TO HIS OFFICE AND
CALLED C/OS WHOM RESPONDED SHORTLY AFTER. AND WERE
ASKED BY E. YERENA TO ESCORT ME BACK TO MY CELL. WHICH
THEY DID AFTER I WAS THOROUGHLY SEARCHED AND NO CONTR-
ABAND WAS FOUND.

ON 7·15·08 I WAS ALLOWED BACK TO WORK. WHICH WAS
UNUSUAL IF A SERIOUS 115 WAS PENDING. I PULLED MR.
YERENA ASIDE. AND ASKED HIM WHY IT WAS THAT HE
HAD ME ESCORTED OUT OF CLASS. WITHOUT EVEN ASKING
ME WHY I CLIMBED ON THE SPRAY BOOTH? I PROCEEDED

To explain to Mr. Verono what happened, and why I climbed up there.... At which point Mr. Verono stated to me that as it stands I was only to receive an administrative 115, not a serious. Which was why my gate pass that allows me access to vocation was not pulled and I was allowed back to work.. However that Lt. Edwards told Mr. Verono to go back and rewrite the 115 so that it appeared that I was attempting to steal the flammable liquids that are contained inside locked lockers inside the fenced area. Therefore jeopardizing the safety and security of the institution which would allow Lt. Edwards to place me in administrative segregation... E. Verono stated that he was not going to rewrite the 115, that it would remain administrative, and to call him as a witness at the time of the hearing and I would beat it all together due to the fact that the area in question was not clearly designated out of bounds...

On 7-24-08 I approached Lt. Edwards during P.M. chow release concerning my 115 and pending release date of 8-1-08 and asked him if I could speak with him after chow. That it pertained to an out of bounds 115 that was paramount to his attention by E. Verono on 7-14-08 at which time. He stated "Oh yeah. Climbing the fence I remember".... I went on to explain to Lt. Edwards that it was my understanding that he asked E. Verono to rewrite the 115 and make it more serious due to the flammable liquids and the potential threat of possessing them. I explained to Lt. Edwards that there are flammable liquids throughout the entire shop contained in 55 gallon drums. Not just inside that enclosed area that. That was only an inventory storage area.
At this point our conversation ceased and was to resume after chow.

to which Lt. Edwards refused and found me guilty of a serious 115 taking from me 30 days of good time. 30 days loss of phones. And four days loss of yard.

I asked Lt Edwards how and why he was finding me guilty of this charge, and his response was " I need to set an example that occurences in vocation are more serious. Due to the lack of gun coverage and the closeness to the security fence, that in this instance the rules of the title is more flexible in order to maintain the safety and security of this .... institution.

On 7/31/08 I submitted an emergency 602. See exhibit M. Knowing about my parole release date, the appeals cordinator delayed the process knowing I was going to be released. And in doing so interfered with exhausting the state remedies before release. The appeal has been re submitted but plaintif has no access of receiving it... due to being released..

I declare under penalty of perjury under the laws of California that the foregoing is true and correct

Date. 8/14/08                    Adam S Aurora

At approximately 7pm. That night while on my way to speak with Lt. Edwards. There was an Emergency Code on C-Yard, Jnb program was shut down and I Returned to my Cell.

7.25.08 Lt. Edwards calls me for 115 Hearing. Where again I try to speak with him about the Classifacation of the 115 as Serious. Stating to him that if anything it should be Administrative. That E. Yerena the writer of the Report is clearly going to tell him that the area in Question was not clearly desicenated out of bounds. But Has Still put a sign up. again I Explain to Lt. Edwards that theres 210 Gallons of Flamable liquids on the Shop Floor. Giving me no Reason at all to Jump the Fence to obtain flamable liquids if I so Desired.

Lt. Edwards calls E. Yerena via phone Jnb poses the three Questions I Have. see (Exhibit F) which will also show that Lt. Edwards Denied my third Question stating it was Irrievelent to the Charge of out of Bounds, However it is Extreemly Relevent due to Lt. Edwards basing the Seriousness of the 115 on a supposed Breech of Security. Which is why Lt Edwards Requested. E. Yerena to Rewrite the 115 so it would be Heard on a more Serious Matter.

Lt. Edwards asks if I Have any further Comments, and I ask him to Read 3015 A in the title 15 and point out to him that every out of Bounds area, must clearly be Desicenated out of Bounds. Which in this case it was not. But Since my Conduct Jnb the way I went about retrieving my Personal Property caused a Disruption and the Y/os to Be called and my being escorted back to my Cell. That I was Partily at fault and I would Plead Guilty to an administrative 115 Jnb perform whatever extra Duty Lt. Edwards Felt like ordering until I went Home in Seven Days.

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR *(Name):*

NAME OF COURT:

   STREET ADDRESS:

   MAILING ADDRESS:

   CITY AND ZIP CODE:

   BRANCH NAME:

  PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

**DECLARATION**

CASE NUMBER:

I declare that on or about 7/8/08 I overheard our vocation
instructor Eranesto yerena State that he was "going
to get that guy (Meaning inmate Avratin) out of his
class. I took this to mean that yerena ment to ex-
spell him from class, which he very soon after did.
I explained to yerena that I was messing around with
Avratin and had thrown his knee brace on top of the spray
booth. He did not believe I had done so and gave
Avratin a 115 anyway even though He was. Never
actually out of bounds. I Saw That Avratin was only
Trying to get his knee brace and not trying to enter any
out of bounds areas. He was facing a way from the fenced
in area and Towards the spray booth, where his knee
brace was at when yerena saw him.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/9/08

Shawn McFee
*(TYPE OR PRINT NAME)*

▶ _Shawn McFee_
*(SIGNATURE OF DECLARANT)*

☐ Petitioner/Plaintiff    ☒ Respondent/Defendant    ☐ Attorney
☐ Other *(specify):*

**(See reverse for a form to be used if this declaration will be attached to another court form before filing)**

Form Approved by the
Judicial Council of California
MC-030 [New January 1, 1987]
Optional Form

**DECLARATION**

THOMSON
✳
WEST

MC-030

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*    TELEPHONE NO.: | FOR COURT USE ONLY |

ATTORNEY FOR *(Name):*

NAME OF COURT:

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **DECLARATION** | CASE NUMBER: |

UPON INFORMATION AND BELIEF, I HEARD THAT L.T. EDWARDS HAD INSTRUCTED ERNESTO YERENA. D. VOCATIONAL AUTO PAINT INSTRUCTOR TO RE-WRITE INMATE AVRATIN'S 115 SO THAT IT SOUND MORE SERIOUS SO THAT HE COULD PLACE INMATE AVRATIN IN ASU. AT WHICH TIME ERNESTO YERENA REFUSED TO REWRITE THE 115.

ON MANY OCCASIONS I HAVE HEARD E. YERENA STATE: "IM GONNA GET THAT GUY" AND SOON AFTER WOULD WRITE UP THE PERSON TO WHICH THE STATEMENT WAS ADDRESSED TO IN ORDER TO HAVE THEM REMOVED FROM THE CLASS.

ON JULY-8-2008 I CAME UPON INFORMATION AND BELIEF THAT E. YERENA WAS OUT TO GET INMATE AVRATIN. BECAUSE HE BELIEVED THAT INMATE AVRATIN WAS RESPONSIBLE FOR THE DISAPPEARANCE OF THE CLASS CLOCK THAT HAD PERSONAL SENTIMENTS TO E. YERENA. THEREFORE HE RETALIATED AGAINST INMATE

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

- over -

Date: 8.10.08

Jesus Oldenburg
*(TYPE OR PRINT NAME)*

Jesus Oldenburg
*(SIGNATURE OF DECLARANT)*

☐ Petitioner/Plaintiff   ☐ Respondent/Defendant   ☐ Attorney
☐ Other *(specify):*

(See reverse for a form to be used if this declaration will be attached to another court form before filing)

Form Approved by the
Judicial Council of California
MC-030 [New January 1, 1987]
Optional Form

**DECLARATION**

THOMSON
*
WEST

MC-031

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

*This form must be attached to another form or court paper before it can be filed in court.*

ARRESTED FOR HIS OWN PERSONAL REASONS.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Petitioner/Plaintiff ☐ Respondent/Defendant ☐ Attorney

☐ Other *(Specify)*:

(See reverse for a form to be used if this declaration is not to be attached to another court paper before filing)

Form Approved by the Judicial Council of California
MC-031 [New January 1, 1987]
Optional Form

ATTACHED DECLARATION

THOMSON WEST

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT.

- - - - - - - - - - - - - - - - - - x

ADAM SEAN AVRATIN ,

           PLAINTIFF,

    V.

J. WOODFORD (SECRETARY OF CORR.) ,

LARRY SMALL ( WARDEN ) ,

S. ANDERSON (ASSOC. WARDEN) ,

A. MILLER ( CAPTAIN 'D' YARD) ,

E. EDWARDS (LIEUTENANT) ,

JIM O'COYNE (SUPRV. INSTRUCTOR) ,

ERNESTO YERENA (INSTRUCTOR), DEFENDANTS; x

CIVIL ACTION

NUMBER:_____

DECLARATION

DECLARATION

I HEREBY declare THE FOLLOWING to BE true IN Response to Questions Posed BY Inmate AVRATIN In Regards to this MATTER.

1.) ON 7/10/08, I WAS standing APPROXIMATELY 5' FT AWAY when I overheard E. YERENA SAYING that Lt. Edwards Had told Him to Go BACK AND do A REWRITE ON THE 115 that WAS BEING given to I/m AVRATIN So THAT IT COULD BE Heard AS A MORE SERIOUS MATTER.

2.) YES, I MYSELF ALONG WITH OTHER I/m's In THE CLASS HAVE USED And continue to USE SAID WALL.

3.) YES, I PERSONNALLY Heard E. YERENA MAKE A statement THAT WAS CLEARLY directed towards I/m AVRATIN.

4.) YES, I MYSELF PERSONNALLY FEEL THAT E. YERENA IS BIASED towards CERTAIN Inmates.

5.) AS Stated IN Answer #4, YES, I FEEL THERE'S "FAVORTISM" w/IN VOC - Auto Paint. WHICH I EXPRESSED ORally to SUPERVISOR E. YERENA, THERE IS AN OVER RIDING PERVASIVE feeling THROUGHOUT THE CLASS IN REGARDS to THIS.

    I declare under PENALTY OF PERJURY under THE LAWS OF THE State of CALIFORNIA THAT THE FOREGOING IS THE TRUTH And CORRECT.

DATE: 8.13.08

X Jason Hamilton          X _____

(PRINT OR TYPE NAME)      (SIGNATURE OF DECLARANT)

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR *(Name)*:

**NAME OF COURT:**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

**DECLARATION**

CASE NUMBER:

I DECLAIR THAT I AM BEING A STUDENT ASSIGNED TO AUTO PAINT UNDER ERNESTO YERENA IN THE PAST. I WAS WHITNESS TO MANY OCCASIONS WHERE ERNESTO YERENA WOULD TARGET CERTIAN INMATE FOR TERMINATION BY WRITING THEM UP ON ERROURS HIS OWN HE WOULD ANNOUNCE TO THE CLASS "IM GONNA GET THAT GUY OUT OF HERE."

AN EXAMPLE OF THIS IS: AN INMATE WAS BLAMED FOR TAKING A ROLL OF TAPE FOR THE PURPOSE OF BRINGING IT BACK TO HIS CELL. WHEN I FOUND OUT THAT THIS INMATE WAS GOING TO BE FIRED I TOLD ERNESTO YERENA THAT I WAS THE ONE WHO STOLE THE TAPE. NOT THE OTHER GUY. MR YERENAS RESPINSE WAS "GET OUT OF HERE. I WANT THAT GUY OUT OF MY CLASS" THIS OCCURED ON OR ABOUT THE MONTH OF FEB 2008

*THIS DECLARATIO WAS WRITTEN FOR INMATE CASTRO IN HIS OWN WORDS BY PLAINTIE. ADAM AVERTIN DUE TO MI CASTROS ILLEGIBLE WRITING.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/13/08

CASTRO K48103
(TYPE OR PRINT NAME)

*Castro*
(SIGNATURE OF DECLARANT)

☐ Petitioner/Plaintiff  ☐ Respondent/Defendant  ☐ Attorney

☐ Other *(specify)*:

(See reverse for a form to be used if this declaration will be attached to another court form before filing)

Form Approved by the
Judicial Council of California
MC-030 [New January 1, 1987]
Optional Form

**DECLARATION**

THOMSON
—*—
WEST

1  IN THE UNITED STATES DISTRICT COURT

2  FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4  ADAM S. AVRATIN                            )

                              PLAINTIFF       )        CIVIL CASE NO _____

5                                             )

6  V.                                         )

7                                             )        DECLARATION:

8                                             )

   LARRY  SMALL (WARDEN)                      )

9  A. MIL                                     )

10                              DEFENDANTS    )

11

12

13    I  Randall Williams    , CDC# P25737, HEREBY

14  DECLARES: NOW INFORMATION AND BECAME, I APP-

15  ROACHED ERNESTO LERENS CONCERNING THE

16  RUMOR IN CLASS, THAT HE WAS OUT TO GET

17  INMATE AVRATIN. I HAD ASKED HIM WHY

18  IT WAS THAT HE HAD IT OUT FOR INMATE

19  AVRATIN. AND HE TOLD ME THAT HE BELIEVED

20  THAT INMATE AVRATIN HAD TAKEN SOMETHING

21  THAT WAS OF PERSONAL SENTIMENT TO HIM

22  AND THAT HE WAS GOING TO FIND A REASON

23  TO WRITE HIM UP AND HAVE HIM REMOVED FROM

24  CLASS. THIS CONVERSATION TOOK PLACE DURING

25  MORNING CHOW RELEASE IN FRONT OF WORK-

26  CHANGE ON OR ABOUT THE DATE OF JULY 11-

27  2008. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF

28  THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT

   DATE 8/12/08                    SIGN Randall Williams

                                        RANDALL WILLIAMS

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR (Name):

NAME OF COURT:
   STREET ADDRESS:
   MAILING ADDRESS:
   CITY AND ZIP CODE:
   BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

CASE NUMBER:

**DECLARATION**

I declare that on or about 7/8/08 I overheard our vocation instructor Eranesto yerena State that he was "going to get that guy (Meaning inmate Averton) out of his Class. I took this to mean that yerena ment to ex-spell him from Class. which he very soon after did.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/9/08

Shawn McFee
(TYPE OR PRINT NAME)

▶ Shaun McFee
(SIGNATURE OF DECLARANT)

[ ] Petitioner/Plaintiff  [ ] Respondent/Defendant  [ ] Attorney
[ ] Other (specify):

(See reverse for a form to be used if this declaration will be attached to another court form before filing)

Form Approved by the
Judicial Council of California
MC-030 [New January 1, 1987]
  Optional Form

**DECLARATION**

THOMSON
WEST

# EXHIBIT  M

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

*August 8, 2008*

*AVRATIN, K45520*
*FD0200000000117L*

Log Number: CAL-D-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You disciplinary appeal is incomplete. You must attach legible copies of all documents you received during the disciplinary process. For example: the completed CDC 115, Rule Violation Report, the laboratory report, the Mental Health Assessment Form, the completed CDC 115-A, Serious Rule Violation Report, the CDC 115, Investigative Employee report, supplemental reports for the CDC 115, the CDC 7219, Report of Injury, the complete CDC 837, Incident Report, and the CDC 1030, Confidential Information Disclosure Form.*

*EPRD noted. Need completed copy of RVR for processing.*

*D Edwards*
Appeals Coordinator
Calipatria State Prison

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

✳ EMERGENCY ✳

## INMATE/PAROLEE
## APPEAL FORM
CDC 802 (12/87)

| Location: | Institution/Parole Region | Log No. | Category |
|---|---|---|---|
| 1. | | 1. | 1 |
| 2. | | 2. | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

EPRD 8-16-08

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| AVRATIN, A. | K45520 | N/A | D.2.117 |

A. Describe Problem: ON JULY 25, 2008, R.V.R. LOG # 07-08-D023 WAS HEARD BY LIEUTENANT EDWARDS. APPEALLANT HAD ADVISED EDWARDS THAT RULE 3015(a) CLEARLY STATES ANY AREA THAT IS "OUT OF BOUNDS" SHALL BE CLEARLY DESIGNATED. (SHALL = MANDATORY)(RULE 3000.5), WHEREIN, LT. EDWARDS INSERTED A PROVISION THAT IS CONTRARY TO THAT VERY RULE. THESE RULES ARE WORDED AND WRITTEN PRECISELY SO THAT DUE PROCESS IS STRICTLY ADHERED TO. HIS ASSERTION THAT A PAPER IN CLASS INFORMED ME THAT THAT AREAS WAS OUT OF BOUNDS. THIS IS NOT SO, 3015(a) SAYS THE AREA WILL BE CLEARLY DESIGNATED "OUT OF BOUNDS" WHICH IS WHAT THE REPORTING EMPLOYEE CLEARLY SAYS WAS NOT, SO DESIGNATED, THIS IS CONTRARY TO THE VERY

If you need more space, attach one additional sheet.

B. Action Requested: TO REMOVE 30 DAY SANCTION FOR LACK OF DUE PROCESS, EMERGENCY CREDIT RESTORATION WAS DENIED. AND TO BE RELEASED WITHOUT UNDUE HARDSHIP CAUSED BY STAFFS WANTON DISREGARD TO FOLLOW ESTABLISHED PROCEEDURES IN ORDER TO MAINTAIN THE RIGHTS TO DUE PROCESS, WHEN TIME LOSS IS A SANCTION.

Inmate/Parolee Signature: _____ Date Submitted: 7/31/08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____ Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

SCREENED OUT     AUG 0 8 2008

RECEIVED CAL APPEALS AUG 0 4 2008

INMATE / PAROLEE

APPEAL FORM CONTD....

1. CONTD. ... RULE THAT APPEALLANT WAS FOUND GUILTY TO. AGIAN 3015(a) DOES NOT AY ANYTHING SUCH AS A VERBAL, OR WRITTEN DOCUMENT WILL BE ALLOWED IN IEU OF THE AREA BEING CLEARLY DESIGNATED. TO ALLOW THIS R.V.R. TO O WITHOUT THE PROPER PROCEEDURES DURING DISCIPLINARY ACTIONS THAT HAVE EVERE REPERCUSSIONS TO APPEALLANTS RELEASE DATE, IS THE WANTON ISREGARD FOR THE DUE PROCESS AFFORDED INMATES IN BOTH STATE AND EDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND LIBERTY, FOR HIS REASON APPEALLANT ASKS FOR THE REVERSAL OF THE 30 DAY SANCTION.

SCREENED OUT    AUG 0 8 2008

# EXHIBIT  N

STATE OF CALIFORNIA                     DEPARTMENT OF CORRECTIONS

# RULES VIOLATION REPORT     804 TO RECORDS: 07/14/08

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| K-45520 | AVRATIN | EPRD 8-01-2008 | CSP-CAL | D2-117L | 07-08-D02 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| CCR § 3015(a) | OUT OF BOUNDS | Facility D | 07/14/08 | 1159 Hour |

CIRCUMSTANCES On Monday, July 14, 2008, at approximately 1159 hours, while performing my duties as "D" Vocational Instructor, I observed Inmate AVRATIN, K-45520 (D2-117) assigned to PAI-001, standing on top of a fenced enclosed secured locked area that contains flammable liquids. This area is located inside the "D" Vocational Auto Paint Shop; specifically between two (2) spray booths, he seemed to be exiting this area. I immediately contacted work-change. Officer J. Toquato and J. Lopez escorted AVRATIN back to his cell. On 04/14/08 AVRATIN read and signed a job description and duty statement acknowledging his rights and responsibilities as an Auto paint Student. AVRATIN's conduct is inconsistent with the rules and guidelines established by the inmate workers training incentive program. AVRATIN will receive "A time" for this date.

Inmate AVRATIN is aware of this report.
Inmate AVRATIN is not a participant in the Mental Health Services Delivery System (MHSDS).

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ E. YERENA, Correctional Officer | 7/18/08 | VOC. INST. | S/S |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| F.Z. MATA, Program Sergeant | 7-27-08 | DATE N/A   LOC. N/A | |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | F | 7/30/08 | ▶ | ☐ HO ☒ SHO ☐ SC ☐ FC |

### COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| ☒ CDC 115 | ▶ | 7-29-08 | 0800 | |
| ☐ INCIDENT REPORT LOG NUMBER: | ▶ | | | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

HEARING

① 3015 MUST BE DESIGNATED / OUT OF BOUNDS

A.

② I CALLED INSTRUCTOR AS WITNESS AND HE STATED THAT AREA WASN'T DESIGNATED OUT OF BOUNDS BUT AS OF 7/15/08 IT IS NOW ...

③ LT. EDWARDS STATES HE WAS NA GUILTY SO THAT THERE IS NO COOP NOTES FOR FUTURE OCCURANCE ... RULES VIOLATIONS THAT OCCURS BEHIND THE WALL ARE CONSIDERED MORE SERIOUS BECAUSE OF LACK OF GUN COVERAGE AND CLOSURE TO PERIMETER ...

| REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA | | | |
|---|---|---|---|
| ACTION BY: (TYPED NAME) | SIGNATURE ▶ | DATE | TIME |
| REVIEWED BY: (SIGNATURE) ▶ | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE ▶ | DATE |
| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | DATE | TIME |

CDC 115 (7/88)

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS
# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE. | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| K-45520 | AVRATIN | CCR§ 3015(a) | 07/14/08 | CSP-CAL | 07-08-D023 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT    ☐ YES    ☐ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED    ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☐ NOT ASSIGNED | REASON | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED    ☐ WAIVED BY INMATE | ▶ | |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☐ NOT ASSIGNED | REASON | 2372301 |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☒ REPORTING EMPLOYEE    ☐ STAFF ASSISTANT    ☐ INVESTIGATIVE EMPLOYEE    ☐ OTHER _____    ☐ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| McFee | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE | DATE |
|---|---|---|
| | ▶ | |

| ☐ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ | TIME 0800 | DATE 7-24-08 |
|---|---|---|---|

CDC 115-A (7/88)

*— If additional space is required use supplemental pages —*

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# REFERRAL MEMORANDUM

Date: 8/8/8

From: _Eduardo_

Subject: _Lur ation  R45520_

(Initial & date)

1. _CCI – Rush_
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____

☐ Approval/Sign-off
☐ Signature
☒ Information

☐ Handcarry or Call for Pick Up
☐ Release When Signed
☐ Do Not Release:
☐ Call When Signed

| Control No. | Name/Phone No. |
|---|---|

Remarks: _please deliver to Ifm. Eprd noted._

CDC 982 (Rev. 2/87)

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS

# REFERRAL MEMORANDUM

Date _____ 8/0/8

From: _Edwards_

Subject: _Exfration R45520_

(initial & date)

1. _CCI - Rush_          6. _____
2. _____              7. _____
3. _____              8. _____
4. _____              9. _____
5. _____              10. _____

☐ Approval/Sign-off       ☐ Handcarry or Call for Pick Up
☐ Signature               ☐ Release When Signed
☒ Information             ☐ Do Not Release;
                            Call When Signed

Control No. _____    Name/Phone No. _____

Remarks: _please deliver to Ilm. Epwd noted._

CDC 882 (Rev. 2/87)

SCREENED OUT        AUG 0 8 2008

# EXHIBIT O

§ 3084.7 DEPARTMENT OF CORRECTIONS AND REHABILITATION **TITLE 15**

(4) Third level responses shall be completed within 60 working days.

(5) Exception is authorized in the event of:

(A) Unavailability of the appellant, or staff or inmate witnesses.

(B) Complexity of the decision, action, or policy.

(C) Necessary involvement of other agencies or jurisdictions.

(6) Except for the third formal level, if an exceptional delay prevents completion of the review within specified time limits, the appellant shall be informed in writing of the reasons for the delay and the estimated completion date.

(c) Inmate or parolee response. An appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 832.5 and 5054, Penal Code; Sections 19572, 19583.5 and 19635, Government Code; and *Brown v. State Personnel Board* (1985, 3d Dist), 166 Cal App 3d 1151, 213 Cal Rptr 53.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order including amendment of subsection (b) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Amendment of subsections (b)(1)–(5), repealer and new subsection (b)(6)(D), amendment of subsections (b)(7) and (c), and repealer of subsections (c)(1) and (c)(2): filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

4. Amendment of subsections (b)(1)–(5), repealer and new subsection (b)(6)(D), amendment of subsections (b)(7) and (c), and repealer of subsection (c)(1) and (c)(2) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

5. Editorial correction of History 4 (Register 97, No. 24).

6. Certificate of Compliance as to 5-29-97 order, including amendment, transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

**3084.7. Exceptions to the Regular Appeals Process.**

(a) Emergency Appeals. Usual time limits for staff response shall not apply to emergency appeals, which shall be resolved in the shortest practical time.

(1) When circumstances are such that the regular appeal time limits may result in a threat to the appellant's safety or cause other serious and irreparable harm, the appeal shall be processed as an emergency appeal. Such circumstances include, but are not limited to:

(A) Need for protective custody.

(B) Decision was made to transfer the appellant to an institution housing an enemy.

(C) The appellant was scheduled for parole within 15 calendar days and is appealing a serious disciplinary action resulting in credit loss extending the release date.

(2) The appeal shall be submitted directly to the appeals coordinator and include substantiation of circumstances warranting emergency processing of the appeal.

(A) If the appeals coordinator determines emergency processing is unwarranted, the inmate shall be notified and the appeal shall be processed as a regular appeal.

(B) If emergency processing is warranted, the first level shall be waived and the second level review shall be completed within five working days.

(C) If dissatisfied with the second level response, the appellant may resubmit the appeal to the appeals coordinator who shall telefax it to the chief, inmate appeals, for a third level review which shall be completed within five working days.

(b) Disciplinary Appeals.

(1) A second level review shall constitute the department's final action on appeals of disciplinary actions classified as "administrative", pursuant to section 3314; and Custodial Counseling Chronos, CDC Form 128-A (rev. 4-74), documenting minor disciplinary infractions pursuant to section 3312(b).

(2) Appeals of disciplinary actions classified as "serious" pursuant to section 3315, where credit loss is a sanction, may be appealed through the third level, review. Within 15 working days of receipt of the department's third level denial of a disciplinary credit loss appeal, the appellant may demand a Board of Prison Terms review. The appellant shall submit the written demand for such review, with a copy of the department's final decision, to the institution's classification and parole representative or the parole region's appeals coordinator who shall within five working days forward the material to the Board.

(c) Combined Disciplinary and Parole Rescission Hearing Appeals.

(1) When the outcome of a pending disciplinary hearing may impact a Board of Prison Terms' parole rescission hearing on the same individual, a combined hearing may be held wherein the evidence is considered by both departmental and Board staff in arriving at their separate decisions.

(2) When any aspect of a combined disciplinary and parole rescission hearing is appealed, first and second level review shall be waived. The appeal shall be forwarded to the chief, inmate appeals, for a combined review by the department and the Board of Prison Terms.

(d) Transfer Appeals. A decision for transfer to another institution may be appealed by the affected inmate after endorsement by the classification staff representative.

(1) Filing of an appeal of a transfer decision shall not normally be cause to stay or delay a transfer.

(2) Regular transfer appeals:

(A) Informal and first level of appeal shall be waived.

(B) If the appeal is granted at second level, the appellant's case shall be presented to a second classification staff representative for reconsideration.

(C) If the second classification staff representative disagrees with second level appeal response, the institution head may submit the case to the departmental review board for final decision.

(D) If the appeal is denied at second level or the institution head does not refer the case to the departmental review board, the appellant may appeal at the third level.

(3) Reception center transfer appeals:

(A) The informal level shall be waived.

(B) First level review shall be conducted by the reception center's correctional administrator.

(C) If the appeal is granted, the appellant may be retained at the reception center until the case is presented to a second classification staff representative for reconsideration.

(D) If the second classification staff representative disagrees with the first level appeal decision, the appellant may resubmit the appeal for second level review.

54

*EXHIBIT O-1*

**TITLE 15**  DEPARTMENT OF CORRECTIONS AND REHABILITATION  § 3084.6

(f) Interview requirements. A personal interview shall be conducted with the appellant at the first level of review unless:

(1) First level was waived. In such case a personal interview shall be conducted with the appellant at the second level.

(2) The reviewer has decided, before interviewing the appellant, to grant the appeal.

(3) The appellant is not present at the institution where the appeal was filed. In such case, a telephone interview with the appellant shall meet the interview requirement.

(A) If the appeal concerns a disciplinary action, the telephone interview may be waived if the appeals coordinator determines an interview would not provide additional facts.

(B) If the appellant is not available for telephone interview, the reviewers shall request the caseworker in the jurisdiction where the appellant is located to complete the interview and provide a written report.

(g) Written response. At each level of review not waived, the original appeal shall be returned to the appellant with a written response stating the appeal issue and reasons for the decision.

(h) Disciplinary appeals. When procedural or due process requirements provided inmates in disciplinary proceedings have been violated, one of the following remedies shall be considered:

(1) The original disposition shall be vacated and the charges dismissed if the reviewer determines that the findings of the disciplinary hearing were not supported by the evidence presented at the hearing and any of the following circumstances are evident:

(A) The charge was based on information later determined to be false or unsubstantiated.

(B) A new hearing would not likely produce additional information.

(C) Elapsed time makes it unlikely the accused can present an adequate defense.

(D) Witnesses whose absence would prevent the accused from presenting an adequate defense are no longer available.

(2) The original disposition shall be vacated and a new hearing ordered if the reviewer determines that any of the following requirements were not met:

(A) The accused was not given copies of required documents within specified time limits before the hearing and did not waive the time limits.

(B) The charges were based on confidential information and the accused was not given a copy of the CDC Form 1030 (Rev. 12/86), Confidential Information Disclosure.

(C) Confidential information was used and the disciplinary findings did not address the reliability of the source and the validity of the information.

(D) The accused was denied witnesses, or when security was an issue, denied statements of witnesses, which would, in the opinion of the reviewer, have contributed significant information.

(E) The accused was not allowed to speak or present documentation in their own defense.

(F) The accused was not assigned a staff assistant or interpreter if required.

(G) An investigative employee was not assigned if required, or if assigned, the investigative employee did not adequately perform their task and it appears that such an investigation would have assisted the accused or hearing officials.

(3) When a disciplinary charge is ordered reheard, a new CDC Form 115 shall be written and processed. The disciplinary time constraints shall begin on the date the new CDC Form 115 is written except when an inmate is being returned to a facility for a disciplinary rehearing, the time constraints shall begin upon the inmate's return to that facility.

(i) Delay in Disposition. An administrator may delay for up to 90 days the implementation of a decision affecting an appellant when such delay will not threaten institution security, the safety of any person, or create a serious operational problem.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 832.5 and 5054, Penal Code; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; and Section 35.107, Title 28, Code of Federal Regulations.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3003(a) and (b).

2. Certificate of Compliance as to 5-18-89 order including amendment of subsections (a) and (g) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. New subsection (a)(3)(F), amendment of subsection (b), new subsections (g) and (h), and relettering of subsection (g) to (i) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 5-6-92 order transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

5. New subsection (a)(3)(G) filed 2-1-93 as an emergency; operative 2-1-93 (Register 93, No. 6). A Certificate of Compliance must be transmitted to OAL 6-1-93 or emergency language will be repealed by operation of law on the following day.

6. Certificate of Compliance as to 2-1-93 order transmitted to OAL 5-20-93 and filed 6-8-93 (Register 93, No. 24).

7. New subsection (a)(3)(H) and amendment of Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

8. New subsection (b)(4) filed 5-5-95; operative 6-5-95 (Register 95, No. 18).

9. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

10. Amendment of subsections (c), (d) and (e)(1) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

11. Amendment of subsections (c), (d) and (e)(1) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

12. Editorial correction of History 11 (Register 97, No. 24).

13. Certificate of Compliance as to 5-29-97 order transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

**3084.6.  Appeal Time Limits.**

(a) Commencement. Time limits for submitting or reviewing appeals shall commence upon the date of receipt of the appeal document by the appeals coordinator or the appellant.

(b) Departmental response. Appeals shall be responded to and returned to the appellant by staff within the following time limits:

(1) Informal level responses shall be completed within ten working days.

(2) First level responses shall be completed within 30 working days.

(3) Second level responses shall be completed within 20 working days, or 30 working days if first level is waived pursuant to section 3084.5(a)(3).

EXHIBIT O-2

§ 3084.4    DEPARTMENT OF CORRECTIONS AND REHABILITATION    TITLE 15

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Amendment of subsection (b) and new subsections (b)(1)–(2) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 5-6-92 order transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

5. Amendment of subsection (a) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

6. Amendment of subsection (a) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

7. Editorial correction of History 6 (Register 97, No. 24).

8. Certificate of Compliance as to 5-29-97 order transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

**3084.4.  Appeal System Abuse.**

(a) Excessive filings. One appellant's submission of more than one non-emergency appeal within a seven-calendar-day period shall be considered excessive.

(1) When an appellant submits excessive appeals, the first appeal received shall be processed normally and all subsequent non-emergency appeals filed within the seven-calendar-day period by that individual shall be suspended.

(2) The appeals coordinator shall consult with the chief, inmate appeals, who shall determine further action to be taken on the suspended appeals.

(3) Upon determination of abuse, the chief, inmate appeals, shall authorize the appeals coordinator to prepare a notice restricting the inmate to one appeal per month for six consecutive months.

(4) Any subsequent violations of the appeal restriction shall result in an extension of the restriction for an additional six-month period.

(b) Inappropriate statements: An appeal containing false information, or profanity or obscene language shall be rejected.

(c) Excessive verbiage. Appeals in which the grievance or problem cannot be understood or is obscured by pointless verbiage or voluminous unrelated documentation shall be rejected, except as provided in sections 3084.1(b) and 3084.3(b).

(d) Lack of cooperation. An appellant's refusal to be interviewed or cooperate with the reviewer shall result in cancellation of the appeal.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 832.5 and 5054, Penal Code.

HISTORY:

1. New section filed 5-18-89, as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order including a clarifying change of subsections (a) and (b) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Amendment of subsections (a), (a)(1) and (a)(3), repealer and new subsection(a)(4), and amendment of subsections(b) and (d) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

4. Amendment of subsections (a), (a)(1) and (a)(3), repealer and new subsection (a)(4), and amendment of subsections (b) and (d) refiled 5-29-97 as an emergency, operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

5. Editorial correction of History 4 (Register 97, No. 24).

6. Certificate of Compliance as to 5-29-97 order, including amendment of subsection (d), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

**3084.5.  Levels of Appeal Review and Disposition.**

(a) Informal level. The informal level is that at which the appellant and staff involved in the action or decision attempt to resolve the grievance informally.

(1) Unless excepted pursuant to subsection (3) evidence of an attempt to obtain informal level review is required before an appeal may be accepted for formal review.

(2) When an appellant attempts to resolve an appeal at the informal level, the employee contacted by the appellant shall review and if practical resolve the grievance. The employee shall report the action taken in the response space provided on the appeal form and shall sign and date the form.

(3) The informal level shall be waived for appeal of:

(A) Classification committee actions.

(B) Serious disciplinary infractions.

(C) Classification staff representative actions.

(D) Departmental regulations, policies, or operational procedures.

(E) Exceptional circumstances defined in section 3084.7.

(F) Any action which the appeals coordinator determines cannot be resolved informally.

(G) Alleged misconduct by a departmental peace officer.

(H) The denial of disabled inmate or parolee requests for reasonable modification or accommodation filed on CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request, pursuant to section 3085.

(b) First formal level. All appeals shall be initially filed and screened at the first level. The appeals coordinator may bypass the first formal level for appeal of:

(1) A policy or procedure implemented by the institution head.

(2) A policy, procedure or regulation implemented by the department.

(3) An issue, which cannot be resolved at the division head's level, e.g., appeal of a regular transfer.

(4) Serious disciplinary infractions.

(c) Second formal level. Second level is for review of appeals denied at first level or for which first level is otherwise waived by these regulations. The second formal level, with the exception provided in section 3084.7(d)(4)(B), shall be completed prior to the appellant filing at the third formal level.

(d) Third formal level. Third level is for review of appeals not resolved at second level with the exception provided in section 3084.7(d)(4)(B).

(e) Appeal review. Formal appeals shall not be reviewed by a staff person who participated in the event or decision being appealed, or who is of lower administrative rank than any participating staff, or who participated in review of a lower level appeal refiled at a higher level.

(1) Second level review shall be conducted by the institution head or regional parole administrator, or their designee. Institution heads and regional parole administrators are not prohibited from reevaluating their own decisions or actions at the second level, and shall respond to appeals filed against them personally for allegations of peace officer misconduct.

(2) Third level review constitutes the director's decision on an appeal, and shall be conducted by a designated representative of the director under supervision of the chief, inmate appeals.

52

**TITLE 15** · DEPARTMENT OF CORRECTIONS AND REHABILITATION · **§ 3084.3**

10. Certificate of Compliance as to 11-3-2006, order transmitted to OAL 3-12-2007 and filed 4-19-2007 (Register 2007, No. 16).

### 3084.2.  Appeal Preparation.

(a) Form requirement. The appellant shall use a CDC Form 602 (rev. 12-87), Inmate/Parolee Appeal Form, to describe the problem and action requested. Initial requests or grievances based on a disability as defined in Title 42, U.S.C. section 12102 shall be filed pursuant to section 3085.

(1) A limit of one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in Sections A and B of the form.

(2) Only supporting documentation necessary to clarify the appeal shall be attached to the appeal.

(b) Informal attempt prerequisite. The inmate or parolee shall attempt to resolve the grievance informally with the involved staff, unless excepted by sections 3084.5(a)(3) and 3084.7.

(c) Place of filing. At the formal levels, the appeal shall be forwarded to the appeals coordinator within the time limits prescribed in section 3084.6.

(d) Appellant submittal. An inmate or parolee shall not submit an appeal on behalf of another inmate or parolee, except as provided in subsection (f). An inmate, parolee or other person may assist another inmate or parolee with preparation of an appeal unless the act of providing such assistance would create an unsafe or unmanageable situation.

(e) Limit of system. The department's appeal procedure shall not be used to appeal the decisions or actions of other agencies, except as provided by section 3084.7.

(f) Group appeal. If a group of inmates intend to appeal a decision, action, or policy affecting all members of the group, one appeal form with the name and departmental identification number of the inmate who prepared the appeal shall be submitted.

(1) A legible list of the participating inmates' names, signatures, departmental identification numbers, and housing shall be attached to the appeal.

(2) The inmate submitting the appeal shall be responsible for sharing the written response with the inmates who signed the appeal attachment.

(3) If the inmate submitting the appeal is transferred or released, responses shall be directed to the first or next inmate on the appeal list attachment, who shall be responsible for sharing the response with the other inmates identified on the attachment.

(g) Multiple appeals of the same issue. If more than one appeal regarding the same issue is received.

(1) All such appeals shall be logged.

(2) A written response shall be given to the original appellant.

(3) A copy of the response, with the original appellant's name and number removed, shall be given to each of the other appellants.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 832.5 and 5054, Penal Code; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; and section 35.107, Title 28, Code of Federal Regulations.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. New subsection (g) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

4. Certificate of Compliance as to 5-6-92 order transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

5. Amendment of subsection (a) and Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

6. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

7. Amendment of subsections(a)(1), (a)(2), (c) and (f)(1) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

8. Amendment of subsections (a)(1), (a)(2), (c) and (f)(1) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

9. Editorial correction of History 8 (Register 97, No. 24).

10. Certificate of Compliance as to 5-29-97 order, including amendment of subsection (c), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

### 3084.3.  Screening Appeals.

(a) Appeals coordinator. Each institution head and parole region administrator shall designate an appeals coordinator, at a staff position level no less than correctional counselor II or parole agent II, who shall prior to acceptance for review screen and categorize each appeal originating in their area for compliance with these regulations, and shall coordinate the processing of appeals.

(b) Unclear appeal issue.

(1) When a group appeal is received, one or more of the participating inmates shall be interviewed to clarify the issue under appeal.

(2) When multiple appeals of the same issue are received, the original appellant and, as needed for clarification of issues, one or more of the other appellants shall be interviewed.

(3) When an appeal indicates the appellant has difficulty describing the problem in writing or has a primary language other than English, the appeals coordinator shall arrange an interview with the appellant to provide assistance in clarifying or completing the appeal.

(c) Rejection criteria. An appeal may be rejected for any of the following reasons:

(1) The action or decision being appealed is not within the jurisdiction of the department.

(2) The appeal duplicates the appellant's previous appeal upon which a decision has been rendered or is pending.

(3) The appeal concerns an anticipated action or decision.

(4) The appellant has not included evidence of attempt to resolve the grievance at the informal level, unless the informal level is waived by these regulations.

(5) The appeal is incomplete or necessary supporting documents are not attached.

(6) Time limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints.

(7) The appeal is filed on behalf of another inmate or parolee, except as provided in section 3084.2(f).

(8) The appeal constitutes an abuse of the appeal process pursuant to section 3084.4.

(d) Written rejection. When rejecting an appeal, the appeals coordinator shall complete an Appeals Screening Form, CDC Form 695 (rev. 5-83), explaining why the appeal is unacceptable. If rejection is based on improper documentation, the form shall provide clear instructions regarding further action the inmate must take to qualify the appeal for processing.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 832.5 and 5054, Penal Code.

51

*EXHIBIT O.4*

§ 3080                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    TITLE 15

Article 7.   Furloughs and Temporary Leave

**3080.  Administration.**

Institution and parole division staff will administer inmate work and educational furloughs and temporary community release programs in a prudent manner, and in keeping with the basic need for public protection.

Comment: Former DP-1701, policy, general.

**3081.  Compliance.**

Inmates who are granted a furlough or temporary leave must comply with all departmental rules and regulations governing such programs; with any conditions for approval; and, with all applicable laws; and must meet eligibility requirements in accordance with departmental procedures and Sections 2690, 2691, 6250 et seq., 6263 of the Penal Code and Section 3306 of the Welfare and Institutions Code.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 6250–6253 and 6260, Penal Code; and Section 3306, Welfare and Institutions Code.

HISTORY:

1. Amendment filed 3-2-83; effective thirtieth day thereafter (Register 83, No. 12).

**3082.  Temporary Leaves.**

Temporary leaves will be granted only for inmates who meet the criteria for such leaves, as prescribed in guidelines established by the director, for the following reasons:

(a) Family Emergency. Emergency leaves will normally be considered only for attendance at services for deceased members of the inmate's immediate family, and for visits to critically ill members of the inmate's immediate family. Immediate family members are defined in section 3000.

(b) Prerelease Planning. Prerelease planning leaves may be considered for the purpose of employment interviews, making residential plans and for other reasons closely connected to release programs. A prerelease leave will not normally be granted earlier than 63 days before the inmate has an established or reasonably anticipated release date nor any earlier than is required to accomplish the purpose of a prerelease leave.

NOTE: Authority cited; section 5058, Penal Code. Reference: Sections 2690 and 5054, Penal Code.

HISTORY:

1. Amendment filed 3-22-78; effective thirtieth day thereafter (Register 78, No. 12).
2. Amendment filed 8-22-79; effective thirtieth day thereafter (Register 79, No. 34).
3. Amendment of subsection (b) filed 9-24-81; effective thirtieth day thereafter (Register 81, No. 39).
4. Change without regulatory effect amending subsection (a) filed 12-2-2003 pursuant to section 100, title 1, California Code of Regulations (Register 2003, No. 49).

**3083.  Court Hearing on Inmate's Children.**

Upon a court order, inmates will be released to the custody of the sheriff for appearance in court in actions concerning termination of parental rights of an inmate or other parental or marital rights.

HISTORY:

1. Editorial correction of printing error (Register 92, No. 5).

Article 8.   Appeals

**3084.  Definitions.**

NOTE: Authority cited: section 5058, Penal Code. Reference: section 5054, Penal Code.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89.

2. Certificate of Compliance as to 5-18-89 order transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. Change without regulatory effect repealing section filed 10-29-90 pursuant to section 100, title 1, California Code of Regulations (Register 91, No. 6).

**3084.1.  Right to Appeal.**

(a) Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare. The decisions of the Departmental Review Board which serve as the director's level decision are not appealable and conclude the inmate's or parolee's departmental administrative remedy pursuant to section 3376.1.

(b) Institution staff shall provide the assistance necessary to ensure that inmates who have difficulty communicating in written English have access to the appeal process.

(c) The department shall ensure departmental appeal forms and forms prescribed by the Board of Parole Hearings, the Narcotic Addict Evaluation Authority, the Prison Industry Authority, and the Joint Venture Program for appeal of decisions, actions, or policies within their jurisdictions, are readily available to all inmates and parolees.

(d) No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in section 3084.4.

(e) An appeal alleging misconduct by a departmental peace officer as defined in section 3291(b) shall be accompanied by a Rights and Responsibility Statement as shown in section 3391(d). Failure to submit this form will be cause for rejecting the appeal, in accordance with section 3084.3(c)(5).

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 148.6, 832.5 and 5054, Penal Code, *Chaker v. Crogan* (9th Cir. 2005) 428 F. 3d 1215.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3003.
2. Certificate of Compliance as to 5-18-89 order including a clarifying change of subsection (b) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).
3. Amendment of subsection (a) filed 1-16-92; operative 2-17-92 (Register 92, No. 13).
4. Amendment of subsections (a) and (d), new subsection (e); and amendment of Note filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.
5. Amendment of subsections (a) and (d), new subsection (e), and amendment of NOTE: refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.
6. Editorial correction of History 5 (Register 97, No. 24).
7. Certificate of Compliance as to 5-29-97 order, including amendment of subsections (a) and (e), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).
8. Amendment of subsection (c) filed 9-13-2005; operative 9-13-2005 pursuant to Government Code section 11343.4 (Register 2005, No. 37).
9. Amendment of subsection (e) and amendment of Note filed 11-3-2006 as an emergency; operative 11-3-2006 (Register 2006, No. 44). Pursuant to Penal Code section 5058.3, a Certificate of Compliance must be transmitted to OAL by 4-12-2007 or emergency language will be repealed by operation of law on the following day.

50

*EXHIBIT - OS*

**TITLE 15**                           DEPARTMENT OF CORRECTIONS AND REHABILITATION                           **§ 3076.3**

initiated by the facility at any time or by the sentencing court more than 120 days after the date of commitment shall be referred to the inmate's caseworker, who shall inform the inmate's treating physician or the facility's chief medical officer of the request.

(2) For the purpose of this regulation, the facility's chief medical officer must also concur with the treating physician's prognosis of the inmate.

(3) Within three working days of the caseworker advising the chief medical officer or the inmate's treating physician of the request or of a medical staff member's discovery of a medical condition appropriate for eligibility review, the chief medical officer shall determine if the inmate is terminally ill. This determination shall be documented on a CDC Form 128-C, Chrono-Medical-Psych-Dental, which shall include a description of the inmate's illness, physical condition, estimated life expectancy and desire to participate in a recall consideration, and which shall be submitted to the classification and parole representative.

(4) The classification and parole representative shall review the report and the inmate's central file and consider the criteria listed in section 3076.1 before recommending recall of commitment consideration for the inmate.

(5) If the classification and parole representative recommends against further recall consideration, the reasons shall be documented on a CDC Form 128-B, Chrono—General (Rev. 4/74), which shall be countersigned by the warden or chief deputy warden within three working days of receipt of the CDC Form 128-C. The original CDC Form 128-B shall be filed in the inmate's central file and a copy, excluding any confidential material as defined in section 3321, sent to the inmate.

(6) If the classification and parole representative determines that the case warrants recall consideration, the CDC Form 128-C shall be submitted to the inmate's caseworker, who shall investigate and evaluate the inmate's suitability for recommendation of recall and document their evaluation in a report, with the following attachments:

(A) The CDC Form 128-C.

(B) The inmate's cumulative case summary.

(C) A list of any victim notification or other special notification requirements.

(7) The institution's evaluation and recommendation for a Penal Code section 1170(d) recall of a terminally ill inmate, if in favor of recall or equivocal, or in all cases if the evaluation was originally requested by the sentencing judge or if the inmate's term of imprisonment is under the jurisdiction of the Board of Prison Terms pursuant to Penal Code section 1170.2, shall be signed by the warden or chief deputy warden and forwarded within twelve working days from the date of the CDC Form 128-C to department headquarters, and if the inmate's term of imprisonment is under the jurisdiction of the Board of Prison Terms pursuant to Penal Code section 1170.2, to the Board of Prison Terms.

(b) Recall of Commitment Processing for Non-Terminally Ill Inmates.

(1) Requests for consideration for recall of commitment which are initiated by the facility at any time or by the sentencing court more than 120 days after the date of commitment shall be referred to the classification and parole representative via the inmate's caseworker.

(2) Upon receipt of the request, the classification and parole representative shall consider the criteria listed in section 3076.1 and the inmate's central file before recommending recall of commitment consideration for the inmate.

(3) If the classification and parole representative recommends against further recall consideration, the reasons shall be documented on a CDC Form 128-B, Chrono—General (Rev. 4/74), which shall be countersigned by the warden or chief deputy warden. The original CDC Form 128-B shall be filed in the

inmate's central file and a copy, excluding any confidential material as defined in section 3321, sent to the inmate.

(4) If the classification and parole representative determines that the inmate's case warrants recall consideration, the classification and parole representative's findings shall be submitted to the inmate's caseworker, who shall investigate and evaluate the inmate's suitability for recommendation of recall and document their evaluation in a report, with the following attachments:

(A) The inmate's cumulative case summary.

(B) A list of any victim notification or other special notification requirements.

(5) The institution's evaluation and recommendation for a Penal Code section 1170(d) recall of the inmate, if in favor of recall or equivocal, or in all cases if the evaluation was originally requested by the sentencing judge or if the inmate's term of imprisonment is under the jurisdiction of the Board of Prison Terms pursuant to Penal Code section 1170.2, shall be signed by the warden or chief deputy warden and forwarded to department headquarters, and if the inmate's term of imprisonment is under the jurisdiction of the Board of Prison Terms pursuant to Penal Code section 1170.2, to the Board of Prison Terms.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 1170(d), 3043 and 5054, Penal Code.

HISTORY:
1. New section filed 5-20-92 as an emergency; operative 5-20-92 (Register 92, No. 21). A Certificate of Compliance must be transmitted to OAL 9-17-92 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 5-20-92 order transmitted to OAL 9-9-92; disapproved by OAL and order of repeal of 5-20-92 order filed on 10-22-92 (Register 92, No. 43).
3. New section refiled 10-23-92 as an emergency; operative 10-22-92 pursuant to Government Code section 11346.1(h) (Register 92, No. 43). A Certificate of Compliance must be transmitted to OAL 2-23-93 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 10-23-92 order including amendment of subsections (a)(1), (a)(3)–(5) and (b)(2) transmitted to OAL 12-18-92 and filed 2-3-93 (Register 93, No. 6).

**3076.3. Victim Notification for Recall of Commitment Recommendations.**

When informed that an inmate's commitment has been recommended for recall to the court, the inmate's classification and parole representative shall notify any victim of a crime committed by the inmate, or the victim's next of kin if the victim has died, provided that the victim or the victim's next of kin has requested notice of any hearing to review or consider the parole suitability or the setting of a parole date for the inmate, and the requesting party has kept the department or the Board of Prison Terms apprised of their current mailing address. The notification shall include the name and address of the court that will consider recall.

NOTE: Authority cited: section 5058, Penal Code. Reference: Sections 1170(d), 3043 through 3043.3 and 5054, Penal Code.

HISTORY:
1. New section filed 5-20-92 as an emergency; operative 5-20-92 (Register 92, No. 21). A Certificate of Compliance must be transmitted to OAL 9-17-92 or emergency language will be repealed by operation of law on the following day.
2. Certificate of Compliance as to 5-20-92 order transmitted to OAL 9-9-92; disapproved by OAL and order of repeal of 5-20-92 order filed on 10-22-92 (Register 92, No. 43).
3. New section refiled 10-23-92 as an emergency; operative 10-22-92 pursuant to Government Code section 11346.1(h) (Register 92, No. 43). A Certificate of Compliance must be transmitted to OAL 2-23-93 or emergency language will be repealed by operation of law on the following day.
4. Certificate of Compliance as to 10-23-92 order transmitted to OAL 12-18-92 and filed 2-3-93 (Register 93, No. 6).

EXHIBIT O-6

**TITLE 15**         DEPARTMENT OF CORRECTIONS AND REHABILITATION         § 3084.7

(E) Second level review shall be conducted by the institution head, who may retain the appellant at the reception center as a second level re-view action and refer the appeal to the departmental review board for resolution. The board's decision shall constitute final review.

(F) If the appeal is denied at first or second level, the appellant may appeal at the third level.

(4) Involuntary transfer to the California Medical Facility or Atascadero State Hospital.

(A) Following a hearing on the psychiatric need for an involuntary transfer to the California Medical Facility or Atascadero State Hospital, the inmate shall be provided with a copy of the written decision pursuant to Section 3379(d).

(B) The inmate may appeal the written decision, directly to the third level, within 30 calendar days of receipt of the decision.

(C) A copy of the hearing decision shall be attached to the appeal.

(e) Lost or damaged personal property appeals.

(1) All property loss or damage arising from the same event or action shall be included in one appeal.

(2) Replacement or restoration of property.

(A) An attempt shall be made by staff to use local resources to substitute for, or replace lost property at no cost to the state, or to repair the item at institution expense.

(B) An appellant's refusal to accept repair, replacement, or substitution of like items and value shall be cause to deny the appeal.

(3) The document denying a property claim appeal at the third level shall inform the appellant of the right to file a claim directly with the board of control, and shall provide instructions for such filing.

(4) Reimbursement for loss. The reimbursement shall not exceed the limit imposed by property procedures and regulations (Subchapter 2, Article 9, Personal Property).

(A) Reimbursements for $100 or less shall require endorsement at either the second or third level of review.

(B) Reimbursements for more than $100 shall require both third level endorsement and Board of Control approval.

(C) Before payment of any granted claim, the appellant shall sign an Inmate/Parolee Board of Control Release Form, CDC Form 813 (rev. 2-86), discharging the state from further liability for the claim pursuant to Government Code section 965. The appellant shall be provided with a copy of the completed form.

(f) Re-Entry or Work Furlough Placement and Parole to County of Commitment Appeals. An inmate pending release to the community and dissatisfied with a parole staff decision regarding the release program or the location of placement may submit an appeal requesting administrative review of the decision.

(1) Re-entry or work furlough placement appeals.

(A) The informal level. Appeal of denial of placement into specific re-entry or work furlough locations shall be submitted by the appellant to the institution caseworker who prepared Section A of the Release Program Study, CDC Form 611 (rev. 10-88). The caseworker shall compare the assigned parole region's reasons for denial with the facts contained in the inmate's central file, interview the inmate, and record all information obtained on a CDC Form 128-B (rev. 4-74).

(B) The first level appeal shall be submitted to the appeals coordinator of the parole region where the denial of placement was made. A copy of the CDC Form 128-B (rev. 4-74) shall be attached to the appeal.

(C) The supervisor of the staff person who denied placement shall conduct the first level review and the regional parole administrator or designee shall conduct the any second level review.

(2) Return to county of commitment appeals.

(A) An appeal concerning parole to county of commitment shall not be accepted until the Release Program Study, CDC Form 611 (rev. 10-88), has been completed and returned to the institution.

(B) The appeal shall be sent to the appeals coordinator of the parole region where such study was completed. The informal level of review shall be waived.

(C) The assistant regional parole administrator shall provide the first level review and the regional parole administrator shall provide the second level review, if any.

(D) The inmate may appeal to third level if dissatisfied with second level response.

(g) Conditions of Parole Appeals. An inmate dissatisfied with conditions of parole imposed by departmental staff may submit an appeal requesting removal or change of the conditions.

(1) Within 15 working days following receipt of the decision outlining conditions of parole, the appellant shall submit the appeal form directly to the appeals coordinator of the parole region where the case is assigned.

(2) The informal and first level reviews shall be waived. The appeals coordinator shall forward the appeal to the regional parole administrator for second level review.

(3) An appellant dissatisfied with second level review decision, may file the appeal at third level.

(4) An appellant dissatisfied with a third level review decision, may submit the appeal to the Board of Prison Terms pursuant to 15 CCR sections 2525 and 2526.

(h) Parole Period and Term Computation Appeals.

(1) Informal level review.

(A) The appellant shall submit the appeal to the records office for research and documenting of the relevant case facts. The appellant shall be provided a copy of the findings.

(B) The document recording, denial of an appeal shall be hand-delivered to the appellant, who shall sign and date an Acknowledgement of Receipt, CDC Form 1031 (rev. 8-88).

(2) Formal appeal.

(A) The appellant may then submit to the appeals coordinator an appeal requesting a computation review hearing.

(B) First level review shall be waived. The computation review hearing shall constitute the second level of review.

(C) The case records manager or supervisor shall conduct a computation review hearing within 15 days following receipt of the appeal.

1. The inmate/parolee shall be notified at least 24 hours prior to the hearing via the CDC Form 1032 (Rev. 12/86), Notice of Time, Date and Place of Computation Review Hearing.

2. The hearing shall be held during the inmate's nonassigned hours.

(D) Upon staff determination an error exists which the department lacks authority to change, the appeal shall be granted and the appeal referred to the appropriate agency for disposition.

(E) The appellant shall be provided a copy of the Computation Review Hearing Decision, CDC Form 1033 (rev. 8-88), at the conclusion of the hearing.

(F) The appellant may submit the appeal to third level if dissatisfied with second level response.

(i) Prison Industry Authority Health and Safety Grievances.

(1) An appellant who believes a health or safety hazard exists in a prison industry operation shall submit the written grievance to the prison industry safety committee.

(2) If an industrial safety appeal is denied at the third level, the inmate may file an appeal with the labor commissioner as prescribed by the Division of Industrial Safety.

55

EXHIBIT  O-7

(3) If the inmate believes any act of reprisal resulted from the grievance, an appeal of the alleged reprisal may be filed through the department's normal appeal process.

(j) Civil Addict or Releasee Appeal.

(1) Civil addicts or releasees may appeal a staff recommendation for exclusion from the civil addict program, unless the recommendation is based on a commitment to prison, deportation or releasee-at-large status.

(2) If an appeal is not received prior to the end of the 15th calendar day from an appellant's receipt of written notice of the recommendation to exclude, all prepared documentation shall be forwarded to the committing court.

(3) The second level review shall be the final review.

(4) Time constraints for release appeals are:

(A) The assistant regional parole administrator shall complete the first level review within ten working days.

(B) The regional parole administrator shall complete the second level review within 15 working days.

(k) Disability Grievances. An inmate or parolee with a permanent disability who is requesting a reasonable modification or accommodation who has a discrimination complaint or grievance based on a permanent disability shall follow the procedures described in section 3085. For the purpose of this section, permanent disability shall mean a disability/condition that is expected to last longer than six months.

(l) Movie/Video Selection or Exclusion Appeals.

(1) Movies/videos which have been given a rating of other than "G," "PG," or "PG-13" by the Motion Picture Association of America shall not be approved for general inmate viewing, and will not be accepted for appeal.

(2) The informal and first level of appeal shall be waived for appeals related to the selection or exclusion of a "G," "PG," or "PG-13" rated or non-rated movie/video for viewing.

(3) An appellant dissatisfied with the second level review decision may file the appeal at third level.

(m) Joint Venture Program Employer Related Grievances.

(1) Any current or former Joint Venture Program inmate-employee who believes he/she has a grievance regarding a wage and hour or retaliation claim against a Joint Venture Employer shall submit the written grievance to the Joint Venture Program Chief.

(2) The Joint Venture Program Chief shall attempt to resolve all complaints.

(3) Time frames for filing grievances will be governed by the Division of Labor Standards Enforcement's (DLSE) statutes of limitations, including but not limited to Labor Code Section 98.7 and Code of Civil Procedure Sections 337, 338 and 339, for the appropriate type of complaint.

(4) If the inmate is dissatisfied with the Joint Venture Program Chief's decision, the inmate may file a complaint with the Labor Commissioner.

NOTE: Authority cited: Section 5058 and 10006(b), Penal Code. Reference: Sections 832.5, 5054 and 10006(b), Penal Code; Section 19583.5, Government Code; *Wolff v. McDonnell* (1974) 418 U.S. 539, 558–560; Americans With Disabilities Act, Public Law 101-336, July 26, 1990, 104 Stat. 328; Section 35.107, Title 28, Code of Federal Regulations; Section 98.7, Labor Code; and Sections 337, 338 and 339, Code of Civil Procedure.

HISTORY:

1. New section filed 5-18-89 as an emergency; operative 5-18-89 (Register 89, No. 21). A Certificate of Compliance must be transmitted to OAL within 120 days or emergency language will be repealed on 9-15-89. For prior history, see section 3325(c).

2. Certificate of Compliance as to 5-18-89 order including amendment of subsections (a) and (d) transmitted to OAL 9-7-89 and filed 10-10-89 (Register 89, No. 41).

3. Editorial correction of printing errors in subsections (f)(1)(B) and (g)(2). (Register 92, No. 5).

4. Amendment of subsection (e)(4) and new subsections (h)(3), (i)(2)(c)1. and 2., and (k) filed 5-6-92 as an emergency; operative 5-6-92 (Register 92, No. 19). A Certificate of Compliance must be transmitted to OAL 9-3-92 or emergency language will be repealed by operation of law on the following day.

5. Certificate of Compliance as to 5-6-92 order including amendment of subsections (e)(4) and (i)(2)(C)1. transmitted to OAL 8-31-92 and filed 10-7-92 (Register 92, No. 41).

6. New subsection (l) and amendment of Note filed 4-7-95 as an emergency pursuant to Penal Code section 5058; operative 4-7-95 (Register 95, No. 14). A Certificate of Compliance must be transmitted to OAL by 9-14-95 or emergency language will be repealed by operation of law on the following day.

7. Certificate of Compliance as to 4-7-95 order transmitted to OAL 6-26-95 and filed 7-25-95 (Register 95, No. 30).

8. New subsections (m)–(m)(3) and amendment of Note filed 6-28-96 as an emergency; operative 6-28-96 (Register 96, No. 26). A Certificate of Compliance must be transmitted to OAL by 1-6-97 or emergency language will be repealed by operation of law on the following day.

9. Editorial correction of subsection (m)(3) (Register 96, No. 51).

10. New subsections (m)–(m)(3) and amendment of Note refiled 12-19-96 as an emergency; operative 12-19-96 (Register 96, No. 51). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 5-28-97 or emergency language will be repealed by operation of law on the following day.

11. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) filed 12-23-96 as an emergency; operative 12-23-96 (Register 96, No. 52). Pursuant to Penal Code section 5058(e), a Certificate of Compliance must be transmitted to OAL by 6-2-97, or emergency language will be repealed by operation of law on the following day.

12. Certificate of Compliance as to 12-19-96 order, incorporating relettering from 12-23-96 order and further amending section and Note, transmitted to OAL 4-14-97 and filed 5-23-97 (Register 97, No. 21).

13. Repealer of subsection (a)(1)(D), amendment of subsections (a)(2)(A), (b)(2), (d)(4), (d)(4)(A) and (e)(1), repealer of subsections (h) and (h)(1), renumbering of old subsections 3084.7(h)(2) and (h)(3) to new subsections 3391(b) and (c), subsection relettering, and amendment of newly designated subsection (k) refiled 5-29-97 as an emergency; operative 6-2-97 (Register 97, No. 22). A Certificate of Compliance must be transmitted to OAL by 9-30-97 or emergency language will be repealed by operation of law on the following day.

14. Editorial correction of subsection (j)(1) and History 13 (Register 97, No. 24).

15. Certificate of Compliance as to 5-29-97 order, including amendment of subsections (b)(2) and (k), transmitted to OAL 9-25-97 and filed 11-7-97 (Register 97, No. 45).

16. New subsections (m)–(m)(4) and amendment of Note filed 9-13-2005; operative 9-13-2005 pursuant to Government Code section 11343.4 (Register 2005, No. 37).

## 3085. Americans With Disabilities Act.

No qualified inmate or parolee with a disability, as defined in Title 42, U.S.C. section 12102 shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the department, or be subjected to discrimination.

(a) CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request. If otherwise qualified or eligible, inmates or parolees with disabilities as defined in Title 42, U.S.C. section 12102 may request reasonable modification or accommodation to

56

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

**Adam Sean Avratin**

FILING FEE PAID
Yes          No

IFP MOTION FILED
Yes          No

CONSENT (IN U.S. PLAINTIFF CASES ONLY)
Yes          No

Court Use Only

**FILED**

AUG 19 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**Woodford, et al**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Imperial
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Adam Sean Avratin
PO Box 5007
Calipatria, CA 92233
K-45520

**ATTORNEYS (IF KNOWN)**

**'08 CV 1533 WQH AJB**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX**
(For Diversity Cases Only)    **FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**42 U.S.C. 1983**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☒ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE _____    Docket Number _____

| DATE | 8/19/2008 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|---|

R. Miller